1

**BAKER & HOSTETLER LLP**
Sean B. Solis (admitted *pro hac vice*)

2
Paul G. Karlsgodt (admitted *pro hac vice*)
1801 California Street, Suite 4400

3
Denver, Colorado 80202
Telephone:   303.861.0600

4
Facsimile:   303.861.7805
ssolis@bakerlaw.com

5
pkarlsgodt@bakerlaw.com

6
Christopher A. Wiech (admitted *pro hac vice*)

7
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309

8
Telephone:   404.459.0050
Facsimile:   404.459.5734

9
cwiech@bakerlaw.com

10
*Attorneys for Defendant Magellan Health, Inc.*

11

12
**IN THE UNITED STATES DISTRICT COURT**

13
**FOR THE DISTRICT OF ARIZONA**

14

15
Chris Griffey, et al.,
     No. CV-20-01282-PHX-MTL (Lead)
     No. CV-20-01350-PHX-MTL (Cons)

16
     Plaintiffs,

17
v.
     **MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM IN SUPPORT OF MOTION**

18
Magellan Health Incorporated,

19
     Defendant.

20

21
     **(ORAL ARGUMENT REQUESTED)**

22

23
Daniel Ranson, et al.,

24
     Plaintiffs,

25
v.

26
Magellan Health Incorporated,

27
     Defendant.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS ................................................................ 2

III.  MOTION TO DISMISS STANDARD ...................................................... 3

IV.   ARGUMENT ........................................................................................... 4

    A.   Plaintiffs Have Failed to Plausibly Allege Cognizable Loss ....................... 4

    B.   Plaintiffs' Negligence Claim Should Be Dismissed .................................... 7

        1.   Plaintiffs Have Failed to Plead Causation .......................................... 7

        2.   Any Negligence Claim is Barred by the Economic Loss Doctrine ... 8

    C.   Plaintiffs' Negligence *Per Se* Claim Is Not a Cause of Action ................... 8

    D.   Plaintiffs' Breach of Implied Contract Claim Fails .................................... 9

        1.   Plaintiffs Have Not Pled the Terms of an Implied Contract ............. 9

        2.   Plaintiffs Have Failed to Plead Consideration ................................. 10

    E.   Plaintiffs' Unjust Enrichment Claim Should Be Dismissed Because Plaintiffs Do Not Plead an Enrichment or an Impoverishment .................. 10

    F.   Plaintiffs' Statutory Claims Should Be Dismissed .................................... 11

        1.   Plaintiffs' Arizona, California, Florida, Missouri, Pennsylvania, and Wisconsin Statutory Claims Do Not Satisfy Rule 9(b) ............ 12

        2.   Plaintiff Leather's NYGBL § 349 Claim Fails Because She Has Not Plausibly Alleged a Material Misrepresentation or Omission .. 14

        3.   The California UCL, Florida DUTPA, Missouri MPA, NYGBL § 349, and Wisconsin DTPA Do Not Apply Extraterritorially ........ 14

        4.   Former Employee Plaintiffs Cannot Allege That Magellan "Sold" Them "Merchandise" Under the Arizona CFA and Missouri MPA ...................................................................................... 15

        5.   Plaintiff Flanders Has Not Plausibly Alleged a Violation of Virginia Code § 18.2-186.6 ............................................................. 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

6.      Plaintiff Ranson Has Not Plausibly Alleged a Violation of the

CCPA ........................................................................................ 17

V.      CONCLUSION ..................................................................................... 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys.*,
   19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ....................................................... 14

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ........................................................ 5

*In re Arizona Theranos Inc., Litig.*,
   256 F. Supp. 3d 1009 (D. Ariz. 2017), *on reconsideration in part*, No:
   2:16-cv-2138-HRH 2017 WL 4337340 (D. Ariz. Sept. 2017) ............................. 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 3, 9

*In re Banner Health Data Breach Litig.*,
   No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20,
   2017) ....................................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 3, 4

*Berry v. Volkswagen Grp. of Am., Inc.*,
   397 S.W.3d 425 (Mo. 2013) (en banc) ....................................................... 16

*Boyle v. City of Phoenix*,
   563 P.2d 905 (Ariz. 1977).......................................................................... 4, 7

*CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*,
   7 P.3d 979 (Ariz. Ct. App. 2000) ............................................................... 4

*Cheatham v. ADT Corp.*,
   161 F. Supp. 3d 815 (D. Ariz. 2016) ......................................................... 4

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).................................................................................. 4

*In re Cmty. Health Sys., Inc.*,
   No. 15-CV-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016)....................... 7

*Corona v. Sony Pictures Ent., Inc.*,
   No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *8 (C.D. Cal. June
   15, 2015) ................................................................................................ 5, 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Craten v. Foster Poultry Farms, Inc.*,
   305 F. Supp. 3d 1051 (D. Ariz. 2018) .......................................................... 8

*Davis v. Bank of Am. Corp.*,
   No. CV 12-01059-PHX-NVW, 2012 WL 3637903 (D. Ariz. Aug. 23, 2012) ............................................................................................................ 16

*Day v. LSI Corp.*,
   174 F. Supp. 3d 1130 (D. Ariz. 2016) .......................................................... 9

*Dixon v. Ford Motor Co.*,
   No. 14-CV-6135 (JMA) (ARL), 2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ............................................................................................................ 14

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ...................................................................... 11

*Eli Lilly & Co. v. Tyco Integrated Sc., LLC.*,
   No. 13-80371-CIV, 2015 WL 11251732 (S.D. Fla. Feb. 10, 2015) ............ 15

*Experian Info. Sol., Inc. v. Lifelock, Inc.*,
   633 F. Supp. 2d 1104 (C.D. Cal. 2009) ........................................................ 5

*Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*,
   223 P.3d 664 (Ariz. 2010) (en banc) ........................................................... 8

