Elaine A. Ryan (AZ Bar #012870)
Carrie A. Laliberte (AZ Bar #032556)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Rd., Suite 300
Phoenix AZ 85016
Telephone: (602) 274-1100
Email: eryan@bffb.com
        claliberte@bffb.com

Patricia N. Syverson (AZ Bar # 020191)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 798-4593
Email: psyverson@bffb.com

*Attorneys for Plaintiffs and the Class*

*(Additional Counsel listed below)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Griffey, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Magellan Health, Incorporated,<br><br>    Defendant. | No. CV-20-01282-PHX-MTL (Lead)<br>No. CV-20-01350-PHX-MTL (Cons)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Assigned to the Hon. Michael T. Liburdi |
| Daniel Ranson, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Magellan Health, Incorporated,<br><br>    Defendant. | |

# **TABLE OF CONTENTS**

**Page**

I.    PROCEDURAL BACKGROUND ........................................................................ 3

II.   ARGUMENT ....................................................................................................... 3

    A.   Plaintiffs allege cognizable loss to support their claims .............................. 3

    B.   Plaintiffs have adequately alleged how Defendant's data security was inadequate and fell below industry standards ................................................ 4

    C.   Plaintiffs have adequately pled their unjust enrichment claim ..................... 6

    D.   Plaintiffs' consumer protection claims are adequately pled ......................... 7

    E.   Extraterritoriality is not a bar to Plaintiffs' consumer protection claims...... 9

    F.   Plaintiff Leather's NYGBL claim is properly pled ..................................... 11

    G.   Plaintiff Lewis has properly alleged his FDUTPA claim ........................... 12

    H.   Plaintiff Ranson's CCPA claim is properly pled ........................................ 14

III.  CONCLUSION .................................................................................................. 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page**

**CASES**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*

      125 F. Supp. 3d 945 (N.D. Cal. 2015)........................................................ 2, 10

*Ang v. Bimbo Bakeries USA, Inc.*

      2013 WL 5407039 (N.D. Cal. Sept. 25, 2013)........................................... 7

*Ashcroft v. Iqbal*

      556 U.S. 662 (2009) ................................................................................... 5

*Bailey v. St. Louis*

      196 So. 3d 375 (Fla. 2d Dist. Ct. App. 2016)........................................... 13

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*

      2012 WL 1570057 (S.D. Fla. May 2, 2012)......................................... 2, 10

*Bates v. Mortg. Elec. Registration Sys., Inc.*

      694 F.3d 1076 (9th Cir. 2012) ................................................................... 3

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*

      2012 Pa. Super 60 (2012) ........................................................................... 9

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*

      472 F. Supp. 3d 142 (W.D. Penn. 2020) ................................................... 5

*Burrows v. Purchasing Power, LLC*

      2012 WL 9391827 (S.D. Fla. Oct. 18, 2012) .......................................... 14

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*

      169 So. 3d 164 (Fla. 4th Dist. Ct. App. 2015)......................................... 13

*Democratic Republic of the Congo v. Air Cap. Grp., LLC*

      614 F. App'x 460 (11th Cir. 2015).......................................................... 12

*E A Tapping Servs., LLC v. CDM Constructors Inc.*

      2021 WL 1985338 (M.D. Fla. Feb. 23, 2021)......................................... 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*
    2018 WL 3635112 (M.D. Fla. May 9, 2018) ................................................. 2

*Env't Mfg. Sols., LLC v. Fluid Energy Grp., Ltd.*
    2018 WL 6264836 (M.D. Fla. Nov. 30, 2018) ........................................... 12

*Escobar v. Just Born Inc.*
    2017 WL 5125740 (C.D. Cal. June 12, 2017) ............................................. 7

*Francois v. Gulf Coast Transp., Inc.*
    2016 WL 4097108 (M.D. Fla. Aug. 2, 2016) .............................................. 13

*Gritzke v. M.R.A. Holding, LLC.*
    2002 WL 32107540 (N.D. Fla. 2002) ....................................................... 14

*In re Anthem*
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ...................................................... 9

*In re Banner Health Data Breach Litig.*
    2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ........................................... 4, 6

*In re: Blackbaud*
    2021 WL 3568394 (D.S.C. Aug. 12, 2021) .............................................. 11

*In re Capital One Consumer Data Sec. Breach Litig.*
    488 F. Supp. 3d 374 (E.D. Va. 2020) ....................................................... 11

*In re ConAgra Foods Inc.*
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...................................................... 7

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) ...................................................... 9

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
    440 F. Supp. 3d 447 (D. Md. 2020) .......................................................... 11

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*
    2020 WL 2214152 (S.D. Cal. May 7, 2020) ............................................ 8, 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ........................................................ 4

