**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
John C. Gray (State Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 262-5331
Facsimile: (602) 262-5747
Email: jgray@lrrc.com

**BAKER & HOSTETLER LLP**
Paul G. Karlsgodt (*pro hac vice*)
Christopher A. Wiech (*pro hac vice*)
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com
Email: cwiech@bakerlaw.com
*Attorneys for Defendant Magellan Health, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Griffey, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Magellan Health Incorporated,<br><br>Defendant. | No. CV-20-01282-PHX-MTL (Lead)<br>No. CV-20-01350-PHX-MTL (Cons)<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| Daniel Ranson, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Magellan Health Incorporated,<br><br>Defendant. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. Plaintiffs Do Not Allege Cognizable Injury ................................................ 2

    B. Plaintiffs Fail to Properly Plead Inadequate Security to Sustain Their Unjust Enrichment and Consumer Protection Causes of Action .................. 4

    C. Plaintiffs' Claims Should Be Dismissed on Alternative Grounds ................ 5

        1. Plaintiffs Do Not Allege a Claim for Unjust Enrichment .................. 5

        2. Plaintiffs' Consumer Protection Claims Do Not Satisfy Rule 9(b) ..................................................................................................... 6

        3. Plaintiffs' Extraterritoriality Argument Lacks Merit ......................... 7

        4. Leather's NYGBL § 349 Claim Fails ................................................ 8

        5. Lewis's FDUTPA Claim Fails .......................................................... 9

        6. Ranson's CCPA Claim Fails ............................................................. 9

III. CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdale v. North Shore Long Island Jewish Health Systems, Inc.*,
  19 N.Y.S. 3d 850 (N.Y. Sup. Ct. 2015) .................................................................. 8

*Adkins v. Apple Inc.*,
  147 F. Supp. 3d 913 (N.D. Cal. 2014) .................................................................. 11

*In re Adobe Sys., Inc. v. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) .................................................................. 3

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ................................................................................ 11

*In re Banner Health Data Breach Litig.*,
  No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20,
  2017) ................................................................................................................. 5, 6

*In re Blackbaud*,
  2021 WL 3568394 (D.S.C. Aug. 12, 2021) .......................................................... 7

*In re Capital One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020) ................................................................ 8, 9

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
  169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ............................................................ 9

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*,
  No. 3:16-CV-186-J-34JRK, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018) ........... 9

*Goodman v. Port Auth. of N.Y. & N.J.*,
  850 F. Supp. 2d 363 (S.D.N.Y. 2012) .................................................................. 10

*Griffey v. Magellan Health Inc.*,
  No. CV-20-01282-PHX-MTL, 2021 WL 4427065 (D. Ariz. Sept. 27,
  2021) .............................................................................................................. *passim*

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010) (unpublished) .................................................. 4

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020) .................................................................. 7, 8

*Phomthevy v. WinCo Holdings, Inc.*,
　No. 219CV00041KJMCKD, 2019 WL 3067105 (E.D. Cal. July 12,
　2019) .................................................................................................................. 10

*Pruchnicki v. Envision Healthcare Corp.*,
　439 F. Supp. 3d 1226 (D. Nev. 2020), *aff'd* 845 F. App'x 613 (9th Cir.
　2021) .................................................................................................................... 4

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
　2020 WL 2214152 (S.D. Cal. May 7, 2020) ....................................................... 6

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
　266 So. 3d 207 (Fla Dist. Ct. App. 2019) ............................................................ 9

*Swartz v. KPMG LLP*,
　476 F.3d 756 (9th Cir. 2007) ............................................................................... 6

*Thompson v. Isagenix Int'l, LLC*,
　No. CV-18-04599-PHX-SPL, 2020 WL 1432840 (D. Ariz. Mar. 24,
　2020) .................................................................................................................... 2

*Yourish v. Cal Amplifier*,
　191 F.3d 983 (9th Cir. 1999) ............................................................................... 6

**Statutes**

Cal. Civ. Code §1798.150(a)(1) ............................................................................. 11

Cal. Civ. Code § 1798.150(b) .......................................................................... 10, 11