*FTC Solar Cap. XIX, LLC v. Folium Energy Dev., LLC*,
   No. CV-15-00875-PHX-DJH, 2017 WL 3841490 (D. Ariz. Mar. 16, 2017) .............................................................................................................. 8

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264-JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .................. 12

*Goshen v. Mut. Life Ins. Co. of New York*,
   774 N.E.2d 1190 (N.Y. 2002) ..................................................................... 15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   613 F. Supp. 2d 108 (D. Me. 2009), *aff'd in part, rev'd in part sub nom. on other grounds*, Anderson v. Hannaford Bros. Co., 659 F.3d 151 (1st Cir. 2011) ..................................................................................................... 17

*Helash v. Ballard*,
   638 F.2d 74 (9th Cir. 1980) ........................................................................ 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

iv

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) ....................................................... 11

*I Tan Tsao v. Captiva MVP Rest. Partners, LLC*, No. 8:18-CV-1606-T-
    02SPF, 2018 WL 5717479, *2 (M.D. Fla. Nov. 1, 2018) ........................... 17

*J.D. Halstead Lumber Co. v. Hartford Acc. & Indem. Co.*,
    298 P. 925 (Ariz. 1931) ............................................................................. 10

*Krottner v. Starbucks Corp.*,
    406 F. App'x 129 (9th Cir. 2010) (unpublished) ..................................... 4, 6

*Kuhns v. Scottrade, Inc.*,
    868 F.3d 711 (8th Cir. 2017) ........................................................... 9, 13, 16

*Loomis v. U.S. Bank Home Mortg.*,
    912 F. Supp. 2d 848 (D. Ariz. 2012) .......................................................... 13

*Lorona v. Ariz. Summit Law Sch.*,
    188 F. Supp. 3d 927 (D. Ariz. 2016) .......................................................... 12

*Manion v. Ameri-Can Freight Sys. Inc.*,
    No. CV-17-03262-PHX-DWL, 2019 WL 8325752 (D. Ariz. Oct. 11,
    2019) ............................................................................................................ 9

*In re Monat Hair Care Prod. Mktg., Sales Prac. & Prod. Liab. Litig.*,
    No. 18-MD-02841, 2019 WL 5423457 (S.D. Fla. Oct. 23, 2019) .............. 12

*Murillo v. Kohl's Corp.*,
    197 F. Supp. 3d 1119 (E.D. Wis. 2016) ...................................................... 13

*State ex rel. Nixon v. Estes*,
    108 S.W.3d 795 (Mo. Ct. App. 2003) ......................................................... 15

*Novell v. Migliaccio*,
    749 N.W.2d 544 (Wis. 2008) ........................................................................ 5

*Powers v. Guaranty RV, Inc.*,
    278 P.3d 333 (Ariz. Ct. App. 2012) ........................................................... 16

*Precision Imaging of New York, P.C. v. Allstate Ins. Co.*,
    263 F. Supp. 3d 471 (S.D.N.Y. 2017) .......................................................... 5

*Pruchnicki v. Envision Healthcare Corp.*,
    439 F. Supp. 3d 1226 (D. Nev. 2020) .................................................. 4, 5, 6

*Razuki v. Caliber Home Loans, Inc.*,
　No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15,
　2018) .................................................................................................. 16

*Resnick v. AvMed, Inc.*,
　693 F.3d 1317 (11th Cir. 2012) ...................................................... 7

*Schmidt v. Ford Motor Co.*,
　972 F. Supp. 2d 712 (E.D. Pa. 2013) ............................................. 13

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
　45 F. Supp. 3d 14 (D.D.C. 2014) .................................................... 11

*Semegen v. Weidner*,
　780 F.2d 727 (9th Cir. 1985) .......................................................... 13

*Shaw v. CTVT Motors, Inc.*,
　300 P.3d 907 (Ariz. Ct. App. 2013) ................................................ 8

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
　996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................ 7

*Span v. Maricopa Cnty. Treasurer*,
　437 P.3d 881 (Ariz. Ct. App. 2019) ................................................ 4

*Stollenwerk v. Tri-West Health Care All.*,
　254 F. App'x. 664 (9th Cir. 2007) (unpublished) .......................... 7

*Sullivan v. Oracle Corp.*,
　254 P.3d 237 (Cal. 2011) ................................................................ 15

*Svenson v. Google Inc.*,
　No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ...................... 6

*Swartz v. KPMG LLP*,
　476 F.3d 756 (9th Cir. 2007) .......................................................... 14

*T&M Farms v. CNH Indus. Am., LLC*,
　No. 19-C-0085, 2020 WL 5633271 (E.D. Wis. Sept. 21, 2020) ................. 15

*Terpin v. AT&T Mobility, LLC*,
　399 F. Supp. 3d 1035 (C.D. Cal. 2019) .......................................... 15

*Thomas v. Montelucia Villas, LLC*,
　302 P.3d 617 (Ariz. 2013) (en banc) .............................................. 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

vi

*In re TJX Cos. Retail Sec. Breach Litig.*,
  564 F.3d 489 (1st Cir. 2009), *as amended on reh'g in part* (May 5,
  2009) ................................................................................................................ 8

*Trustmark Ins. Co. v. Bank One, Arizona, NA*,
  48 P.3d 485 (Ariz. Ct. App. 2002) .............................................................. 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................... 12

*Warner v. Tinder, Inc.*,
  No. 15-23790-CIV, 2018 WL 1894726 (S.D. Fla. Jan. 18, 2018)
  (Florida DUTPA) .......................................................................................... 5

*Weinberg v. Sun Co.*,
  777 A.2d 442 (Pa. 2001) ................................................................................ 5

*Wis. Indus Energy Grp., Inc. v. Pub. Serv. Comm'n*,
  819 N.W.2d 240 (Wis. 2012) ....................................................................... 15

*Yourish v. Cal. Amplifier*,
  191 F.3d 983 (9th Cir. 1999) ....................................................................... 14

**Statutes**

Ariz. Rev. Stat. § 44-1521(7) ............................................................................ 16