*James D. Hinson Elec. Contracting Co. v. Bellsouth Telecommunications, Inc.*
    2008 WL 360803 (M.D. Fla. Feb. 8, 2008 ........................................................ 14

*Leon v. Tapas & Tintos, Inc.*
    51 F. Supp. 3d 1290 (S.D. Fla. 2014)............................................................ 12

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ........................................................................ 3

*Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*
    760 So. 2d 1037 (Fla. 2d Dist. Ct. App. 2000).................................................. 10

*Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*
    187 So. 3d 868 (Fla. 3d Dist. Ct. App. 2016).................................................... 13

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*
    642 F. Supp. 2d 1112 (C.D. Cal. 2009).......................................................... 7

*Pruchnicki v. Envision Healthcare Corp.*
    439 F. Supp. 3d 1226 (D. Nev. 2020) ............................................................ 4

*Semegen v. Weidner*
    780 F.2d 727 (9th Cir. 1985) ........................................................................ 8

*Stasi v. Inmediata Health Grp. Corp.*
    501 F. Supp. 3d 898 (S.D. Cal. 2020) ............................................................ 15

*Wallace v. Health Quest Sys., Inc.*
    2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)............................................... 11, 12

*Vazquez v. Joseph Cory Holdings*, LLC
    2016 WL 11221088 (M.D. Fla. Nov. 10, 2016)................................................. 13

*Werdebaugh v. Blue Diamond Growers*
    2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) .................................................... 7

**U.S. Code**

15 U.S.C. § 45 ................................................................................................ 8

iv

**California Statutes**

Cal. Civ. Code § 1798.81.5 .................................................................. 8

Cal. Civ. Code §§ 1798.100 ................................................................. 8

Cal. Civ. Code § 1798.140 ................................................................. 10

Cal. Civ. Code § 1798.150(a)(1) ...................................................... 2, 15

Cal. Civ. Code § 1798.150(b) .......................................................... 2, 15

**Florida Statutes**

Fla. Stat. § 501.202 ........................................................................... 12

Fla. Stat. § 501.204(1) .................................................................... 9, 12

Fla. Stat. § 501.211(2) ................................................................. 12, 13

**Wisconsin Statutes**

Wis. Stat. § 100.18

Defendant's Motion to Dismiss (D.E. 41 ("MTD" or "Motion")) ignores new allegations pled by Plaintiffs to cure the deficiencies identified in the Court's MTD Order (D.E. 39) and is contrary to controlling case law.

Plaintiffs have properly alleged cognizable loss in the form of out-of-pocket expenses which Plaintiffs allege were reasonably and necessarily incurred to protect the highly sensitive personal information compromised by the Data Breach because the products purchased offered key services not included in the products offered by Defendant.  D.E. 40 ("SAC"), at ¶¶ 5, 9, 11, 15.  Because Plaintiffs have alleged out-of-pocket expenses, the time spent mitigating their damages also constitute cognizable loss.  And Plaintiffs Rayam and Williams have alleged that their information was actually misused, which constitutes recoverable injury.

Plaintiffs have also alleged, with as much specificity as they can at this pre-discovery stage, how Defendant's data security was inadequate.  Namely, Defendant failed to: (1) specifically monitor ingress and ingress network traffic on its servers; (2) maintain an inventory of public facing Ips; (3) monitor elevated privileges; (4) equip its servers with an anti-virus or anti-malware software capable of detecting the ransomware; and (5) employ basic file integrity monitoring.  *Id.* at ¶ 22.

Finally, Plaintiffs have adequately pled each of the claims Defendant challenges.  First, Plaintiffs sufficiently allege an unjust enrichment claim because they alleged how Defendant's data security was inadequate and how Defendant was enriched as a result: Plaintiffs and patient Class Members paid money to Defendant that was intended to be used in part to fund adequate data security and employee Class Members conferred the benefit of their labor to Defendant, and part of that benefit conferred was intended to be used by Defendant to fund adequate data security.

Second, Plaintiffs sufficiently allege the "where," "when," and "why" of Defendant's consumer fraud because they allege that the HIPAA Notice of Privacy Practices disseminated in members' home states when they became Magellan patients promised that Defendant will "use or disclose [members'] Protected Health Information

1

(PHI) only for very specific reasons" and will maintain the privacy of members' PHI. SAC ¶¶ 55-56. These statements were misleading because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII and PHI. *Id.* at ¶ 182. Plaintiffs also allege that Defendant's fraudulent omissions and unlawful/unfair conduct violated the state consumer protection statutes, which Defendant does not challenge.

Third, both the FDUTPA and California UCL apply extraterritorially. *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, 2012 WL 1570057, at *6 (S.D. Fla. May 2, 2012); *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015).