Fla. Stat. Ann. § 501.201 ......................................................................................... 9

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................. 6

**Other Authorities**

Allaire Monticollo, Chelsea Reckell, Emilio Cividanes, *California Privacy
　Landscape Changes Again with Approval of New Ballot Initiative* ............... 10

Julia M. Siracuse, *The Future of Our Fingerprints: The Importance of
　Instituting Biometric Data Protections in Pennsylvania*, 59 Duq. L. Rev.
　303, 326 (2021) .................................................................................................. 10

## I.    **INTRODUCTION**

Three times Plaintiffs have amended their complaint. And three times Plaintiffs have failed to allege cognizable loss to sustain any of their claims, despite acknowledging that it is an indispensable requirement. In dismissing the FACC, the Court provided clear guidance on what Plaintiffs must plead for this action to continue. But Plaintiffs still do not (and obviously cannot) plead any cognizable loss from the phishing incident at issue ("Incident"), despite such guidance and even though the Incident occurred more than a year ago. Nor can they cure other fatal deficiencies with their claims.

Four of the ten plaintiffs—Griffey, Domingo, Rivera, and Culberson—are **"Notice "Only Plaintiffs"** in that they continue to only allege that they received notice of the Incident and nothing else, which this Court previously held was insufficient. They also do not respond to Magellan's latest motion to dismiss, which alone warrants their dismissal. The next group of plaintiffs are the **"Attempted Fraud Plaintiffs"**—Rayam and Williams—who, same as before, each allege instances of attempted identity fraud without any cognizable loss flowing from these attempts. They allege nothing new and that failure warrants their dismissal as well. The third and final group of plaintiffs, the **"Credit Monitoring Plaintiffs"**—Leather, Ranson, Flanders, and Lewis—repeat allegations that they have cognizable losses because they chose to pay for credit monitoring or for a dark web search in lieu of the two years of complimentary credit monitoring offered by Magellan. But, contrary to this Court's guidance, none plead how or why such expenses were reasonable and necessary or that Magellan's credit monitoring was inadequate. Instead, they proffer the same types of conclusory allegations of purchasing "superior" or "necessary" monitoring that this Court has already deemed insufficient. Thus, the Credit Monitoring Plaintiffs' self-inflicted expenses remain untethered to any legitimate need; they are not cognizable losses.

The SACC also should be dismissed for the additional reasons previously articulated by the Court, as the SACC merely repackages the same deficient allegations. In particular, Plaintiffs still fail to plausibly allege inadequate data security measures by Magellan that

1    caused the Incident to sustain their unjust enrichment and consumer protection claims.
2    Repeating the same failed strategy, Plaintiffs, in addition to alleging a hodgepodge of
3    cybersecurity guidance that may or may not apply to Magellan, now allege a hodgepodge
4    of cybersecurity measures that they assume Magellan did not have (solely because the
5    Incident occurred), should have had, and would have prevented the Incident. But more
6    conclusory allegations is not the cure for their already failed ones.

7    In short, the SACC offers no more substance than the FACC. It should be dismissed
8    for the same reasons, this time with prejudice.

**II.   ARGUMENT**

    **A.   Plaintiffs Do Not Allege Cognizable Injury**

In dismissing Plaintiffs' FACC, this Court held that Plaintiffs' damages allegations failed "to state a claim alleging a cognizable tort injury." *Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2021 WL 4427065, at *6 (D. Ariz. Sept. 27, 2021). In the SACC, Plaintiffs do not correct this failure, which dooms each of their claims. (ECF No. 41 at 4–5.)

In their Opposition, Plaintiffs do not even attempt to argue that the four Notice Only Plaintiffs have alleged a cognizable injury. (*See generally* Opp.) As a result, and because nothing has changed with regard to those four plaintiffs since this Court's dismissal of the FACC (*compare* FACC, ¶¶ 1, 4, 12, 13; *with* SACC, ¶¶ 1, 4, 12, 13), the four Notice Only Plaintiffs should be dismissed again, with prejudice this time. *See Thompson v. Isagenix Int'l, LLC*, No. CV-18-04599-PHX-SPL, 2020 WL 1432840, at *4 (D. Ariz. Mar. 24, 2020) ("[B]y failing to address arguments in an opposition, a party effectively concedes a claim.") (internal citations omitted).