Ariz. Rev. Stat. § 44-1522(A) ........................................................................... 16

Cal. Civ. Code § 1798.150 ............................................................................ 5, 17

Mo. Rev. Stat. § 407.010(6) .............................................................................. 16

NYGBL § 349 ...........................................................................................*passim*

Virginia Code § 18.2-186.6 ......................................................................*passim*

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................... 2, 12, 13, 14

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 4

**Other Authorities**

45 C.F.R. § 164.530(c)(1) ................................................................................ 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

vii

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1   Under Federal Rule of Civil Procedure 12(b)(6), Defendant Magellan Health, Inc.
2   ("Magellan") moves to dismiss Plaintiffs' First Amended Consolidated Class Action
3   Complaint ("FACC") for failure to state a claim upon which relief can be granted.
4   Principally, cognizable loss proximately caused by Magellan is an indispensable element
5   of each of Plaintiffs' causes of action, but it has not been sufficiently plead. Under LRCiv
6   12.1(c), Magellan certifies that its undersigned counsel notified Plaintiffs' counsel of this
7   forthcoming Motion, but the parties were unable to agree that the pleading could be cured
8   by permissible amendment to address the issues raised herein.

9   **I.      INTRODUCTION**

10      Plaintiffs, former employees of Magellan and/or members of health plans serviced
11   by Magellan's subsidiaries, filed this action after they were notified of a ransomware attack
12   that occurred after a Magellan employee clicked on a phishing email that impersonated a
13   client. The FACC should be dismissed because of two fundamental pleading deficiencies.

14      *First*, Plaintiffs have not alleged cognizable injuries. Four of the ten Plaintiffs
15   merely allege that they were notified about the phishing incident and that information
16   relating to them was contained among the information affected by the ransomware attack.
17   They do not allege that they suffered fraud, identity theft, or any misuse of their
18   information. The other six Plaintiffs claim they suffered varying forms of attempted
19   identity fraud after the Magellan incident, but they do not allege any out-of-pocket loss as
20   a result. Instead, they merely allege that they had to spend time monitoring their credit and
21   that their personal information has somehow diminished in value. They also contend that
22   they are now at an increased risk of future harm. Because none of these allegations
23   constitute an injury that is recognized by Arizona law, the FACC should be dismissed.

24      *Second*, even if Plaintiffs could allege some form of actual loss, their claims would
25   still be fatally flawed. The six plaintiffs who claim misuse of their personal information
26   have not plausibly alleged that the misuse was proximately caused by the Magellan
27   incident. Moreover, any alleged injury would be solely economic; therefore, Plaintiffs'
28   negligence claims are also barred by Arizona's economic loss doctrine. Additionally,

Plaintiffs' negligence *per se* claim is not a cause of action at all. Their claim for breach of implied contract fails because they have not alleged the facts necessary to establish an agreement on the scope of, and parameters for, any obligation to protect Plaintiffs' personal and financial information. And Plaintiffs' unjust enrichment claim fails because they do not allege that they paid anything to Magellan.

Plaintiffs also assert claims for violation of the Arizona Consumer Fraud Act ("Arizona CFA"), the California Unfair Competition Law ("California UCL"), the Florida Deceptive and Unfair Trade Practices Act ("Florida DUTPA"), the Missouri Merchandising Practices Act ("Missouri MPA"), the New York General Business Law ("NYGBL") § 349, the Pennsylvania Unfair and Deceptive Trade Practices and Consumer Protection Law ("Pennsylvania CPL"), and the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"). But Plaintiffs do not plead which specific statement they believe to be false or the basis for their belief. Nor are these claims pled with requisite particularity under Federal Rule of Civil Procedure 9(b). Finally, Plaintiffs assert claims under Virginia Code § 18.2-186.6 and the California Consumer Privacy Act ("CCPA"), but they do not plausibly allege a violation of either statute. Thus, dismissal of Plaintiffs' claims is warranted on these additional bases, as well.

Ultimately, Plaintiffs have not asserted, and cannot assert, a single claim upon which relief can be granted, despite having already amended their pleading once. The FACC, therefore, should be dismissed without leave to amend.

## II.   PLAINTIFFS' ALLEGATIONS

Plaintiffs filed this action on behalf of themselves, as former employees of Magellan and/or members of health plans serviced by Magellan's subsidiaries, and on behalf of a nationwide putative class and certain putative subclasses, inclusive of all individuals that may have been impacted by a cyberattack that Magellan allegedly discovered on or about April 11, 2020. (*See generally* ECF No. 30.) Plaintiffs allege that, "[o]n or about April 6, 2020, an unauthorized person gained access to an employee's e-mail by impersonating a client of Magellan," (the "Incident") which "led to a ransomware attack that allowed the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

person to gain access to and extract sensitive data from a Magellan server," including "names, addresses, employees' ID numbers, and W-2 and 1099 details (including Social Security Numbers, and Taxpayer ID numbers) of current and former employees and Magellan providers." (*Id.* at ¶¶ 32–33.) Plaintiffs allege that Magellan failed to (1) protect their personal information; and (2) timely notify them that their personal information potentially had been compromised. (*Id.* at ¶¶ 36, 40.)

Four of the ten Plaintiffs do not allege any loss at all, whether in the form of identity theft, fraud, or other misuse of their information. (*Id.* at ¶¶ 1, 4, 12–13.) The other six Plaintiffs allege they suffered attempted identity fraud after the Incident, but there are no allegations plausibly tying the attempted frauds to the Incident itself and no allegations that they have suffered any actual losses as a result. (*See generally id.*) Leather and Flanders allege that certain of their information resides on the Dark Web; Williams alleges that "a criminal used her name and social security number to apply for Arizona Unemployment Benefits"; Ranson alleges that "someone was able to successfully open an account with AT&T under [his] name"; and Lewis alleges that "he has received several e-mails from [Experian] about various 'hits' to his credit." (*Id.* at ¶¶ 5–11, 14–15.) Those Plaintiffs, however, do not allege any pecuniary loss flowing from these alleged episodes. (*Id.*) Likewise,  Rayam alleges that he "learned that an unauthorized and fraudulent charge in the amount of $3.79 was made to his credit card," but he does not allege that he actually paid the charge. (*Id.* at ¶ 3.) Instead, Plaintiffs claim they suffered (1) "damages resulting from taking the time to . . . protect their financial accounts;" (2) "damages to and diminution in the value of their PII;" (3) and "imminent and impending injury arising from the increased risk of fraud and identity theft." (*Id.* at ¶ 85.)