Fourth, Plaintiff Leather's new NYGBL allegations point to definite and actionable promises of data privacy made in the HIPAA Notice of Privacy Practices, which Defendant did not keep. SAC ¶ 204.

Fifth, Defendant's argument that Plaintiff Lewis's FDUTPA claim must be dismissed because he is not a consumer "is foreclosed by governing law." *Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*, 2018 WL 3635112, at *15 (M.D. Fla. May 9, 2018).

Sixth, Plaintiff has stated a CCPA claim based on the PII that Plaintiffs repeatedly allege was subject to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's conduct (*e.g.*, SAC ¶¶ 20, 192), and Plaintiff's CCPA Notice (D.E. 41-1) complied with the plain language of Cal. Civ. Code § 1798.150(b) because it was given well over 30 days "[p]rior to initiating any action against a business **for statutory damages on an individual or class-wide basis**" (emphasis added) and it explicitly stated that "[t]he specific code section violated is Cal. Civ. Code 1798.150(a)(1)." D.E. 41-1 at 2.

Because Plaintiffs' SAC cures the deficiencies identified in the Court's MTD Order and none of Defendant's new arguments have merit, Defendant's Motion should be denied.

I.   **PROCEDURAL BACKGROUND**

In its Order granting Defendant's previous motion to dismiss (D.E. 39 ("MTD Order")), this Court instructed Plaintiffs to amend their allegations to address several pleading deficiencies.   Plaintiffs have done so by removing their breach of implied contract, Arizona Consumer Fraud Act, Missouri Merchandising Practices Act, and Virginia Code § 18.2-186.6 claims.   And, as discussed below, Plaintiffs have amended their remaining allegations to support the reasonableness of their damages, allege how Defendant's data security was inadequate, and otherwise state claims for relief.

II.   **ARGUMENT**

   **A. Plaintiffs allege cognizable loss to support their claims.**

Plaintiffs have sufficiently alleged cognizable loss to support their claims. In its Order granting Defendant's previous motion to dismiss, this Court directed Plaintiffs to "allege that the identity monitoring services offered by Magellan were inadequate in some way to justify the out-of-pocket expenses" they incurred.   MTD Order at 10. Plaintiffs Leather, Ranson, Lewis, and Flanders did so.   Specifically, Plaintiff Leather alleges that the Lifelock credit monitoring service she enrolled in "is superior to the Experian IdentityWorks 3b product offered by Defendant because the Lifelock product offers several key services missing from the Experian product, including monitoring and alerts if Plaintiff Leather's personal information appears on the Dark Web.   SAC ¶ 5. Plaintiff Ranson alleges that the credit monitoring service he enrolled in "was necessary given the sensitive nature of the information compromised by the Breach and the fact that the product offered by Defendant did not offer identity theft monitoring and protection." D.E. 40 ("SAC"), at ¶ 9.   The same is true for the monitoring service purchased by Plaintiff Lewis (*id.* at ¶ 15) and the cybersecurity consultant Plaintiff Flanders hired to search the Dark Web for his information following the Breach.   *Id.* at ¶ 11.   These allegations and reasonable inferences therefrom must be accepted as true and construed in Plaintiffs' favor. *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).   Thus,

Plaintiffs have alleged that their out-of-pocket expenses were reasonable and necessary. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 970 (S.D. Cal. 2014), *order corrected*, 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).

Because Plaintiffs have alleged out-of-pocket expenses, the time spent mitigating their damages also constitutes cognizable loss.  *Id.* at ¶¶ 5, 9, 11, 15.  *See, e.g.*, *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020), *aff'd* 845 F. App'x 613 (9th Cir. 2021) ("[T]angible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages.").

And because Plaintiffs Rayam (unauthorized charges on his card) and Williams (information used to apply for AZ unemployment benefits) have alleged that "they have suffered actual misuse of their personal information [they] have clearly suffered an actual injury for which they may recover."  *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *8 (D. Ariz. Dec. 20, 2017) ("*Banner*").

### B. Plaintiffs have adequately alleged how Defendant's data security was inadequate and fell below industry standards.

As instructed by the Court, Plaintiffs' SAC alleges numerous actual deficiencies showing just how Defendant failed to maintain proper data security to prevent its systems from being breached.  These new allegations are specific to the particular means of attack – a **ransomware attack** that occurred after an unauthorized person first gained access to an employee's e-mail.  SAC ¶ 32.  "A ransomware attack deploys **a type of malicious software** that blocks access to a computer system or data, usually by encrypting it, until the victim pays a fee to the attacker."  *Id*. at ¶ 37 (emphasis added).