Similarly, with regard to the two Attempted Fraud Plaintiffs, Plaintiffs' Opposition merely re-hashes the argument that because "Rayam (unauthorized charges on his card) and Williams (information used to apply for AZ unemployment benefits) have alleged that 'they have suffered actual misuse of their personal information [they] have clearly suffered

2

an actual injury for which they may recover.'" (Opp. at 4.) But this Court has already rejected that argument and held that:

> Although Plaintiffs Williams and Rayam experienced attempted fraud, their claims are not cognizable. Whether any fraud will actually occur in the future is speculative. As a result, Plaintiffs only suffer a threat of future injuries. But Arizona law requires negligence damages to be more than merely a threat of future harm. Threats of future harm, on their own, are not cognizable negligence injuries.

*Griffey*, 2021 WL 4427065, at *5 (citation omitted.) Therefore, and because these two plaintiffs have again failed to allege anything new about the nature of their alleged damages, (*compare* FACC, ¶¶ 2–3, 6–7; *with* SACC, ¶¶ 2–3, 6–7) the two Attempted Fraud Plaintiffs should be dismissed once more, with prejudice.

Finally, Plaintiffs argue that the four Credit Monitoring Plaintiffs—Leather, Ranson, Lewis, and Flanders—have updated their claims in the SACC to "'allege that the identity monitoring services offered by Magellan were inadequate in some way to justify the out-of-pocket expenses' they incurred." (Opp. at 3.) And they argue that these Plaintiffs "have alleged that their out-of-pocket expenses were reasonable and necessary." (*Id.* at 4.) Plaintiffs still miss the mark.

Notably, Ranson does not allege that he ever actually ***purchased*** any credit monitoring services. (SACC, ¶¶ 8–10 ("Plaintiff Ranson ***enrolled in*** a credit monitoring service[.]" (emphasis added)).) Elsewhere in the SACC, in contrast, Leather alleges that she individually paid a monthly $9.99 charge for her credit monitoring (SACC, ¶ 5); Flanders alleges that he "paid a cybersecurity consultant to search the 'Dark Web'" (*id.* at ¶ 11); and Lewis alleges that he upgraded his free credit monitoring to a "more robust" plan at a monthly cost of $24.99 (*id.* at ¶ 15). Because Ranson fails to allege that he incurred any out-of-pocket expenses whatsoever, he fares no better than the Attempted Fraud Plaintiffs and his claims should be dismissed for the same reason.[1] *Griffey*, 2021 WL

---

[1] Additionally, Ranson's California UCL claim requires him to plead a specific type of injury: "lost money or property" to survive dismissal. *In re Adobe Sys., Inc. v. Privacy Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014). Ranson fails to allege any such loss. (SACC, ¶¶ 8–10.)

3

4427065, at *5; *see, e.g.*, *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020), *aff'd* 845 F. App'x 613 (9th Cir. 2021); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (unpublished).

Notwithstanding, none of the Credit Monitoring Plaintiffs follow the Court's instruction to plead why their respective voluntary credit monitoring expenses were reasonable and necessary. To do that, they must plead exactly how Magellan's offer of free credit monitoring was inadequate. *Griffey*, 2021 WL 442765, at *6. Leather newly alleges that she paid $9.99 for Lifelock Standard credit monitoring, that it includes different features from the Experian IdentityWorks offered by Magellan, and is therefore "superior." (SACC, ¶ 5.) Similarly, Lewis newly alleges that his credit monitoring is "superior" to Magellan's, which does not include identity theft monitoring and protection. (*Id.* at ¶ 15.) Ranson and Flanders newly allege that their credit monitoring and dark web searches, respectively, were "necessary given the sensitive nature of the information compromised by the Breach and the fact that the monitoring services offered by Defendant do not include identity theft monitoring and protection." (*Id.* at ¶¶ 9, 11.) In all, these are the same types of conclusory allegations that this Court has already rejected. Pleading that they chose to pay (except for Ranson) for something else because it was *superior* or *necessary* does not "properly allege that the identity monitoring services offered by Magellan were inadequate in some way to justify the out-of-pocket expenses." *Griffey*, 2021 WL 4427065, at *6. In other words, their voluntary expenses for different monitoring services remain untethered to any reasonable need for them, and thus should be rejected.