## III.   <u>MOTION TO DISMISS STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations," the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV.   ARGUMENT

### A.   Plaintiffs Have Failed to Plausibly Allege Cognizable Loss

At the outset, it is important to recognize the distinction between Article III standing and damages as an element of Plaintiffs' claims. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (unpublished) ("[O]ur holding that Plaintiffs-Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims."). This distinction is important because the standards are different. A plaintiff may have Article III standing based solely on the threat of future harm or a statutory violation. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). But, under Arizona law,[1] the threat of future harm alone is not a cognizable loss. *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 7 P.3d 979, 982–83 (Ariz. Ct. App. 2000) ("[D]amage must be 'actual and appreciable,' 'non-speculative,' and more than merely the 'threat of future harm.'") (internal citation omitted).

In short, even if Plaintiffs have standing to sue, that does not mean that they have sufficiently pled damages to survive a challenge under Rule 12(b)(6). Thus, this motion focuses on Plaintiffs' failure to allege cognizable losses on the merits of their claims as opposed to whether they have met the lower threshold to establish Article III standing. *See Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1231 (D. Nev. 2020).

Plaintiffs' claims all require plausible allegations that they suffered cognizable loss or damages caused by Magellan's conduct. *Boyle v. City of Phoenix*, 563 P.2d 905, 906 (Ariz. 1977) (negligence); *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz.

---

[1] Plaintiffs plead that all the relevant conduct took place in Arizona. (*See* ECF No. 30 ¶ 18.). Thus, for purposes of this motion, without waiving the right to engage in a choice of law analysis in the event it is denied, we presume Plaintiffs proffer Arizona law applies.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

2013) (en banc) (breach of contract); *Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019) (unjust enrichment); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016) (Arizona CFA); *Experian Info. Sol., Inc. v. Lifelock, Inc.*, 633 F. Supp. 2d 1104, 1107 (C.D. Cal. 2009) (California UCL requires "lost money [or] property"); Cal. Civ. Code § 1798.150 (CCPA requires "actual pecuniary damages suffered as a result of the alleged violations"); *Warner v. Tinder, Inc.*, No. 15-23790-CIV, 2018 WL 1894726, at *8 (S.D. Fla. Jan. 18, 2018) (Florida DUTPA); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057 (E.D. Mo. 2009) (Missouri MPA requires "an ascertainable loss of money or property"); *Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476 (S.D.N.Y. 2017) (NYGBL § 349); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (Pennsylvania CPL requires "an ascertainable loss"); *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *8 (C.D. Cal. June 15, 2015) (Virginia Code § 18.2-186.6); *Novell v. Migliaccio*, 749 N.W.2d 544, 552 (Wis. 2008) (Wisconsin DTPA requires "a pecuniary loss").

Plaintiffs do not allege that they incurred actual damage or loss as a result of any fraudulent activity that allegedly occurred after the Incident, much less any fraud that can plausibly be tied in some way to the Magellan Incident. None of the Plaintiffs allege that they have incurred any out-of-pocket loss, whatsoever, since the Incident. (*See generally* ECF No. 30.) Indeed, Plaintiffs' alleged "damages" are not cognizable losses but rather proposed remedies for which no compensable loss exists.

For example, Plaintiffs allege that they have suffered "damages resulting from taking the time to . . . attempt to protect their financial accounts," but do not plead any resulting out-of-pocket expenses. (*Id.* at ¶ 85.) Courts have consistently held that, absent any out-of-pocket expenses, time spent obtaining credit reports or reviewing financial accounts does not constitute cognizable loss. *See, e.g., Pruchnicki.*, 439 F. Supp. 3d at 1233 ("[T]he court finds that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages."); *Corona*, 2015 WL 3916744, at *4 ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Plaintiffs also claim that they suffered "damages to and diminution in the value of their PII." (ECF No. 30, ¶ 85.) For this type of damage allegation to suffice, however, Plaintiffs must establish: (1) the "existence of a market for [their] personal information;" and (2) "an impairment of [their] ability to participate in that market." *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016); *Pruchnicki*, 439 F. Supp. 3d at 1234. Aside from a conclusory allegation that "a robust 'cyber black market' exists" for their information (ECF No. 30, ¶ 67), Plaintiffs do not allege any facts to establish either element and cannot plausibly allege that any reasonable person would participate in selling their own information on the "cyber black market."

Next, Plaintiffs allege that they face an "imminent and impending injury arising from the increased risk of fraud and identity theft." (*Id.* at ¶¶ 85–86, 89.) The Ninth Circuit has held, however, that the mere risk of future harm does not constitute cognizable injury. *See Krottner*, 406 F. App'x. at 131. Moreover, even where a plaintiff alleges misuse of personal information (as only six Plaintiffs do here), such misuse does not constitute cognizable injury in the absence of actual, appreciable financial loss flowing from that misuse. *Id.* ("Even Shamasa, the only plaintiff who claims his personal information has been misused, alleges no loss related to the attempt to open a bank account in his name. . . . We therefore affirm the dismissal of [his] negligence claim."). Accordingly, (1) the future harm allegations of Plaintiffs Griffey, Domingo, Rivera, and Culberson; and (2) the misuse allegations of Plaintiffs Rayam, Leather, Williams, Ranson, Flanders, and Lewis, absent any resulting out-of-pocket loss, which they have not pled, are not cognizable injuries.