Plaintiffs have now alleged that Defendant failed to properly safeguard Plaintiffs' and Class Members' PII and PHI by failing to monitor ingress and ingress network traffic on its servers; by failing to maintain an inventory of public facing Ips; by failing to monitor elevated privileges; by failing to equip its servers with an anti-virus or **anti-malware** software capable of detecting the ransomware; and by failing to employ basic file integrity monitoring.  *Id.* at ¶ 22 (emphasis added).

These allegations are far from "the exact same allegations" Defendant points to in the First Amended Complaint. They provide ample notice of how Defendant's data security was inadequate at the time of the breach. Coupled with these deficiencies is the fact that this was the second breach that occurred within 11 months. And, while the Court held that the latter itself is not a sufficient allegation of a deficiency, when combined with the foregoing, it is clear that Defendant's systems were not sufficient to resist the attack or the deployment of ransomware, a form of malware, on the Defendant's computer systems. Further, Plaintiffs identify 14 specific data security measures recommended by the U.S. Government (*id.* at ¶ 88) and 6 specific security measures recommended by the U.S. Cybersecurity & Infrastructure Security Agency (*id.* at ¶ 89) that Defendant failed to implement. "Determining whether a complaint states a plausible claim for relief will ... be a **context-specific task** that requires the reviewing court to draw on its judicial experience and common sense." *Bessemer Sys. Fed. Credit Union v. Fiserv Sols.*, LLC, 472 F. Supp. 3d 142, 154 (W.D. Penn. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added)).

Defendant knew that there was a problem with its data security measures, as it had already been the victim of one data breach. Despite that knowledge, Defendant failed to implement any additional security measures, including those specifically identified and recommended by the Microsoft Threat Protection Intelligence Team to prevent and detect a ransomware attack. SAC ¶ 90 (specifically identifying 6 recommended measures Defendant did not implement).

The specifically alleged security measures are just some of those that Defendant should have but failed to implement. They are industry standards, yet Defendant's security measures included none of the recommended practices which could have averted the Data Breach. Defendant made promises to Plaintiffs and the other Class Members that it would protect their PII and PHI and would exercise the requisite and recommended data security measures. Defendant did not fulfill its security representations and protect Plaintiffs' valuable property.

**C. Plaintiffs have adequately pled their unjust enrichment claim.**

In its MTD Order, this Court declined to extend the conclusions reached in *Banner* to find that Plaintiffs had adequately alleged unjust enrichment because Plaintiffs had not alleged any specific reasons as to why Defendant's data security was inadequate.  MTD Order 14-15 (citing *Banner*).  Absent those allegations, the Court could not determine whether Defendant was enriched, and Plaintiffs impoverished.

That deficiency has now been cured, as described above in Section II.B.  Plaintiffs have specifically alleged why Defendant's data security was inadequate.  Plaintiffs also allege facts that link the specifically identified inadequacies to how this particular Data Breach occurred.  The claim should be allowed.  *Banner*, 2017 WL 6763548, at *1 (unjust enrichment claim based upon the lack of "multi-factor authentication, firewalls, adequate encryption, and so forth").

Additionally, as in *Banner*, Plaintiffs and Class Members allege that they paid Defendant a monetary benefit intended to be used by Defendant to fund adequate security of Plaintiffs and Class Members' private information and to protect this private information.  SAC ¶ 168.  This includes "[p]art of the premiums that health plan participant Plaintiffs and Class Members paid to Defendant (or that were paid to Defendant on behalf of the health plan participant and Class Members) . . . ."  *Id*.  It also included benefits conferred upon Defendant by the employee Plaintiffs and Class Members which was "intended to be used by Defendant to fund adequate security of Defendant's computer property" and the employees' and Class Members' private information. *Id*.; *Banner*, 2017 WL 6763548, at *6 (finding similar allegations sufficient to support an unjust enrichment claim).

Defendant failed to implement industry recommended security measures, and instead chose to boost its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective, and perhaps non-existent security measures.  SAC ¶ 168.  And Defendant continued to put profits ahead of security even after the first data breach,

6

making the second data breach possible – all the time aware that the healthcare sector was a preferred target of cyber criminals.

Defendant should not be permitted to retain any of the money that it **saved**, in lieu of implementing the necessary and appropriate data security measures that it represented or implied to Plaintiffs and Class Members would be utilized to protect and secure their PII and PHI.  As a direct result of these inequitable actions by Defendant, Plaintiffs and Class Members suffered the loss of their data and misuse of their individual property and privacy rights.  *Id*. at ¶¶ 170-174.  Thus, Plaintiffs have adequately alleged an action for unjust enrichment at this stage of the proceedings.