  **B.**  **Plaintiffs Fail to Properly Plead Inadequate Security to Sustain Their Unjust Enrichment and Consumer Protection Claims**

In their Opposition, Plaintiffs contend that they have sufficiently alleged how Magellan's data security was inadequate because they now specify what Magellan allegedly failed to do and what "specific data security measures" recommended by government agencies "Defendant failed to implement." (Opp. at 4–5 (citing SACC, ¶¶ 88–89).) That argument, however, misstates Plaintiffs' actual allegations.

In fact, Plaintiffs' SACC does not allege that Magellan failed to meet any of the newly identified standards, nor does it specify which of the standards are actually at issue. Instead, Plaintiffs merely allege that "***the occurrence of the Data Breach indicates*** that Defendant failed to adequately implement ***one or more*** of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of approximately X individuals, including Plaintiff and Class Members." (SACC, ¶ 91 (emphasis added).) That is exactly the type of conclusory allegation that this Court has already rejected:

> Alleging that a system was inadequate **because a negative result occurred** is conclusory, and Plaintiffs' claim that Magellan's system fell below an ill-defined standard is conclusory. The Court is permitted to disregard conclusory allegations. And so, the Court finds that Plaintiffs fail to properly allege that Magellan's data security was inadequate.

*Griffey*, 2021 WL 4427065, at *8 (emphasis added); *see also id.* at *9 ("[T]he Court has no obligation to consider conclusory or nonexistent allegations.").

As a result, Plaintiffs have not cured the deficiencies from their earlier pleadings, and there is still "no way to establish on the pleadings that Magellan was enriched, that Plaintiffs were impoverished, that there was a connection between the enrichment and impoverishment," or that "Magellan's data security was inadequate beyond pointing to the fact that a security breach happened." *Id.* at *8–9, 11–15. Plaintiffs' unjust enrichment and consumer protection claims should be dismissed again, without leave to amend.

**C.     Plaintiffs' Claims Should Be Dismissed on Alternative Grounds**

        ***1.     Plaintiffs Do Not Allege a Claim for Unjust Enrichment***

Plaintiffs argue that they plausibly allege a claim for unjust enrichment because they allege "that they paid Defendant a monetary benefit." (Opp. at 6.) But Plaintiffs' SACC alleges that Magellan "receive[s] fees from [its] affiliates or the states in which they operate." (SACC, ¶ 31.) In other words, the SACC concedes that Plaintiffs did not pay Magellan anything at all. This concession is fatal to Plaintiffs' claim, and their reliance on *In re Banner Health* is misplaced because, there, the plaintiffs specifically alleged that

5

"***they*** paid money to Defendant for insurance plan premiums and healthcare service[s]." *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *6 (D. Ariz. Dec. 20, 2017) (emphasis added).

Further, to the extent Plaintiffs argue that Magellan was unjustly enriched by the former employee Plaintiffs—Griffey, Rayam, Domingo, Williams, and Flanders—because they "conferred the benefit of their labor to Defendant" (SACC, ¶ 168), this argument fails because the SACC does not allege that those plaintiffs were not paid for their services. And, apart from having received a notice of the Incident, Lewis never alleges any relationship to Magellan whatsoever. (*Id.* at ¶¶ 14–15.) Plaintiffs' unjust enrichment claim fails.

### 2. *Plaintiffs' Consumer Protection Claims Do Not Satisfy Rule 9(b)*

Plaintiffs assert that they have sufficiently pled their consumer protection claims under Fed. R. Civ. P. 9(b). Plaintiffs argue that they adequately allege "'why' the statements were misleading" because they allege Magellan's HIPAA Notice of Privacy Practices "were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII and PHI." (Opp. at 7.) That, however, is not enough.