Finally, Plaintiffs Leather, Ranson, and Lewis allege that they purchased their own credit monitoring services, and Plaintiff Flanders alleges that he "recently paid a cybersecurity consultant to search the 'Dark Web' for his information." (ECF No. 30, ¶¶ 5, 9, 11, 15.) However, following the Incident, Magellan provided these plaintiffs with access to a high-quality credit monitoring service for at least two years, free of charge. (*Id.* at Exs. D, F, G, J (stating Plaintiffs were offered a two-to-three-year "complimentary . . . membership of Experian's® IdentityWorks℠. This product provides you with superior

identity detection and resolution of identity theft.").) Accordingly, any mitigation expenses that Plaintiffs may have voluntarily incurred were unnecessary and do not constitute cognizable injury. *See In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 970 (S.D. Cal. 2014) ("In assessing whether credit monitoring services in the context of data breach cases are recoverable in negligence, courts . . . require a plaintiff to plead that the monitoring costs were both reasonable and necessary.").

Plaintiffs have not alleged any facts to demonstrate that they suffered cognizable losses as a result of the Incident. All their claims should be dismissed on this basis.

### B.   <u>Plaintiffs' Negligence Claim Should Be Dismissed</u>

#### 1.   *Plaintiffs Have Failed to Plead Causation*

Plaintiffs have failed to plausibly allege proximate causation, a required element of their negligence claim. *See Boyle*, 563 P.2d at 906. Even assuming *arguendo* that six of the Plaintiffs have alleged damages, the FACC merely speculates that, because their data was misused after the Incident, such misuse must have been caused by the Incident. Such speculation based on a purely temporal connection does not constitute a plausible allegation that the Incident proximately caused Plaintiffs' alleged "damages." *See Stollenwerk v. Tri-West Health Care All.*, 254 F. App'x. 664, 668 (9th Cir. 2007) (unpublished) ("*[P]urely* temporal connections are often insufficient to establish causation."); *In re Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *25 (N.D. Ala. Sept. 12, 2016) ("The Plaintiffs cannot rest merely upon time and sequence that the alleged fact of misuse occurred after the data breach.").

Indeed, to avoid dismissal for failure to plead causation, a plaintiff must allege facts sufficient to rule out other causes. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326–27 (11th Cir. 2012) (recognizing that plaintiffs allegedly took special precautions to protect their data and were not victims of prior data breaches, and noting "[h]ad Plaintiffs alleged fewer facts, we doubt whether the Complaint could have survived a motion to dismiss."). Plaintiffs have alleged no such facts here, and their negligence claim should be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1

### 2. *Any Negligence Claim is Barred by the Economic Loss Doctrine*

2  Arizona's economic loss doctrine "limit[s] a contracting party to contractual
3  remedies for the recovery of economic losses unaccompanied by physical injury to persons
4  or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d
5  664, 667 (Ariz. 2010) (en banc). Put simply, unless there is personal injury or property
6  damage, a contracting party may not recover in tort for economic losses. *See id.*; *see also*
7  *Shaw v. CTVT Motors, Inc.*, 300 P.3d 907, 909 (Ariz. Ct. App. 2013) (applying doctrine to
8  bar negligence claim) (internal citation omitted); *FTC Solar Cap. XIX, LLC v. Folium*
9  *Energy Dev., LLC*, No. CV-15-00875-PHX-DJH, 2017 WL 3841490 (D. Ariz. Mar. 16,
10  2017) (doctrine applies beyond the areas of construction defects and products liability).

11  Here, Plaintiffs allege that they "entered into implied contracts with [Magellan]" for
12  data security; therefore, according to the FACC, Plaintiffs and Magellan were contracting
13  parties. (ECF No. 30, ¶ 157.) Again, Plaintiffs do not sufficiently allege *any* injury, but,
14  even if they had been injured, their injuries would be solely economic. Plaintiffs do not and
15  cannot allege that they suffered personal injury from the Incident, and diminution in the
16  value of personal information is not the type of "property damage" contemplated by the
17  economic loss doctrine. *See, e.g., In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489,
18  498 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) (affirming dismissal of
19  negligence claims under economic loss doctrine: although "[e]lectronic data can have value
20  and the value can be lost, . . . the loss here is not a result of physical destruction of property"
21  and, therefore, is purely economic). Plaintiffs' negligence claim is barred by Arizona's
22  economic loss doctrine and should be dismissed.

23  ### C. Plaintiffs' Negligence *Per Se* Claim Is Not a Cause of Action

24  "Negligence per se is not a cause of action separate from common law negligence.
25  It is a doctrine under which a plaintiff can establish the duty and breach elements of a
26  negligence claim based on a violation of a statute that supplies the relevant duty of care."
27  *Craten v. Foster Poultry Farms, Inc.*, 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018)
28  (internal citation omitted). Plaintiffs' standalone negligence *per se* claim is therefore not a

cognizable legal claim and should be dismissed. *See Manion v. Ameri-Can Freight Sys. Inc.*, No. CV-17-03262-PHX-DWL, 2019 WL 8325752, at *3 (D. Ariz. Oct. 11, 2019).

### D. Plaintiffs' Breach of Implied Contract Claim Fails

#### 1. Plaintiffs Have Not Pled the Terms of an Implied Contract

"For a valid contract to exist, there must have been an offer, acceptance of the offer, consideration, sufficient specification of terms so that the obligations involved can be ascertained, and the parties must have intended to be bound by the agreement." *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016) (internal citations omitted).