**D.  Plaintiffs' consumer protection claims are adequately pled.**

Defendant's argument that the California UCL, FDUTPA, Pennsylvania CPL, and Wisconsin DTPA claims do not satisfy Rule 9(b) because Plaintiffs do not allege with particularity "where" or "when" any alleged misrepresentations were made or "why" they were misleading (MTD at 10-11) ignores Plaintiffs' critical new allegations.  Plaintiffs now lay out "which specific documents or statements they believe to be the source of Magellan's alleged misrepresentations" and when they were made:  the HIPAA Notice of Privacy Practices disseminated in members' home states when they became Magellan patients promised that Defendant will "use or disclose [members'] Protected Health Information (PHI) only for very specific reasons" and will maintain the privacy of members' PHI.  SAC ¶¶ 55-56. This suffices as specific dates are not required.[1]  Plaintiffs also allege "why" the statements were misleading: they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII and PHI.  *Id.* at ¶ 182.  These allegations cure the issues

---

[1] *See, e.g.*, *Escobar v. Just Born Inc.*, 2017 WL 5125740 at *13 (C.D. Cal. June 12, 2017); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012); *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013); *Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *3 n.1 (N.D. Cal. Sept. 25, 2013); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009).

this Court identified in its earlier ruling, and are more than sufficient to give Defendant "notice of the particular conduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it has] done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Further, none of Plaintiffs' consumer protection claims rely exclusively upon a fraudulent misrepresentation (which is all Defendant focuses upon here), but also include allegations of fraudulent omission, unlawful conduct, and unfair conduct.

In *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig*., 2020 WL 2214152, at *10 (S.D. Cal. May 7, 2020), the court faced a similar Rule 9(b) argument aimed at plaintiffs' California UCL claims.  While the court granted defendant's motion to dismiss (with leave to amend) the fraudulent misrepresentation claim "to the extent [plaintiffs] rely on statements in the Privacy Policy … and the Terms of Service" because plaintiffs did not allege having been exposed to those statements,[2] the court declined to dismiss the UCL claim that alleged fraudulent omission, unlawful conduct, and unfair conduct.  *Id.*  The court made its ruling based upon allegations that are strikingly similar to those alleged here.  Specifically, with regard to the fraudulent omission claim, the Solara plaintiffs alleged (as Plaintiffs do here) that:

> Solara had exclusive knowledge of the fact that its security practices fell short of industry standards, and that this fact was material. (Doc. No. 32 at 20.) Plaintiffs also claim that Solara had a duty to disclose this fact, and that Solara's failure to do so is an actionable omission under the UCL.

*Id*.  This is precisely what Plaintiffs allege here.  SAC ¶¶ 54, 181(h), 222.

Also as in *Solara*, Plaintiffs here specifically allege that Defendant violated the UCL's unlawful prong when it violated the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*  SAC ¶ 181(c).  *Solara*, 2020 WL 2214152, at *11 (Plaintiffs "have alleged that Solara has unlawfully violated the CMIA, the California Customer Records Act, and several state laws.") (quotations omitted).  As

---

[2] Here, Plaintiffs allege the requisite exposure.

for the unfair prong, the allegations here are the same as those that led the *Solara* court to conclude that the plaintiffs "sufficiently alleged that Defendant's conduct has violated public policy" under *In re Anthem*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016).  *Compare id.* (allegations that defendant advertised adequate data security practices and promised to protect plaintiffs' privacy, but that such security was deficient and led to a variety of personal information being exposed in a breach in violation of various laws and regulations, were sufficient), *with* SAC ¶¶ 181, 184-185.[3]

### E.  Extraterritoriality is not a bar to Plaintiffs' consumer protection claims.

Defendant's extraterritoriality argument has been expressly rejected by at least one federal court. In *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1334 (N.D. Ga. 2019), the defendant similarly argued that the defendants' acts and omissions occurred only in Georgia, such that the consumer protection statutes of other states did not apply. The *Equifax* court rejected this entire argument, found that deceptive trade practice laws of foreign states (including all four states at issue here) could be applied to conduct that took place in Georgia, and held that the plaintiffs, "who allege that they were harmed in each of these respective states, have adequately stated claims under these state statutes." *In re Equifax*, 362 F. Supp. 3d at 1333.