Plaintiffs are required to state the "*specific content* of the false representations," *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis added), and "an explanation as to why the statement or omission complained of was false or misleading," *Yourish v. Cal Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). But Plaintiffs still fail to allege what the specific false representation or omission was, or why any privacy policies were misleading or false. Simply because the Incident occurred does not *ipso facto* make Magellan's statements about data security misleading, much less false. Nor does it automatically follow that Magellan acted unfairly or unlawfully. *Compare In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-KSC, 2020 WL 2214152, at *10 (S.D. Cal. May 7, 2020) (UCL claims satisfied Rule 9(b) where plaintiffs sufficiently pled defendant had "exclusive knowledge that its security practices

fell short of industry standards") *with* SACC, ¶¶ 178–88. Thus, Plaintiffs' failure to explain with specificity how Magellan misrepresented its data security or otherwise acted unlawfully warrants dismissal of their consumer protection claims. *See Griffey*, 2021 WL 4427065, at *11–12.

### 3. *Plaintiffs' Extraterritoriality Argument Lacks Merit*

Plaintiffs state that "at least one," out-of-circuit court has rejected Magellan's "extraterritoriality argument." (Opp. at 9.) But Plaintiffs ignore **this Court's** clear ruling that the California UCL, Florida DUTPA, NYGLB § 349, and Wisconsin DTPA statutes "do not apply extraterritorially." *Griffey*, 2021 WL 4427065, at *16–17. And Plaintiffs conflate their "dissemination" allegations with cases involving allegations of in-state, liability-creating conduct. For example, in *In re Marriott*, the court determined that NYGBL § 349 applied to the New York Plaintiffs because the alleged deception occurred in New York where Plaintiffs "allege[d] that they made Marriott reservations in New York and/or stayed at Marriott properties in New York," and thus provided their personal information to Marriott **in New York**. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 493 (D. Md. 2020).

Here, though, Plaintiffs do not allege that they provided their personal information in their respective states, that Magellan conducts business in their states, or that any of the acts of the Incident occurred outside of Arizona. (Opp. at 9–11.) Instead, the only conduct Plaintiffs allege occurred in their respective home states was that Magellan's "HIPAA Notice of Privacy Practices [was] disseminated" in their home states. (Opp. at 10.) Plaintiffs, however, point to no authority supporting their argument that this is sufficient.

In addition, Plaintiffs' assertions that Magellan is "governed by the CCRA and CCPA" and that other data breach cases "ha[ve] allowed California, Florida, and New York statutory claims to be asserted on behalf of state subclasses for those states," are simply smoke screens. (Opp. at 10–11.) First, Plaintiffs do not bring a CCRA claim. (*See* SACC.) Second, Magellan does not argue whether the CCPA applies extraterritorially. (*See* ECF No. 41 at 11.) Third, two of the three cases Plaintiffs cite do not even analyze the statutes'

7

extraterritorial reach and thus do not support Plaintiffs' argument. (*See* Opp. at 10–11 (citing *In re Blackbaud*, 2021 WL 3568394, at *5, *10, and *14 (D.S.C. Aug. 12, 2021); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 422-426 (E.D. Va. 2020).) *Cf. In re Marriott*, *supra*. Thus, Plaintiffs once again fail to allege that any liability-creating conduct occurred within their respective home states. As such, Plaintiffs' California UCL, Florida DUTPA, NYGBL § 349, and Wisconsin DTPA claims should be dismissed with prejudice.

### 4. *Leather's NYGBL § 349 Claim Fails*

Plaintiffs allege that Magellan ignored "persuasive case law authority" in seeking dismissal of Leather's NYGBL § 349 claim. (Opp. at 11.) They then cite a single case to support Leather's allegations. (Opp. at 11–12.) But it is Plaintiffs who ignore binding law of the case ***from this Court*** dismissing this claim:

> Even if the privacy policy applies to Magellan's data security measures for its health care plans, *Abdale [v. North Shore Long Island Jewish Health Systems, Inc.*, 19 N.Y.S. 3d 850 (N.Y. Sup. Ct. 2015)] is more closely aligned with the facts in this case. Here, Leather did not allege that Magellan's privacy policy made statements as strong as the statements in *Fero*. Indeed, Leather never alleges that Magellan "guaranteed" anything. Like in *Abdale*, Magellan's privacy policy does not amount to an unlimited guaranty protecting PII and PHI from data breaches.