Plaintiffs here have not sufficiently pled any element of their breach of implied contract claim, including the purported terms of an agreement. They merely allege that when they "provided their PII to Defendant Magellan Health . . . they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information." (ECF No. 30, ¶ 157.) Plaintiffs do not allege specifically what Magellan promised to do in the event of, or to protect against, a ransomware attack. And the mere assertion that Magellan was the victim of an attack, through an employee clicking on a phishing email, is not a plausible allegation of the existence and breach of an implied term for "industry standard" data security. *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717–18 (8th Cir. 2017) ("The implied premise that because data was hacked Scottrade's protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss." (alteration in original) (quoting *Iqbal*, 556 U.S. at 678)); *see also id.* at 718 (dismissing breach of implied contract claim because the court was "left to guess how Scottrade failed to take 'industry leading' security measures").

Plaintiffs' breach of implied contract claim is merely based on an allegation that Magellan was supposed to take some undefined action, based on some undefined implied contractual term, but somehow failed to do so. These vague and conclusory allegations do not constitute "sufficient specification of terms so that the obligations involved can be ascertained," as required by Arizona law. *See Day*, 174 F. Supp. 3d at 1153. Plaintiffs' breach of implied contract claim should therefore be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

2. ***Plaintiffs Have Failed to Plead Consideration***

In addition, implied contracts, like express contracts, "must be supported by consideration." *Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980). Here, Plaintiffs not only fail to allege consideration for an implied agreement to protect their PII, (*see* ECF No. 30, ¶ 157.), they also identically allege that Magellan had pre-existing legal duties to provide the exact same protection under federal law. (*See id.* at ¶ 121 ("Defendant's duty to use reasonable security measures under HIPAA required Defendant to 'reasonably protect' confidential data from 'any intentional or unintentional use or disclosure' and to 'have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information.' 45 C.F.R. § 164.530(c)(1).").)

But "[a] promise to do something which a party is already legally obliged to do is no consideration for a contract." *J.D. Halstead Lumber Co. v. Hartford Acc. & Indem. Co.*, 298 P. 925, 927 (Ariz. 1931) (internal citations omitted); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (dismissing breach of contract claim in data breach class action, reasoning, "[n]othing here suggests a reasonably ascertainable promise to do anything not already required by law") As Plaintiffs allege, Magellan was legally obligated to implement reasonable data security measures. Accordingly, even if Magellan did generally promise to protect Plaintiffs' information, that promise was nothing more than a promise to fulfill a pre-existing legal duty, which is not consideration to support a legally binding implied contract. Thus, Plaintiffs' breach of implied contract claim also fails because it lacks consideration.

**E.   Plaintiffs' Unjust Enrichment Claim Should Be Dismissed Because Plaintiffs Do Not Plead an Enrichment or an Impoverishment**

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) (internal citations omitted). "To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of

justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.* Plaintiffs allege that Magellan was unjustly enriched because "Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Personal Information." (ECF No. 30, ¶ 168.) This claim fails for two reasons.

First, Plaintiffs do not allege an enrichment. To the contrary, Plaintiffs concede that they did not pay anything to Magellan. (*Id.* at ¶ 31 ("Magellan Health receive[s] fees from [its] affiliates or the states in which they operate to administer . . . benefits and to provide services related to those benefits to Class Members.").) Accordingly, Magellan could not have been enriched at Plaintiffs' expense. *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) ("[T]he connection between Plaintiffs and [Defendant] here is simply too attenuated to support an unjust enrichment claim.").

Second, even assuming Plaintiffs conferred some benefit on Magellan, nowhere in the FACC do Plaintiffs allege that they were denied coverage or services in any way whatsoever. "To the extent that Plaintiffs claim that some indeterminate part of their premiums went toward paying for security measures, such a claim is too flimsy" to establish any type of "impoverishment." *See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim because plaintiff "paid for food products . . . not . . . for a side order of data security and protection; it was merely incident to her food purchase.") (applying Arizona law). This claim should be dismissed accordingly.

### F.   Plaintiffs' Statutory Claims Should Be Dismissed

Beyond failing to plausibly allege damages and/or an ascertainable loss of money or property, Plaintiffs' statutory claims should be dismissed for five additional reasons. First, Plaintiffs fail to plead their claims with the requisite Rule 9(b) particularity. Second, although Leather's NYGBL § 349 claim is not subject to Rule 9(b), she has not plausibly alleged a material misrepresentation or omission. Third, the California UCL, Florida

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

DUTPA, Missouri MPA, NYGBL § 349, and Wisconsin DTPA do not apply to conduct that occurred outside the respective states. Since, here, Plaintiffs have pled that all the relevant conduct took place in Arizona, those claims separately fail, as well. Fourth, Rayam, Griffey, Domingo, Williams, Ranson, and Flanders (the "Former Employee Plaintiffs") do not (and cannot) allege that their former employment or independent contractor relationships with Magellan constituted the "sale" of "merchandise" within the meaning of the Arizona CFA and Missouri MPA. Fifth, Flanders' Virginia Code § 18.2-186.6 claim and Ranson's CCPA claim fail because they have failed to plausibly allege a violation of the statutes. For these reasons, Plaintiffs' statutory claims should all be dismissed.

### 1. Plaintiffs' Arizona, California, Florida, Missouri, Pennsylvania, and Wisconsin Statutory Claims Do Not Satisfy Rule 9(b)

Plaintiffs' Arizona CFA, California UCL, Florida DUTPA, Missouri MPA, Pennsylvania CPL, and Wisconsin DTPA claims all must be pled with Rule 9(b) particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."); *Lorona v. Ariz. Summit Law Sch.*, 188 F. Supp. 3d 927, 935 (D. Ariz. 2016) (applying Rule 9(b) to the Arizona CFA); *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264-JSW, 2013 WL 1283236, at *9 (N.D. Cal. Mar. 26, 2013) (same as to the California UCL); *In re Monat Hair Care Prod. Mktg., Sales Prac. & Prod. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *6 n.11 (S.D. Fla. Oct. 23, 2019) ("[T]his Courts finds that [Florida] DUTPA claims must satisfy Rule 9(b) where such claims sound in fraud."); *Kuhns*, 868 F.3d at 719 (applying Rule 9(b) to the Missouri MPA); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 720 (E.D. Pa. 2013) (same as to the Pennsylvania CPL); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1130–31 (E.D. Wis. 2016) (same as to the Wisconsin DTPA).