Here, the individual plaintiffs who are asserting claims under their home state consumer protection statutes are not arguing for extraterritorial application of those state's laws. There is no claim that Defendant is generally subject to California, New York, Wisconsin, or Florida law, such that *all* Class Members and Plaintiffs (including those who do not reside in those states) can assert such claims. Rather, these statutory claims are asserted on behalf of state specific subclasses that are limited to persons in

---

[3] The other 3 state statutes in play all are "mini-FTC Act" statutes like the California UCL, and all contain similar provisions for violations of unfair and unlawful conduct. *See* FDUTPA, F.S. § 501.204(1) (prohibiting "unfair" practices); *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 2012 Pa. Super 60 (2012) (discussing PA CPL); and Wis. Stat. § 100.18 (prohibiting statements from being untrue, deceptive or misleading).

those four states who, like Plaintiffs Ranson, Leather, Griffey, and Rivera, were harmed in their home states. The injury complained of here that is plead under these state consumer protection acts is the misrepresentations and omissions in the HIPAA Notice of Privacy Practices disseminated to these four plaintiffs <u>in their home states</u>.[4] SAC, ¶¶ 182, 206, 238, 257. This is not conduct that this Court evaluated in its prior ruling, or that the Court previously found not to be misleading or a misrepresentation, since the prior complaint did not even make reference to the HIPAA Notice of Privacy Practices. Whether the computer systems implicated in the Data Breach are in Arizona is not germane to the application of the four states' consumer protection laws for misrepresentations and omissions in those states.

Not only that, but statutes like the California Consumer Records Act ("CCRA") apply to any "person or business that conducts business in California." Similarly, the California Consumer Protection Act ("CCPA") applies to any corporation that "does business in the State of California," and that meets certain other conditions (that Defendant meets here). Cal. Civ. Code § 1798.140. Defendant cannot deny that it conducts business in California, and is thus governed by the CCRA and CCPA.

Every major multistate data breach case—including those where the breach occurred somewhere other than California, New York, and Florida—that has affected residents of those states and that is pending in federal courts pursuant to CAFA

---

[4] Thus, while the statutory language of both the GBL and the WI DTPA restrict the reach of those statutes to deceptive conduct occurring in those states, those requirements are satisfied in this case because the HIPAA Notice of Privacy Practices were actually disseminated in those states. Neither the FDUTPA or the UCL contain similar geographic restrictions. *See Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. 2d Dist. Ct. App. 2000) (noting the FDUTPA was enacted to protect Florida consumers, but "nothing in the plain language of the Unfair Trade Act limits its application to injuries occurring in Florida."); *Barnext Offshore, Ltd.,* 2012 WL 1570057, at *6 ("there are no geographical or residential restrictions contained in the express language of" the FDUTPA); *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015) (noting "courts have held that a UCL claim may be brought by a plaintiff who is a resident of California, regardless of where the alleged misconduct occurred.") (citations omitted)).

jurisdiction has allowed California, Florida, and New York statutory claims to be asserted on behalf of state subclasses for those states. *See, e.g.*, *In re: Blackbaud*, 2021 WL 3568394, at *5, *10, and *14 (D.S.C. Aug. 12, 2021); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 422-426 (E.D. Va. 2020) (allowing California UCL and CLRA claims for data breach that occurred in Virginia and Washington State, FDUTPA claims, and NY GBL § 349 claims); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 491-494 (D. Md. 2020) (California UCL claim and NY GBL § 349 claim allowed for breach occurring in Maryland). This Court should reach the same conclusion, not only for the California, Florida, and New York claims, but for the Wisconsin claims as well.

### F.  Plaintiff Leather's NYGBL claim is properly pled.

Defendant's arguments against Plaintiff Leather's NYGBL § 349 claim (MTD at 12-13) ignore both the substantive changes to the factual allegations and persuasive case law authority.  Defendant ignores Plaintiff Leather's new allegations based on a separate privacy policy from the Magellan privacy policy contained in the original complaint. SAC ¶ 204.  This HIPAA Notice of Privacy Practices contains definite and actionable promises of data privacy—promises Defendant didn't keep.  Defendant promised it would:

> (A) protect the privacy patients' health information; (B) maintain the privacy of patients' PHI; (C) use or disclose patients' Protected Health Information (PHI) only for very specific reasons; (D) give patients notice of Defendant's legal duties and privacy practices with respect to medical information about its patients; (E) follow the terms of the Privacy Notice that is currently in effect; and; (F) not to make any disclosures of PHI without written permission, other than those specifically enumerated in the notice.

*Id.*

In *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021), the court examined a substantially similar (if not functionally identical) HIPAA Privacy Policy, and found that plaintiffs had plausibly alleged their NYGBL claim:

11

> The Notice of Privacy Practices state Health Quest is "committed to protecting medical information," and would notify its customers of any potential data breach without any unreasonable delay. It is at least plausible that these statements would have led a reasonable consumer to believe Health Quest employed data security measures adequate to safeguard their information, and that Health Quest would promptly notify them of a data breach. Plaintiffs plausibly allege defendant failed to fulfill these expectations both by failing to promptly notify them of any data breach, and by failing to implement safeguards to protect their Private Information.

*Wallace*, 2021 WL 1109727, at *15 (citations omitted).  In fact, the statements in *Wallace* are arguably less definite than Plaintiff Leather's new allegations here.