*Griffey*, 2021 WL 4427065, at *13. Despite this ruling, Leather still does not allege that Magellan guaranteed anything, regardless of whether she now relies on a "separate privacy policy" than before. (Opp. at 11–12.) Nor does Leather allege how any of the statements in Magellan's security policies were false or misleading, or what disclosures Magellan should have made. (*Id.*) Finally, despite this Court already concluding that *Abdale* "is more closely aligned with the facts in this case," *Griffey*, 2021 WL 4427065, at *13, Plaintiffs entirely fail to present any facts (or arguments) why Leather's allegations are distinguishable from that court's holding. (*See id.* (failing to cite *Abdale* at all).) These failures are fatal to Leather's claim, which should be dismissed once again.

### 5. *Lewis's FDUTPA Claim Fails*

Plaintiffs argue that Lewis "need not be a 'consumer' to have standing to bring a FDUTPA claim." (Opp. at 13.) Even if that were so (which Magellan disputes),[2] Lewis must still allege that *a consumer* was injured. *E.g., CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (Caribbean Cruise Line unequivocally instructs that a plaintiff must "prove that there was injury or detriment to consumers in order to satisfy all the elements of a FDUTPA claim."); *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla Dist. Ct. App. 2019) (person bringing a FDUTPA claim "still must prove the elements of the claim, including an injury to a consumer"). But Lewis does not allege that he has suffered any cognizable loss (consumer or otherwise),[3] nor does he allege that *any consumer* suffered a consumer injury. (Opp. at 13–14.) Because Lewis has wholly failed to show that any consumer has suffered injury, the Court should dismiss this claim.

### 6. *Ranson's CCPA Claim Fails*

Plaintiffs argue that, although "Defendant is correct that the CCPA does not apply to protected health information governed by HIPAA," the CCPA still applies to Ranson's PII that he alleges was "subject to unauthorized access and exfiltration, theft, or disclosure[.]" (Opp. at 14.) They also argue that Ranson's "CCPA notice was timely and properly identified the specific code section violated." (*Id.* at 15.) Both arguments fail.

First, Ranson fails to identify what specific information *of his* was accessed without authorization. (*See id.* at 14.) Instead, Ranson relies on general class-wide allegations that his "private information" was accessed; that Magellan failed to protect his "and the

---

[2] As noted by Plaintiffs, the Florida Supreme Court has not addressed whether the 2001 amendment to Fla. Stat. Ann. § 501.201 eliminated the need for Plaintiff to prove that he was a "consumer." (Opp. at 12.) And district courts are split on the impact of the 2001 amendment. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 168 (Fla. Dist. Ct. App. 2015) ("Holdings from the District Courts are outwardly mixed when it comes to whether courts require a plaintiff to be a consumer in order to bring a F[L] DUTPA claim.").

[3] "[C]osts for credit monitoring and identity protection services or the time and expenses related to monitoring [] financial accounts" "cannot sustain a [FDUTPA] claim." *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 424 n.33 (E.D. Va. 2020).

9

California Class Members' PII and PHI'"; and that "Plaintiff Ranson's and California Class Members' PII and PHI constitutes 'personal information.'" (SACC, ¶¶ 9, 184, 192.) Even if some of the information at issue would not fall under the umbrella of PHI, Ranson does not allege that non-PHI information is attributable *to him*. (*See generally* SACC; Opp. at 15.) That omission cannot be cured by Plaintiffs' Opposition. *See Phomthevy v. WinCo Holdings, Inc.*, No. 219CV00041KJMCKD, 2019 WL 3067105, at *4 (E.D. Cal. July 12, 2019) (citing *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint.")).