Rule 9(b) requires that Plaintiffs "state with particularity the circumstances constituting fraud including the who, what, when, where and how of the misconduct

charged." *Loomis v. U.S. Bank Home Mortg.*, 912 F. Supp. 2d 848, 856 (D. Ariz. 2012) (quoting Fed. R. Civ. P. 9(b)). Though a fraud-by-omission claim "faces a slightly more relaxed [pleading] burden" than affirmative-fraud claims, plaintiffs are still required to "describe the content of the omission and where the omitted information should or could have been revealed[.]" *In re Arizona Theranos Inc., Litig.*, 256 F. Supp. 3d 1009, 1023, 1028 (D. Ariz. 2017), *on reconsideration in part*, No: 2:16-CV-2138-HRH, 2017 WL 4337340 (D. Ariz. Sept. 2017) (internal citations and quotations omitted).

Plaintiffs' statutory claims are wholly devoid of specificity. First, Plaintiffs fail to allege with any particularity the "where" of the alleged misrepresentations—*i.e.*, which documents they believe to be the source of Magellan's alleged representations. Second, Plaintiffs fail to allege the "when," as they do not allege the dates or time frames for when any alleged misrepresentations were made. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (dismissing fraud claim for failure to specify "times, dates, places or other details of [the] alleged fraudulent involvement"). In fact, Plaintiffs fail to point to any specific statements or omissions whatsoever, in any document, that they believe evince a falsehood or misrepresentation. Instead, Plaintiffs generically allege that Magellan misrepresented that it would "maintain[] adequate data privacy and security practices and procedures," and that "it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class Members' PHI and PII." (*See, e.g.,* ECF No. 30 ¶ 181 (c)–(d).) But these allegations fail to identify what specific statements were misrepresentations or why any such statements were false or misleading. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[F]actual allegations must include the 'time, place, and *specific content* of the false representations") (emphasis added); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). Additionally, Plaintiffs fail to allege what specific content they believe was omitted and "where the omitted information should or could have been revealed." *See Theranos*, 252 F. Supp. 3d at 1028.

Plaintiffs' conclusory allegations—completely untethered from specific averments of "when, where, and how" the alleged misconduct occurred—do not meet Rule 9(b)'s heightened pleading standard. Thus, their Arizona CFA, California UCL, Florida DUTPA, Missouri MPA, Pennsylvania CPL, and Wisconsin DTPA claims should be dismissed.

### 2.  *Plaintiff Leather's NYGBL § 349 Claim Fails Because She Has Not Plausibly Alleged a Material Misrepresentation or Omission*

Leather's Section 349 claim is conclusory and should be dismissed. It does not allege any specific misrepresentations that Magellan made. Nor does it identify what additional disclosures Magellan should have made. *See Dixon v. Ford Motor Co.*, No. 14-CV-6135 (JMA) (ARL), 2015 WL 6437612, *8 (E.D.N.Y. Sept. 30, 2015) ("Although the GBL § 349 allegations in the complaint generally refer to . . . statements that were false or misleading, the complaint never identifies the specific . . . statements at issue. That alone is reason to dismiss plaintiff's misrepresentation claims."). Moreover, even if Leather had alleged that Magellan's privacy policy contained a material misstatement or omission, that would still not save her claim. *See Abdale v. N. Shore Long Island Jewish Health Sys.*, 19 N.Y.S.3d 850, 859–60 (N.Y. Sup. Ct. 2015) ("[T]he statements allegedly made by defendants in the privacy policy and online notices do not constitute an unlimited guaranty that patient information could not be stolen or that computerized data could not be hacked. Defendants' alleged failure to safeguard plaintiffs' protected health information . . . does not constitute a deceptive practice within the meaning of the statute.").

### 3.  *The California UCL, Florida DUTPA, Missouri MPA, NYGBL § 349, and Wisconsin DTPA Do Not Apply Extraterritorially.*

Plaintiffs attempt to bring claims under the California UCL, Florida DUTPA, Missouri MPA, NYGBL § 349, and Wisconsin DTPA; however, those statutes only apply to conduct that occurred in California, Florida, Missouri, New York, and Wisconsin, respectively. *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("[T]he presumption against extraterritoriality applies to the California UCL in full force."); *Eli Lilly & Co. v. Tyco Integrated Sc., LLC.*, No. 13-80371-CIV, 2015 WL 11251732, at *4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

(S.D. Fla. Feb. 10, 2015) ("It is understood that [Florida] DTPA applies only to action that occurred within the State of Florida.") (internal quotations and citations omitted); *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 800 (Mo. Ct. App. 2003) (Missouri MPA requires that "the trade or commerce originate or occur 'in or from the state of Missouri.'"); *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y. 2002) ("To apply [NYGBL § 349] to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to [] nationwide, if not global application") (internal citation omitted); *T&M Farms v. CNH Indus. Am., LLC*, No. 19-C-0085, 2020 WL 5633271, at *4 (E.D. Wis. Sept. 21, 2020) ("Nothing in the text or purpose of the [Wisconsin] DTPA suggests that this extraterritorial effect was intended.") (internal citation omitted).

Here, all Plaintiffs allege is that Ranson, Lewis, Griffey, Leather, and Rivera respectively reside in California, Florida, Missouri, New York, and Wisconsin. (ECF No. 30, ¶¶ 1, 5, 8, 12, 14.) They do not allege that Magellan's purported wrongful conduct occurred in those states. To the contrary, Plaintiffs allege that all the relevant conduct likely occurred in Arizona. (*Id.* at 18 ("Defendant . . . operates and is headquartered in this District [of Arizona]. The computer systems implicated in this Data Breach are also likely based in this District.").) For this reason, Plaintiffs' California UCL, Florida DUTPA, Missouri MPA, NYGBL § 349, and Wisconsin DTPA claims should be dismissed. *See, e.g., Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 2048 (C.D. Cal. 2019).