It is more than plausible that patients like Ms. Leather would see these material promises and reasonably believe that Defendant employed data security measures adequate to protect their data.

### G. Plaintiff Lewis has properly alleged his FDUTPA claim.

Defendant argues that Plaintiff Lewis's FDUTPA claim must be dismissed because he and the putative Florida subclass are not consumers and, therefore, lack standing under FDUTPA.  "This argument is foreclosed by governing law."  *Env't Mfg. Sols., LLC*, 2018 WL 3635112, at *15, report and recommendation adopted sub nom. *Env't Mfg. Sols., LLC v. Fluid Energy Grp., Ltd.*, 2018 WL 6264836 (M.D. Fla. Nov. 30, 2018) (rejecting the same argument).

The FDUTPA proscribes "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive trade or commerce."  Fla. Stat. § 501.204(1).  It authorizes a private cause of action for actual damages by any "person" who has suffered a loss as a result of a violation of the statute.  Fla. Stat. § 501.211(2).  In 2001, the Florida Legislature amended the FDUTPA's standing provision by replacing the word "consumer" with the word "person."  *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296 (S.D. Fla. 2014).  The "statute's rules of construction compel courts to interpret the law liberally."  *Democratic Republic of the Congo v. Air Cap. Grp., LLC*, 614 F. App'x 460, 469 (11th Cir. 2015); Fla. Stat. § 501.202.

The Florida Supreme Court has not addressed the effect of the 2001 amendment on the question of who has standing to seek monetary damages for a FDUTPA violation.

However, three of Florida's five appellate courts have categorically held that "an entity [i]s not required to be a consumer in order to have standing to bring a FDUTPA claim" because the Florida Legislature's 2001 amendment "served to broaden the reach of the statute so that more than just consumers could avail themselves of the protection of this statute." *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th Dist. Ct. App. 2015); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d Dist. Ct. App. 2016) ("We agree that section 501.211(2) evinces a legislative directive that the remedy of damages is not limited to a consumer."); *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. 3d Dist. Ct. App. 2016) (holding the FDUTPA "no longer requires one to be a 'consumer' to maintain an action for damages under FDUTPA"). Florida's appellate courts are thus in agreement that a plaintiff need not be a "consumer" to have standing to bring a FDUTPA claim.

Numerous Florida district courts—recognizing they are bound to follow decisions of Florida's appellate courts absent a clear decision from the Florida Supreme Court or some persuasive indication that it would decide otherwise—have thus held that in light of *Caribbean*, *Bailey*, and *Off Lease*, non-consumers may bring FDUTPA claims. *See*, *e.g.*, *E A Tapping Servs., LLC v. CDM Constructors Inc.*, 2021 WL 1985338, at *9 (M.D. Fla. Feb. 23, 2021) ("The plain language of the statute, as supported by the legislative history, is simply not limited to traditional consumers or even the consumer side of a transaction but rather includes any entities injured by unfair acts or practices in the conduct of any trade or commerce."); *Vazquez v. Joseph Cory Holdings*, LLC, 2016 WL 11221088, at *3 (M.D. Fla. Nov. 10, 2016) (stating the persuasive value of various federal court decisions limiting FDUTPA standing to "consumers" is "erode[d]" by the Florida appellate courts' decisions in *Caribbean*, *Bailey*, and *Off Lease*); *Francois v. Gulf Coast Transp., Inc.*, 2016 WL 4097108, at *4 (M.D. Fla. Aug. 2, 2016) (holding as a result of *Caribbean*, *Bailey*, and *Off Lease*, that the court "no longer finds . . . persuasive" federal district court cases interpreting § 501.211(2) to consumers only).

Defendant therefore is simply wrong in contending that Plaintiff Lewis and the subclass were required to purchase something of value in order to recover under FDUTPA. *See James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomms. , Inc.*, 2008 WL 360803, at *3 (M.D. Fla. Feb. 8, 2008) ("reading the statute to require a FDUTPA plaintiff to purchase something of value from the defendant would stand contrary to" law); *Gritzke v. M.R.A. Holding, LLC.*, 2002 WL 32107540 at *3-4 (N.D. Fla. 2002) (holding plaintiff featured in "Girls Gone Wild" video without her consent stated a valid FDUTPA claim despite never purchasing defendant's product).   And notably, inadequate data security—like the kind at issue in this case— has been found to be an unfair trade practice for FDUTPA purposes in *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012), which did not involve a consumer purchase.

**H. Plaintiff Ranson's CCPA claim is properly pled.**

Each of Defendant's arguments that Plaintiff Ranson's CCPA claim is fatally flawed (Motion at 14-15), fails.

First, as discussed in Section II.B., above, Plaintiff Ranson has pled how Defendant's data security was inadequate.