Second, no matter how Ranson tries to spin it, he did not comply with the CCPA's notice-and-cure period. Cal. Civ. Code § 1798.150(b). His gamesmanship is evident. Ranson concedes that he only waited three days after giving notice of an alleged CCPA violation before bringing his CCPA claim for actual damages in the FACC, for which the thirty-day statutory notice-and-cure period does not apply.[4] (Opp. at 15.) After the Court dismissed the CCPA claim for lack of actual damages, *Griffey*, 2021 WL 4427065, at *15, only then did Ranson amend to add a claim for statutory damages. But in doing so he tries to piggyback off of a prior noncompliant notice. Ranson could not have asserted his statutory damages claim a mere three days after providing his CCPA notice. And he cites no authority that permits a plaintiff to include a perfunctory CCPA notice as a placeholder for statutory damages, to be used at some unknown point in the future if and when an initial CCPA claim fails for lack of actual damages. Such gamesmanship is an inappropriate attempt to circumvent the policy behind the CCPA's thirty-day cure period which was intended to allow businesses, "in the event that a cure is possible, [to] avoid statutory damages or class-wide damages," *i.e.*, **to avoid litigation**. Julia M. Siracuse, *The Future of Our Fingerprints: The Importance of Instituting Biometric Data Protections in Pennsylvania*, 59 Duq. L. Rev. 303, 326 (2021) (emphasis added); *see generally* Allaire

---

[4] Notably, Plaintiffs first filed suit against Magellan in connection with this Incident on July 8, 2020—five months before the CCPA notice was served.

Monticollo, Chelsea Reckell, Emilio Cividanes, *California Privacy Landscape Changes Again with Approval of New Ballot Initiative*, Antitrust, Fall 2020, at 32, 34 ("If the business cures the alleged violation within 30 days of being notified, it will not be subject to penalty from the Attorney General, and for the consumer allegations, no individual or class action suit for statutory damages may be brought by the business.").

Moreover, in analogous circumstances, courts have repeatedly rejected attempts by plaintiffs to circumvent statutory notice requirements. For example, the Ninth Circuit has concluded that, where a buyer is required to provide notice to a seller under the Uniform Commercial Code, that notice must be given before ***any*** suit is filed. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in Court."). Allowing plaintiffs to provide notice "simultaneously with the complaint" or after the case was initiated would "completely undermine[]" this notice policy.); *see also Adkins v. Apple Inc.*, 147 F. Supp. 3d 913, 920 (N.D. Cal. 2014) (same). The same rationale should apply here.

Finally, the Court also should find that the notice was defective on its face. In their Opposition, Plaintiffs argue that Ranson's notice "explicitly states that '[t]he specific code violated is Cal. Civ. Code § 1798.150(a)(1)," but that simply references the private right of action. (Opp. at 15.) The CCPA requires the notice to identify which "specific provisions" were alleged to have been violated, which Ranson's notice fails to do. § 1798.150(b).

Accordingly, Ranson's CCPA should be dismissed with prejudice, as his required notice was both untimely and defective.

### III.  **CONCLUSION**

In sum, with the SACC, Plaintiffs fail to heed the Court's advice for curing the fatal deficiencies in the FACC. The logical explanation is that Plaintiffs cannot cure them; sufficient facts do not exist to do so. Thus, the SACC should be dismissed in its entirety without leave to amend.

| | |
|---|---|
| Dated: November 16, 2021 | Respectfully submitted, |
| | By:  /s/ Paul G. Karlsgodt |
| | BAKER & HOSTETLER LLP<br>Paul G. Karlsgodt (admitted *pro hac vice*)<br>1801 California Street<br>Suite 4400<br>Denver, Colorado 80202<br>Telephone:   303.861.0600<br>Facsimile:    303.861.7805<br>pkarlsgodt@bakerlaw.com |
| | Christopher A. Wiech (admitted *pro hac vice*)<br>1170 Peachtree Street<br>Suite 2400<br>Atlanta, Georgia 30309<br>Telephone:   404.459.0050<br>Facsimile:    404.459.5734<br>cwiech@bakerlaw.com |