### 4. Former Employee Plaintiffs Cannot Allege That Magellan "Sold" Them "Merchandise" Under the Arizona CFA and Missouri MPA

The Arizona CFA applies only to false statements or deceptive practices "made in connection with the sale . . . of any merchandise." Ariz. Rev. Stat. § 44-1522(A); *Davis v. Bank of Am. Corp.*, No. CV 12-01059-PHX-NVW, 2012 WL 3637903, at *5 (D. Ariz. Aug. 23, 2012). Similarly, "to be actionable under the Missouri MPA, the alleged unlawful act must occur in relation to a sale of merchandise." *Kuhns*, 868 F.3d at 719.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

All the Former Employee Plaintiffs allege is that they were former employees or independent contractors of Magellan. (*See* ECF No. 30, ¶¶ 1–2, 4, 6, 8, 11.) They do not allege that such a relationship constitutes "merchandise" as defined under the Acts. (*Id.* at ¶¶ 180, 213.) Nor would the purpose of the Acts support such an argument. *See Powers v. Guaranty RV, Inc.*, 278 P.3d 333, 339 (Ariz. Ct. App. 2012) (holding that the Arizona CFA applies to *merchant-consumer* transactions); *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 439 (Mo. 2013) (en banc) (same as to the Missouri MPA). Additionally, the Former Employee Plaintiffs do not (and cannot) allege that their employment or independent contractor relationships were sold to them by Magellan. *See* Ariz. Rev. Stat. § 44-1521(7) (defining "sale," in part, as "sale for consideration"); Mo. Rev. Stat. § 407.010(6) (same). Former Employee Plaintiffs' Arizona CFA and Missouri MPA claims should be dismissed, as a result.

### 5.    *Plaintiff Flanders Has Not Plausibly Alleged a Violation of Virginia Code § 18.2-186.6*

Virginia Code § 18.2-186.6 provides that entities must disclose certain data security incidents to "any affected resident of the Commonwealth without unreasonable delay." Va. Code. Ann. § 18.2-186.6(B). Here, Flanders does not allege any facts indicating that Magellan's notification was inaccurate or "unreasonably delayed." Flanders received notification of the Incident on May 4, 2020, less than one month after it was discovered. (ECF No. 30, ¶¶ 11, 38, Ex. G.) Another court construing a similar notification statute concluded that a time period over five times longer than this one was not "unreasonably delayed." *See Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (concluding that, although a five-month period between a security incident and notification "in a vacuum [] may seem to be a long time, all that [the statute] requires is that the notification be without '[un]reasonable delay," and plaintiff failed to "allege facts that suggest this time frame" was an "unreasonable delay").

Moreover, even if Flanders had plausibly alleged "unreasonable delay," he does not allege a single fact showing that he was injured as a result. (*See* ECF No. 30, ¶¶ 245–53);

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*see also Corona*, 2015 WL 3916744, at *8 (dismissing Virginia Code § 18.2-186.6 claim because plaintiffs "failed to plausibly allege any injury *resulting from* Sony's alleged untimely notification," thus, "[w]ithout an allegation of economic damages, the claim fails") (emphasis added). Flanders' Virginia Code § 18.2-186.6 claim should be dismissed.

**6.      Plaintiff Ranson Has Not Plausibly Alleged a Violation of the CCPA**

To state a claim under the CCPA, a plaintiff must plausibly allege "actual pecuniary damages suffered as a result of the alleged violations of this title." Cal. Civ. Code § 1798.150(a)–(b). Here, Ranson wholly fails to meet this bar. Although he alleges that a "fraudulent charge in the amount of $3.79 was made to his credit card," he does not allege that he actually paid this charge. (ECF No. 30, ¶ 3.) Instead, Ranson alleges mere inconvenience—that he "was required to report the issue to the bank that issued the card and to request a new card." (*Id.*) He also alleges that he receives "spam telephone calls and spam text messages daily," and, as a result, "he has blocked nearly 500 numbers from calling his phone." (*Id.*) Neither of these allegations constitute "actual pecuniary damages," required under the CCPA. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 134 (D. Me. 2009), *aff'd in part, rev'd in part sub nom. on other grounds*, *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ("[T]here is no way to value and recompense the time and effort that consumers spent in reconstituting their bill-paying arrangements or talking to bank representatives to explain what charges were fraudulent. Those are the ordinary frustrations and inconveniences that everyone confronts in daily life with or without fraud or negligence."); *I Tan Tsao v. Captiva MVP Rest. Partners, LLC*, No. 8:18-CV-1606-T-02SPF, 2018 WL 5717479, *2 (M.D. Fla. Nov. 1, 2018) ("[I]nconvenience, hassle, and nuisance of monitoring the situation caused by the data breach . . . amount to speculation of future, potential injury at best. *De minimus non curat lex*."). Ranson's CCPA claim fails for this reason.

**V.      CONCLUSION**

For the reasons stated above, Magellan respectfully requests that the Court grant this motion and dismiss Plaintiffs' FACC in its entirety and without leave to amend.

– 17 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Dated:   January 25, 2021

Respectfully submitted,

By:   */s/ Sean B. Solis*

BAKER & HOSTETLER LLP

Sean B. Solis (admitted *pro hac vice*)
Paul G. Karlsgodt (admitted *pro hac vice*)
1801 California Street
Suite 4400
Denver, Colorado 80202
Telephone:    303.861.0600
Facsimile:     303.861.7805
ssolis@bakerlaw.com
pkarlsgodt@bakerlaw.com

Christopher A. Wiech (admitted *pro hac vice*)
1170 Peachtree Street
Suite 2400
Atlanta, Georgia 30309
Telephone:    404.459.0050
Facsimile:     404.459.5734
cwiech@bakerlaw.com

*Attorneys for Defendant Magellan Health, Inc.*