Second, although Defendant is correct that the CCPA does not apply to protected health information governed by HIPAA (Motion at 14-15), Defendant does not address the PII that Plaintiffs repeatedly allege was subject to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's conduct.  *E.g.*, SAC ¶ 20 ("Information compromised in the Data Breach included names, contact information, employee ID numbers, and W-2 or 1099 information, including Social Security Numbers or taxpayer identification numbers, treatment information, health insurance account information, member IDs, other health-related information, email addresses, phone numbers, physical addresses, and additional PII."); ¶ 192 ("Plaintiff Ranson's and California Class Members' PII … constitutes 'personal information' as defined by [the CCPA].").  "Accordingly, at this early stage in the litigation, Plaintiffs allege a plausible

14

claim based on violation of the CCPA, and [Defendant] has not met its burden of showing otherwise. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020) (denying motion to dismiss CCPA claim because "although Inmediata is correct that the CCPA does not apply to medical information governed by CMIA … Inmediata does not address the non-medical information that it admits was accessible on the internet.").

Third, Plaintiff Ranson's CCPA notice (D.E. 41-1) was timely and properly identified the specific code section violated. The plain language of section 1798.150(b) states that written notice must be given 30 days "[p]rior to initiating any action against a business **for statutory damages on an individual or class-wide basis**" (emphasis added). Plaintiff Ranson notified Defendant of its CCPA violations on December 8, 2020. D.E. 41-1; *see also* Motion at 15 ("Ranson sent Magellan his purported CCPA notice on December 8, 2020."). Contrary to Defendant's misstatements, the notice explicitly states that "[t]he specific code section violated is Cal. Civ. Code 1798.150(a)(1)." D.E. 41-1 at 2. Although Plaintiffs filed their First Amended Consolidated Class Action Complaint (D.E. 30) three days after giving Defendant notice of the CCPA violation, the FAC did not seek statutory damages, as this Court recognized in its Order granting Defendant's previous motion to dismiss. D.E. 39 (Plaintiffs' FAC "clearly states Ranson has not sought statutory damages at this time." ) (quoting D.E. 30 at ¶ 207). Instead, Plaintiff Ranson gave Defendant over nine months' notice before seeking statutory damages for the first time in the SAC filed October 12, 2021. SAC ¶ 199.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated: November 9, 2021                         Respectfully submitted,

**BONNETT, FAIRBOURN, RIEDMAN & BALINT, P.C.**

15

By: s/*Elaine A. Ryan*
Elaine A. Ryan (AZ Bar #012870)
Carrie A. Laliberte (AZ Bar #032556)
2325 E. Camelback Rd., Suite 300
Phoenix AZ 85016
Telephone:  (602) 274-1100
Email:  eryan@bffb.com
            claliberte@bffb.com

**BONNETT, FAIRBOURN, RIEDMAN & BALINT, P.C.**
Patricia N. Syverson (AZ Bar #020191)
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 798-4593
Email:  psyverson@bffb.com

*Additional counsel:*

**ZIMMERMAN REED LLP**

By: s/ Hart L. Robinovitch
Hart L. Robinovitch (AZ SBN 020910)
14646 North Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com

**MASON LIETZ & KLINGER LLP**
Gary E. Mason*
David K. Lietz*
5301 Wisconsin Ave, NW
Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
Email:  gmason@masonllp.com
Email:  dlietz@masonllp.com

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis**
Patrick A. Barthle**

16

201 N. Franklin Street, 7th Floor
Tampa, Florida  33602
Telephone: (813) 223-5505
Email:  jyanchunis@forthepeople.com
       pbarthle@forthepeople.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Telephone: (312) 283-3814
Email:  gklinger@masonllp.com

**RHINE LAW FIRM, P.C.**
Joel R. Rhine**
Martin A. Ramey**
Janet R. Coleman**
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Telephone:  (910) 772-9960
Email:  jrr@rhinelawfirm.com
       mjr@rhinelawfirm.com

**BERGER MONTAGUE PC**
Michael Dell'Angelo**
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone: (215) 875-3000
Email:  mdellangelo@bm.net

**KEHOE LAW FIRM, P.C.**
Michael K. Yarnoff**
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Telephone: (215) 792-6676
Email:  myarnoff@kehoelawfirm.com

**DEYOUNG & ASSOCIATES**
Neal A. DeYoung*
One Reservoir Office Park
Southbury, Ct. 06488
Telephone: (203) 731-7558
Email:  neal@deyounglegal.com

Counsel for Plaintiff and the Putative Class

*Previously admitted pro hac vice*
*\*\* Pro hac vice to be filed*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

/s/ *Elaine A. Ryan*
Elaine A. Ryan