Elaine A. Ryan (AZ Bar #012870)
Colleen M. Auer (AZ Bar #014637)
**AUER RYAN, P.C.**
20987 N. John Wayne Parkway, #B104-374
Maricopa, AZ 85139
Telephone: (520) 705-7332
eryan@auer-ryan.com
cauer@auer-ryan.com

*Attorneys for Plaintiff and the Proposed Class*

*(Additional Counsel Listed on Signature Page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Griffey, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Magellan Health, Incorporated,<br><br>Defendant. | No. CV-20-01282-PHX-MTL (Lead)<br>No. CV-20-01350-PHX-MTL (Consol.)<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |
| Daniel Ranson, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Magellan Health, Incorporated,<br><br>Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

I.  INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................... 1

III.  PROCEDURAL HISTORY .................................................................. 1

IV.  THE SETTLEMENT TERMS ............................................................. 3

    A.  Proposed Settlement Class ......................................................... 3

    B.  Settlement Benefits ..................................................................... 3

        1.  Claims-Made Benefits ......................................................... 3

        2.  Common Fund Benefits ....................................................... 5

        3.  Class Notice and Settlement Administration ........................ 6

        4.  Attorneys' Fees and Expenses ............................................. 7

        5.  Service Awards to Named Plaintiffs ................................... 7

        6.  Release ................................................................................ 8

V.  LEGAL AUTHORITY .......................................................................... 9

VI.  ARGUMENT ....................................................................................... 9

    A.  The Settlement Satisfies Rule 23(a). ......................................... 10

        i.  The proposed Class is sufficiently numerous ............... 11

        ii.  The Settlement Class Satisfies the Commonality Requirement ....................................................................... 11

        iii.  Plaintiffs' claims and defenses are typical to those of the Settlement Class ....................................................... 12

        iv.  Plaintiffs will adequately protect the interests of the Class ................................................................................... 13

        v.  Common issues predominate over individualized ones 13

    B.  The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement ................................................................................. 15

    C.  The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e) ................................................................................. 17

        1.  The Strength of Plaintiffs' Case ......................................... 19

2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation.......................................................... 20

3.     The Risk of Maintaining Class Action Status Through Trial.. 21

4.     The Amount Offered in Settlement .......................................... 22

5.     The Extent of Discovery Completed and the Stage of Proceedings................................................................................ 24

6.     The Experience and Views of Counsel.................................... 24

7.     Governmental Participants. ..................................................... 25

8.     The Reaction of the Class Members to the Proposed Settlement .................................................................................................. 25

9.     Lack of Collusion Among the Parties...................................... 25

10.    The Settlement Treats Settlement Class Members Equitably . 25

D.     The Court Should Approve the Proposed Notice Program ................ 27

E.     Appointment of the Settlement Administrator .................................. 29

F.     Appointment of Settlement Class Counsel ........................................ 29

VII. CONCLUSION ................................................................................................ 30

# TABLE OF AUTHORITIES

## CASES                                                          PAGE(S)

*Adlouni v. UCLA Health Systems Auxiliary, et al.*,
   No. BC 589243 (Cal. Super. Ct. June 28, 2019) .................................................23

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................ 10, 11, 13, 16

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ......................................................... 16

*In re Anthem, Inc. Data Breach Litig.*,
   No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) .................................................23

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .......................................................... 19

*In re Brinker Data Incident Litig.*,
   No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr.
   14, 2021) ................................................................................ 22

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) .......................................................... 14

*Bykov v. DC Trans. Services, Inc.*,
   No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29,
   2019) ..................................................................................... 18

*Calderon v. Wolf Firm*,
   No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal.
   Mar. 13, 2018) ...................................................................... 22, 23

*In re: Capital One Consumer Data Breach Litigation*,
   MDL No. 1:19md2915 ................................................................... 23

*Celano v. Marriott Int'l Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007) ...................................................... 11

*Chester v. TJX Cos.*,
   No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal.
   Dec. 5, 2017) .......................................................................... 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)........................................................... 9

iv

*Cochran v. Accellion, Inc., et al.*,
  No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ...................23

*Dennis v. Kellogg Co.*,
  No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14,
  2013).............................................................................................................20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ......................................................................................27

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...................................................................11, 13

*Fehlen v. Accellion, Inc.*,
  Case No. 21-cv-01353 (N.D. Cal.) .................................................................23

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) .......................................................................19

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18,
  2020).............................................................................................................12

*Gribble v. Cool Transports Inc.*,
  No. CV 06-4863 GAF, 2008 WL 5281665 (C.D. Cal. Dec. 15,
  2008).............................................................................................................18

*Griffey v. Magellan Health, Inc.*,
  Case No. CV-20-01282-PHX-MTL ..................................................................2

*Grimm v. American Eagle Airlines, Inc.*,
  No. LA CV 11-00406 ....................................................................................22

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996
  (S.D.N.Y. June 25, 2010) ...............................................................................21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................15, 19

*Hartranft v. TVI, Inc.*,
  No. 15-01081-CJC-DFM, 2019 WL 1746137 (C.D. Cal. Apr. 18,
  2019).............................................................................................................29

*Holly v. Alta Newport Hospital*,
  Case No.2:19cv07496, 2020 WL 1853308 (April 10, 2020) ............................11

*Hudson v. Libre Technology Inc.*,
   No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May
   13, 2020)..................................................................................................26

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019)..................................................................27

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017)..........................................................12, 16

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ...........................................................14

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) .....................................................16, 23

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)..........................................................20, 24

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las*
   *Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) .........................................................14, 17

*Longest v. Green Tree Servicing LLC*,
   308 F.R.D. 310 (C.D. Cal. 2015) ...........................................................13

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006)..............................................................18

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 844 (N.D. Cal. 2005)....................................................27

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)....................................................................7

*Meyer v Portfolio Recovery Associates*,
   707 F.3d 943 (9th Cir. 2012)..................................................................12

*Murillo v. Pacific Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010).............................................................18

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................25

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
   303 F.R.D. 337 (E.D. Cal. 2014).............................................................18

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................ 26, 29

*Orantes-Hernandez v. Smith*,
  541 F. Supp. 351 (C.D. Cal. 1982) ..................................................... 11

*Parsons v. Kimpton Hotel & Rest. Group, LLC*,
  No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ............................... 16

*In re Pauley*,
  2020 WL 5809953 ................................................................................ 8

*Paz v. AG Adriano Goldschmeid, Inc.*,
  No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb.
  29, 2016) ............................................................................................ 21

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .......................................................................... 27

*Presley v. Carter Hawley Hale Profit Sharing Plan*,
  No. C9704316SC, 2000 WL 16437 (N.D. Cal. 2000) ....................... 26

*Reyes v. Experian Info. Sols., Inc.*,
  No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan.
  27, 2020) ............................................................................................ 17

*Roe v. Frito-Lay, Inc.*,
  No. 14-cv-00751, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ........ 26

*Roes 1-2 v. SFBSC Management LLC*,
  944 F.3d 1035 (9th Cir. 2019). Notice .............................................. 28

*Smith v. Triad of Ala.*,
  LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574
  (M.D. Ala. Mar. 17, 2017).................................................................. 22

*In re Sorbates Direct Purchaser Antitrust Litig.*,
  No. 99-1358MMC, 2002 WL 31655191 (N.D. Cal. Nov. 15,
  2002)................................................................................................... 27

*Spencer v. #1 A LifeSafer of Ariz., LLC*,
  No. CV-18-02225-PHX-BSB, 2019 WL 1034451 (D. Ariz. Mar.
  4, 2019) (Bade, J.) .............................................................................. 29

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007)............................................. 18

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    MDL No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ................... 23

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug.
    23, 2016) ........................................................................................... 11, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................ 15

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017), *reversed in part*, 928 F.3d 42
    (D.C. Cir. June 21, 2019) ............................................................................ 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................... 11

*Williams v. Costco Wholesale Corp.*,
    2010 WL 2721452 (S.D. Cal. July 7, 2010) ................................................. 27

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................... 14, 17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019) .................................. 8, 16

## **RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 2

Fed. R. Civ. P. 23 ................................................................. 12, 13, 27, 29

Fed. R. Civ. P. 23(a) .......................................................... 10, 11, 12, 15

Fed. R. Civ. P. 23(a)(1) ................................................................................... 11

Fed. R. Civ. P. 23(a)(3) ................................................................................... 12

Fed. R. Civ. P. 23(a)(4) ............................................................................ 13, 14

Fed. R. Civ. P. 23(b)(1), (2) ........................................................................... 15

Fed. R. Civ. P. 23(b)(3) ................................................... 14, 15, 16, 27

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................. 16

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 7, 27

Fed. R. Civ. P. 23(e) ................................................................................... 9, 17, 19, 26

Fed. R. Civ. P. 23(e)(1) .............................................................................................. 17

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................... 27

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ............................................................................... 30

Fed. R. Civ. P. 23(g)(1)(B) ......................................................................................... 29

Fed. R. Civ. P. 23(e)(2) .............................................................................................. 17

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................................... 25

# I.    INTRODUCTION

Plaintiffs Chris Griffey, Bharath Maduranthgam Rayam, Laura Leather, Clara Williams, Daniel Ranson, Mitchell Flanders, and Keith Lewis (collectively, "Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant Magellan Health, Incorporated ("Magellan" or "Defendant") does not oppose certification for Settlement purpose only and does not oppose Plaintiffs' request for preliminary approval of class actions settlement. Plaintiffs strongly believe the Settlement is fair, reasonable and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

# II.    STATEMENT OF FACTS

This litigation arises from a 2020 phishing incident wherein a Magellan employee clicked on a phishing email that resulted in a cybercriminal accessing a subset of data and subsequently deploying ransomware to encrypt Magellan's files (the "Data Incident"). Plaintiffs allege that as a result of the Data Incident, the cybercriminals gained access to Plaintiffs' and the Settlement Class Members' personal information ("PII") and personal health information ("PHI") including names, addresses, employee ID number, W-2 or 1099 details, treatment information, health insurance account information, medical IDs, and in some instances, Social Security numbers or Taxpayer ID numbers.

Upon discovering the Data Incident, Magellan notified approximately 963,450 individuals of the Data Incident, including offering these individuals free credit monitoring. Individuals, including Plaintiffs, received notices in or around May and June 2020.

# III.    PROCEDURAL HISTORY

On June 29, 2020, Chris Griffey, Bharath Maduranthgam Rayam, Michael Domingo, Laura Leather, and Clara Williams filed a putative class

action. One week later, on July 8, 2020, Daniel Ranson, Mitchell Flanders, Joseph Rivera, Teresa Culberson, and Keith Lewis filed a substantially identical case. On October 8, 2020,  the Court consolidated both actions with and under the *Griffey* matter, titled *Griffey v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL. On December 11, 2020, the consolidated plaintiffs filed their First Amended Consolidated Class Action Complaint, asserting 13 causes of action against Magellan on behalf of themselves and nationwide and various putative classes.

On January 25, 2021, the Court granted Magellan's motion to dismiss in its entirety, dismissing with prejudice the negligence *per se* claim and dismissing without prejudice the remaining claims. On October 12, 2021, plaintiffs filed the operative complaint, the Second Amended Consolidated Class Action Complaint ("SACC"), alleging eight claims against Magellan. On October 26, 2021, Magellan moved to dismiss the SACC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). On June 2, 2022, the Court granted in part and dismissed in part Magellan's second motion to dismiss, dismissing Teresa Culberson and Joseph Rivera from the Litigation, dismissing Plaintiffs Rayam's and Williams's negligence claims, Plaintiffs Leather's, and Lewis's unjust enrichment claims,   Plaintiff Domingo's statutory claims, and Plaintiff Ranson's CCPA claim.

On September 30, 2022, the Parties participated in a full-day virtual mediation before Rodney A. Max of Upchurch Watson White & Max. The Parties were unable to come to a settlement agreement.

Following the September 30 mediation, the Parties engaged in discovery, including exchanging discovery requests, the production of documents, and Plaintiff Leather's deposition. During this time, the Parties continued to discuss settlement, and on May 4, 2023, the Parties reached a settlement, which is memorialized in this settlement agreement and attached exhibits ("Settlement Agreement," attached hereto as Exhibit 1). The Parties

took several weeks to finalize the full scope of the Settlement Agreement and executed the same on June 20, 2023.

## IV.   THE SETTLEMENT TERMS

### A.  Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "All persons who were notified that their information may have been impacted in the Data Incident." S.A. § 1.29.

The Settlement Class contains approximately 963,450 individuals. This number includes "Claims-Made" portion of the Settlement Class (599,248 persons), and the "Common Fund" portion of the Settlement Class (364,202 persons).

### B. Settlement Benefits

The Settlement provides for the following benefits:

#### 1.  Claims-Made Benefits

Claims-Made Settlement Class Members shall have the opportunity to submit a Claim for Claims-Made Settlement Benefits on or before the Claims Deadline. The benefits available to Claims-Made Settlement Class Members, as described below, shall include (1) Lost-Time Claims; (2) Out-of-Pocket Expense Claims; and (3) Identity Protection Benefits.

a)      Lost-Time Claims: Claims-Made Settlement Class Members may submit a Claim for up to three hours of time spend related to the Data Incident at $20 per hour if the Settlement Class Member (1) attests that any claimed lost time was spent related to and arising out of the Data Incident, and (2) selects the applicable activity the time was spent on or provides a brief general description of how the claimed lost time was spent. No documentation need be submitted in connection with Lost-Time Claims. S.A. § 2.1.1(a).

b)    Out-of-Pocket Expense Claims: Claims-Made Settlement Class Members may submit a Claim for reimbursement of documented out-of-pocket losses reasonably and fairly traceable to the Data Incident. Out-of-Pocket-Expense Claims will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after April 2020 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. Claims-Made Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims. S.A. § 2.1.1(b).

c)    Identity-Theft Protection Benefits: Claims-Made Settlement Class Members may submit a Claim to accept the 12 months of free identity-theft-protection services offered as part of the Settlement. S.A. § 2.1.1(c).

Claims-Made Settlement Class Members' claims for Lost Time and/or Out-of-Pocket Losses are subject to an individual cap of $750 per claimant. S.A. § 2.1.2. In no event shall the total costs of Claims-Made Benefits, including reasonable Notice and Settlement Administration Costs, any attorneys' fees, costs, and expenses, as approved by the Court, and any service awards approved by the Court exceed $2,250,000. S.A. § 2.1.3.

### 2. Common Fund Benefits

The Common-Fund Settlement Class Members shall have the opportunity to submit a Claim for Common-Fund Benefits on or before the Claims Deadline. The Common-Fund Benefits, as described below, shall include (1) Pro-Rata Cash Payments; or (2) Lost-Time Claims and (3) Out-of-Pocket Expense Claims  These benefits shall be paid from the $1,500,000 non-reversionary Common Fund. S.A. § 2.2.1.

a) $100 Pro-Rata Cash Payment: Common-Fund Settlement Class Members may submit a Claim for a $100 cash payment. The Settlement Administrator will make *pro rata* settlement payments, which may increase or decrease the $100 Cash Payment, subject to the total amount of the Common Fund. S.A. § 2.2.1(a).

b) Lost-Time Claims: Common-Fund Settlement Class Members may submit a Claim for up to five hours of time spend remedying issues related to the Data Incident at $25 per hour if the Settlement Class Member (1) attests that any claimed lost time was spent related to and arising out of the Data Incident, and (2) selects the applicable activity the time was spent on or provides a brief general description of how the claimed lost time was spent. No documentation need be submitted in connection with Lost-Time Claims. S.A. § 2.2.1(b).

c) Out-of-Pocket Expense Claims: Common Fund Settlement Class Members may submit a Claim for reimbursement of documented out-of-pocket losses reasonably and fairly traceable to the Data Incident. Out-of-Pocket-Expense Claims will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs

associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after April 2020 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. Common-Fund Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims. S.A. § 2.2.1(c).

Common Fund Settlement Class Members may either (1) submit a claim for the Pro-Rata Cash Payment or (2) submit a claim for Lost Time and/or Out-of-Pocket Expenses. S.A. § 2.2.2. Common-Fund Settlement Class Members' claims for Lost Time and/or Out-of-Pocket Losses are subject to an individual cap of $5,000 per claimant. S.A. § 2.2.3.

### 3. Class Notice and Settlement Administration

Notice will be paid for by Defendant. Notice will be given to the Settlement Class via individual direct notice, which will be given by mailing the Short-Form notices (attached to the Settlement Agreement as Exhibits B-1 and B-2) to the postal addresses associated with the Class Members. Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC ("Kroll Decl."), attached hereto as Exhibit 3, ¶ 6.

A Long Form Notice (attached to Settlement Agreement as Exhibit C), will also be posted on the settlement website, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. S.A. § 9.1(f), 10.1(c). The notice documents are clear and concise and directly apprise Class Members

of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will be made available to address Class Members' inquiries. S.A, § 10.1(h).

Moreover, Defendant has retained Kroll Settlement Administration, LLC a nationally recognized and well-regarded class action settlement administrator, to serve as Settlement Administrator, subject to the Court's approval. *See* Kroll Decl., ¶ 2.

### 4.  Attorneys' Fees and Expenses

The Parties have agreed that, as part of the Settlement the Court shall determine the amount of any award of attorneys' fees, costs, and services awards. Plaintiffs will separately seek an award of attorneys' fees not to exceed $1,250,000.00, as well as reimbursement of their reasonable costs and litigation expenses incurred. This amount is one-third of the $3,750,000 that is made available to the Settlement Class here. It also is an amount that is commensurate with the accumulated lodestar of Plaintiffs' Counsel.

Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. The Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery). Plaintiffs and Class Counsel will submit a fulsome attorneys' fee motion supporting the fee request. Defendant reserved all rights to oppose the request, and it will be up to the Court to determine a fair and reasonable fee. S.A. § 8.1.

### 5.  Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement.

Declaration of David K. Lietz ("Counsel Decl.," attached hereto as Exhibit 2), ¶ 36. Plaintiffs will separately petition the Court for service awards ranging from $1,500 to $5000 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 8.1. Pursuant to the Settlement, Defendant retains all rights to oppose Class Counsel's request for service awards.

The amount requested here is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g.*, *In re Pauley*, 2020 WL 5809953, at *4 (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

### 6. Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A., § 7.1. "Released Claims" are defined, i*nter alia*, as:

> Upon the Effective Date, Magellan shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Class Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation, except for enforcement of the Settlement Agreement. Any other claims or defenses Magellan may have against such Persons including, without limitation, any claims based upon or arising out of any contractual, employment, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation are specifically preserved and shall not be affected by the preceding sentence.

S.A. § 7.2.  Released Claims shall include Unknown Claims as defined in § 1.34 of the Settlement Agreement. Released Claims shall not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

## V.   LEGAL AUTHORITY

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to the class and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63.

Here, Plaintiffs request the Court take the first step, and grant preliminary approval of the proposed Settlement Agreement.

## VI.   ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive expenditures of resources, and given the relatively small value of the claims

of the individual class members, would be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Plaintiffs here seeks certification of a Settlement Class consisting of: "All persons who were notified that their information may have been impacted in the Magellan Data Incident." The Settlement Class is defined near identically to the Nationwide class defined in Plaintiffs' Second Amended Consolidated Class Action Complaint, ¶ 125. For the reasons set forth below, the Court should certify the Class for settlement purposes and preliminarily approve the Settlement.

**A. The Settlement Satisfies Rule 23(a).**

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See*

*Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. The requirements are well known:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)

<div align="center">i.    <u>The proposed Class is sufficiently numerous.</u></div>

While there is no fixed point where the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital,* Case No.2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020), *citing Rannis v. Recchia,* 380 Fed. App'x 646, 651 (9th Cir. 2010). Numbering approximately 963,450 individuals, the proposed settlement class easily satisfies Rule 23's numerosity requirement. Joinder of the individuals is clearly impracticable—thus the numerosity prong is satisfied. *See, e.g. Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

<div align="center">ii.    <u>The Settlement Class Satisfies the Commonality<br>Requirement</u>.</div>

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot,*

*Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). For the same reason, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.' *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, *inter alia*, whether Magellan engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Incident; whether Magellan owed a duty to Plaintiffs and Class members; whether Magellan breached its duties; and whether Magellan violated the common law and statutory violations alleged in the Second CAC.

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

### iii.   Plaintiffs' claims and defenses are typical to those of the Settlement Class.

Plaintiff satisfies the typicality requirement of Rule 23 because Plaintiff's claims, which are based on Defendant's alleged failure to protect the PII and PHI of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII and PHI was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

iv.     <u>Plaintiffs will adequately protect the interests of the Class.</u>

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015)*.

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who allegedly experienced the same injuries and seek, like other Class Members, compensation for Magellan's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Counsel Dec. ¶¶ 2, 21, 30. Thus, Plaintiffs satisfy the requirement of adequacy.

v.     <u>Common issues predominate over individualized ones.</u>

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative

rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

As discussed above, Plaintiffs allege that common questions predominate over any questions affecting only individual members here. Class certification here is also "superior to other available methods for . . . fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Malta*, 2013 WL 444619, at *3 (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed"). For these

reasons, certification of the Settlement Class for purposes of settlement only is appropriate.

### B. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id*.

Rule 23(b)(3) requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs' claims depend, first and foremost, on whether Magellan used reasonable data security measures to protect consumers' PII and PHI. That question can be resolved, for purposes of settlement only, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be

said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable:  the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Also, because Plaintiffs seek to certify a class in the context of a settlement only, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are hundreds of thousands of class members with modest individual claims, most of whom likely lack the resources necessary

to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

### C. The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id*.

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the

settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc*., No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc*., No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc*., 303 F.R.D. 337, 350 (E.D. Cal. 2014). With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co*., 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture, Plaintiffs' and their counsel strongly believe that the resolution reached here is in the Settlement Class's best interests.

To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent

of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. With respect to Plaintiffs Leather, Ranson, Flanders, and Lewis's negligence claim, Plaintiffs believe they will ultimately be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class's PII and PHI. Counsel Decl., ¶ 38.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Magellan's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Second CAC. While Plaintiffs believe they have strong

claims and would be able to prevail, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Counsel Decl., ¶ 43.

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately roughly 963,450 individuals (each of whom, Magellan has argued, would need to establish cognizable harm and causation); a complicated and technical factual background; and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers. Putting a point on the litigation risks to Plaintiffs here, the Court's rulings on the two motions to dismiss starkly demonstrate that success is not guaranteed here.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class due the constant standing challenges plaintiffs face in data breach class actions. Historically, data

breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 3.  The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the discovery stage, the parties have not briefed and the Court has not certified any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would

encounter risks in obtaining and maintaining certification of the class. The class has not been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. Thus, the dearth of direct precedent adds to the risks posed by continued litigation.

### 4.  The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data breach litigation generally and this litigation specifically (as evidenced by the motions' practice in this case), the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members, in the form of out-of-pocket expense reimbursements, compensation for lost time, or cash payments for the Common Fund Class Members.

The per Class Member amounts of compensation are substantial, with the Common Fund Settlement Class Members receiving $5.68 per Class Member, and the Claims-Made Settlement Class receiving up to $3.75 per Class Member. This settlement is a strong result for the Class, and as discussed below is in line with other settlements in cases involving data breaches of similar scope. Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018)

(comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

The Settlement value per class member here is on par with or exceeds that in other exemplary data breach settlements.[1] These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiffs have achieved an excellent resolution for the Settlement Class.

---

[1] *See, e.g. Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (settlement of $8.1 million for 9.2 million class members who had their Social Security Numbers compromised; $0.90 per class member); *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Cochran v. Accellion, Inc., et al.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per Class member); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 Class Members; 44 cents per Class Member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 Class Members; $1.45 per Class Member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per Class Member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at **1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million Class Members; 10 cents per Class Member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million Class Members; 20 cents per Class Member).

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Magellan and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to its customers. Counsel Decl., ¶ 33. The parties also informally exchanged non-public information concerning the Data Incident and the size of the Class in preparation for mediation. *Id.* Plaintiffs also engaged in formal discovery, reviewing thousands of pages documents produced by Defendant, as well as Defendant's responses to interrogatories. As this case has been litigated for approximately three years (during which parties have exchanged significant discovery), the litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. Counsel Decl., ¶¶ 2-32 Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6. The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Magellan announced the Data Incident, which, based upon publicly-available information, potentially impacted approximately 963,450 customers and employees (current and former). Class Counsel have substantial experience litigating complex class

cases of various types, including data breach cases such as this one. *See* Counsel Decl., ¶¶ 2-32 & Exs. A and B thereto. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. *Id.*, ¶ 41. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton*, 2017 WL 1424636, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7. Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement. Counsel Decl., ¶ 36.

### 9. Lack of Collusion Among the Parties

The parties negotiated a substantial, multifaceted Settlement, as described above. Class Counsel and Magellan's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator also is evidence of no collusion. Counsel Decl. ¶¶ 45-46. Therefore, the Court can be assured that the negotiations were not collusive.

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members as equitably as possible under the circumstances. The Advisory Committee's Note to Rule 23(e)(2)(D) advises

that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement treats all Class Members equitably, taking into account the difference between Class Members who potentially had their Social Security numbers compromised, and those who did not. Each and every Claims-Made Class Member has the opportunity to make a claim for up to $750 in reimbursements for expenses and time spent. Each and every Common Fund Class Members has the opportunity to make a claim for up to $5000 in reimbursements for out-of-pocket expenses and lost time, or to take a pro rate cash payment of $100. While Plaintiffs have been permitted to seek approval of a service award from this Court, as will be explained in detail at Plaintiffs' Fees Motion, the contemplated awards in a range from $1,500 to $5000 per class representative is in line with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement.[2] As such, this factor also weighs in favor of approval.

---

[2] *See e.g. Roe v. Frito-Lay, Inc.,* No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving service awards of $5,000); *Presley v. Carter Hawley Hale*

### D. The Court Should Approve the Proposed Notice Program

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. CR 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id*.

---

*Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) (approving $25,000 service awards); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 service awards); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 99-1358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) (approving $7,500 service award); *Williams v. Costco Wholesale Corp.*, 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) (approving $5,000 award in an case settling for $440,000).

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via direct U.S. mail. Kroll Decl ¶¶ 5-9. The costs of administering the Settlement will be paid by Magellan. S.A. § 2.1.3. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. S.A. Exs. A-1, A-2. B-1, B-2, and C.

In addition to the direct notice, the Settlement Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement. Kroll Decl. ¶ 10. The Settlement Administrator will also make available a toll-free help line to provide Settlement Class Members with additional information about the settlement. *Id.* ¶ 11. The Settlement Administrator is also authorized and required to provide copies of the forms of Short Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement, upon request. S.A. § 10.1(h).

Plaintiffs have negotiated a notice program that is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Class Members here provided Defendant their contact information as employees or consumers of Defendant's benefits administration: it is not known to be a particularly transient Class, thus direct notice via mail is the best practicable. *Compare Roes 1-2 v. SFBSC Management LLC,* 944 F.3d 1035, 1046 (9th Cir. 2019). Notice programs providing notice by email and mail have been approved by the Ninth Circuit.

*See e.g. In re Online DVD-Rental Antitrust Litigation*, 779 F. 3d 934, 946 (9th Cir. 2015) (finding notice provided initially by email, and then by mail to individuals whose emails bounced back was sufficient under both the U.S. Constitution and Rule 23).

Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights.").

### E. Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request that the Court appoint Kroll Settlement Administration LLC ("Kroll") to serve as the Settlement Administrator. Kroll has a trusted and proven track record of supporting thousands of class action administrations, with over 50 years of legal administration experience. Kroll Decl., ¶2 .

### F. Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider

the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Counsel Decl. ¶ 2-32, Exs. A and B (firm resumes). Accordingly, the Court should appoint David K. Lietz of Milberg Coleman Bryson Phillips Grossman PLLC, John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and Elaine A. Ryan of Auer Ryan, PC.

## VII. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. The Settlement is likely to be approved, and as such, Notice should be ordered to issue to the class. For all the above reasons, Plaintiffs respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: June 20, 2023                                Respectfully Submitted,

                                                   **AUER RYAN, P.C.**

                                                   By: /s/Elaine A. Ryan
                                                   Elaine A. Ryan (AZ Bar #012870)
                                                   Colleen M. Auer (AZ Bar #014637)
                                                   20987 N. John Wayne Parkway,
                                                   #B104-374
                                                   Maricopa, AZ 85139
                                                   Telephone: (520) 705-7332
                                                   eryan@auer-ryan.com
                                                   cauer@auer-ryan.com

*Additional counsel:*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
David K. Lietz*
5335 Wisconsin Ave, NW
Suite 440
Washington, DC 20015
Telephone: (866) 252-0878
Email: dlietz@milberg.com

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis**
Patrick A. Barthle**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

**RHINE LAW FIRM, P.C.**
Joel R. Rhine*
Martin A. Ramey*
Janet R. Coleman**
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Counsel for Plaintiffs and the Putative Class*
* Previously admitted pro hac vice

# __EXHIBIT 1__

**BAKER & HOSTETLER LLP**
Paul G. Karlsgodt (admitted *pro hac vice*)
Keeley O. Cronin  (admitted *pro hac vice*)
1801 California Street, Suite 4400
Denver, Colorado 80202
Tele:   303.861.0600; Fax: 303.861.7805
pkarlsgodt@bakerlaw.com
kcronin@bakerlaw.com

Christopher A. Wiech (admitted *pro hac vice*)
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Tele:   404.459.0050; Fax: 404.459.5734
cwiech@bakerlaw.com

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
John C. Gray (State Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004
Tele:   602.262.5331; Fax: 602.262.5747
Email: jgray@lrrc.com

*Attorneys for Defendant Magellan Health, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| Chris Griffey, et al., | No. CV-20-01282-PHX-MTL (Lead) |
|---|---|
| Plaintiffs, | No. CV-20-01350-PHX-MTL (Consol.) |
| v. | **CLASS ACTION SETTLEMENT AGREEMENT** |
| Magellan Health, Incorporated, | |
| Defendant. | (Assigned to the Honorable Michael T. Liburdi) |

Daniel Ranson, et al.,

        Plaintiffs,

v.

Magellan Health, Incorporated,

        Defendant.

This Settlement Agreement, dated June 20, 2023, is made and entered into by and among the following Settling Parties (defined below): Chris Griffey, Bharath Maduranthgam Rayam, Laura Leather, Clara Williams, Daniel Ranson, Mitchell Flanders, and Keith Lewis (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class (defined below), by and through their counsel of record, and Magellan Health, Inc. ("Magellan"), by and through its counsel of record. The Settlement Agreement (defined below) is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (defined below), upon and subject to the terms and conditions thereof.

## I.    THE LITIGATION

This litigation arises from a 2020 phishing incident wherein a Magellan employee clicked on a phishing email that resulted in a cybercriminal accessing a subset of data on a Magellan corporate server and subsequently deploying ransomware to encrypt Magellan's files (the "Data Incident"). Plaintiffs allege that as a result of the Data Incident, the cybercriminals gained access to certain of Plaintiffs' and the Settlement Class Member's information. After responding to and investigating the Data Incident, Magellan notified approximately 963,450 individuals of the Data Incident whose personal information ("PII") and personal health information ("PHI"), including names, addresses, employee ID number, W-2 or 1099 details, treatment information, health insurance account information, medical IDs, and in some instances, Social Security numbers or Taxpayer ID numbers, may have been subject to unauthorized access during the Data Incident.  Magellan also

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

offered these individuals free credit monitoring. Individuals, including Plaintiffs, received notices in or around May and June 2020.

On June 29, 2020, Chris Griffey, Bharath Maduranthgam Rayam, Michael Domingo, Laura Leather, and Clara Williams filed a putative class action. One week later, on July 8, 2020, Daniel Ranson, Mitchell Flanders, Joseph Rivera, Teresa Culberson, and Keith Lewis filed a substantially identical case. On October 8, 2020, the Court consolidated both actions with and under the *Griffey* matter, titled *Griffey v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL. On December 11, 2020, the consolidated plaintiffs filed their First Amended Consolidated Class Action Complaint, asserting 13 causes of action against Magellan on behalf of themselves and nationwide and various putative classes.

On January 25, 2021, the Court granted Magellan's motion to dismiss in its entirety, dismissing with prejudice the negligence *per se* claim and dismissing without prejudice the remaining claims. On October 12, 2021, plaintiffs filed the operative complaint, the Second Amended Consolidated Class Action Complaint ("SACC"), alleging eight claims against Magellan. On October 26, 2021, Magellan moved to dismiss the SACC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). On June 2, 2022, the Court granted in part and dismissed in part Magellan's second motion to dismiss, dismissing Teresa Culberson and Joseph Rivera from the Litigation, dismissing Plaintiffs Rayam's and Williams's negligence claims, Plaintiffs Leather's and Lewis's unjust enrichment claims, Plaintiff Domingo's statutory claims, and Plaintiff Ranson's CCPA claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

On September 30, 2022, the Parties participated in a full-day virtual mediation before Rodney A. Max of Upchurch Watson White & Max. The Parties were unable to come to a settlement agreement.

Following the September 30 mediation, the Parties engaged in discovery, including exchanging discovery requests, the production of documents, and Plaintiff Leather's deposition. During this time, the Parties continued to discuss settlement, and on May 4, 2023, the Parties reached a settlement, which is memorialized in this settlement agreement and attached exhibits ("Settlement Agreement").

## II.   THE CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLING

Plaintiffs believe the claims asserted in the Litigation, as set forth in the SACC, have merit. Plaintiffs and Class Counsel (defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Magellan through continued motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

//

//

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

### III. DENIAL OF WRONGDOING AND LIABILITY

Magellan denies each and all of the claims and contentions alleged against it in the Litigation. Magellan denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Magellan has concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Magellan has considered the uncertainty and risks inherent in any litigation. Magellan has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

### IV. SETTLEMENT TERMS & DEFINITIONS

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Class Counsel, and Magellan that, subject to the approval of the Court, the Litigation, and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties and the Settlement Class, except those members of the Settlement Class who timely opt-out of the Settlement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

    **1.** **Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Action" or "Litigation" means the action titled, *Griffey et al. v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL, District Court of Arizona.

1.2    "Agreement" or "Settlement Agreement" means this agreement, exhibits, and the settlement embodied herein.

1.3    "Claim" means a claim for Settlement benefits made under the terms of this Settlement Agreement.

1.4    "Claims Deadline" means the postmark and/or online submission deadline for Valid Claims submitted pursuant to ¶¶ 2.1 and 2.2.

1.5    "Claim Forms" means the claim forms to be used by Settlement Class Members to submit a Claim, either through the mail or online through the Settlement Website, substantially in the form as shown in Exhibits A-1 and A-2 attached hereto.

1.6    "Claims-Made Benefits" means the Settlement benefits (as described below) available to the Claims-Made Settlement Class Members. The Claims-Made Benefits will be funded by Magellan in an amount not to exceed $2,250,000, inclusive of (i) all Valid Claims for Settlement benefits made under ¶ 2.1; (ii) reasonable Notice and Settlement Administration Costs (defined below) incurred in the administration of both Claims-Made and Common Fund Benefits, including all taxes owed by the Claims-Made Benefits and Common Fund; (iii) any attorneys' fees, costs, and expenses, as approved by the Court; and (iv) any Service Awards approved by the Court.

1.7    "Claims-Made Settlement Class Members" means the approximately 599,248 Settlement Class Members who were notified that their information may have been impacted in the Data Incident, and whose Social Security numbers were not impacted

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

– 6 –

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

in the Data Incident. The Claims-Made Settlement Class Members are eligible to submit a claim under the Claims-Made Benefits.

1.8    "Class Counsel" means David K. Lietz of Milberg Coleman Bryson Phillips Grossman PLLC, John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and Elaine A. Ryan of Auer Ryan, PC.

1.9    "Common Fund" means a non-reversionary common fund to be funded by Magellan in the amount of $1,500,000.

1.10   "Common-Fund Settlement Class Members" means the approximately 364,202 Settlement Class Members who were notified of the Data Incident and who were notified that their Social Security numbers may have been impacted in the Data Incident. Common-Fund Settlement Class Members are eligible to submit a claim under the Common Fund.

1.11   "Court" means the United States District Court for the District of Arizona.

1.12   "Dispute Resolution" means the process for resolving disputed Claims as set forth in this Settlement Agreement.

1.13   "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.14 herein have occurred and been met.

1.14   "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to

which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.15    "Judgment" means a judgment rendered by the Court.

1.16    "Long Form Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in Exhibit C attached hereto.

1.17    "Magellan's Counsel" means Baker & Hostetler LLP and Lewis Roca Rothgerber Christie LLP.

1.18    "Notice Date" means 45 days following entry of the Preliminary Approval Order. The Notice Date shall be used for purposes of calculating the Claims Deadline, Opt-Out Date and Objection Date deadlines, and all other deadlines that flow from the Notice Date.

1.19    "Notice and Settlement Administration Cost" means all costs incurred or charged by the Settlement Administrator in connection with providing Notice to Settlement Class Members and costs of administering the Common Fund and Claims-Made Settlement benefits.

1.20    "Objection Date" means the date by which the Settlement Class Members must mail to Class Counsel and Magellan's Counsel, or in the alternative, file with the Court their objection to the Settlement Agreement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1.21   "Opt-Out Date" means the date by which the Settlement Class Members must mail their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.22   "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents and/or assignees.

1.23   "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class.  The Settling Parties' proposed form of Preliminary Approval Order is attached as Exhibit D attached hereto.

1.24   "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States as defined below; violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* and all similar state consumer-protection statutes; violations of the California Consumer Protection Act of 2018, Cal. Civ. Code § 1798, *et seq.* and all similar state privacy-protection statutes; violations of the California Customer Records Act, Cal. Civ. Code § 1798.84, *et seq.* and all similar notification statutes in effect in any states in the

United States; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Parties based on, relating to, concerning or arising out of the Data Incident and alleged theft of other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of the Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.25 "Related Entities" means Magellan's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers, and

includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.26   "Released Parties" means Magellan and its Related Entities and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers.

1.27   "Settlement Administration" means the processing of Notice and the processing and payment of Claims received from Settlement Class Members by the Settlement Administrator.

1.28   "Settlement Administrator" means Kroll Settlement Administration, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation.

1.29   "Settlement Class" means all persons who were notified that their information may have been impacted in the Data Incident. The Settlement Class specifically excludes: (i) Magellan and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contender* to any such charge.

1.30   "Settlement Class Member(s)" means all Persons meeting the definition of the Settlement Class.

1.31   "Settlement Website" means a website, the URL for which to be mutually selected by the Settling Parties, that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information, as well as provide the Settlement Class Members with the ability to submit a Claim online.

1.32   "Settling Parties" means, collectively, Magellan and Plaintiffs, individually and on behalf of the Settlement Class, and all Released Parties.

1.33   "Short Form Notices" means the short form notices of the proposed class action settlement, substantially in the form as shown in Exhibits B-1 and B-2 attached hereto. The Short Form Notice will direct recipients to the Settlement Website and inform Settlement Class Members of, among other things, the Claims Deadline, the Opt-Out and Objection Deadlines, and the date of the Final Fairness.

1.34   "Unknown Claims" means any of the Released Claims that Plaintiffs do not know or suspect to exist in their favor at the time of the release of the Released Parties that, if known by them, might have affected their settlement with, and release of, the Released Parties, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs intend to and expressly shall have waived the provisions, rights, and benefits conferred by California Civil Code § 1542,

(or any similar comparable, or equivalent provision of any federal, state or foreign law, or principle of common law which is similar, comparable, or equivalent to California Civil Code §1542), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs expressly shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.35   "Valid Claims" means Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

## 2.   Settlement Structure

2.1   Claims-Made Benefits

2.1.1   Claims-Made Settlement Class Members shall have the opportunity to submit a Claim for Claims-Made Settlement Benefits on or before the Claims Deadline. The benefits available to Claims-Made Settlement Class Members, as described below,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

shall include (1) Lost-Time Claims; (2) Out-of-Pocket Expense Claims; and (3) Identity Protection Benefits.

a)   <u>Lost-Time Claims</u>: Claims-Made Settlement Class Members may submit a Claim for up to three hours of time spend related to the Data Incident at $20 per hour if the Settlement Class Member (1) attests that any claimed lost time was spent related to and arising out of the Data Incident, and (2) selects the applicable activity the time was spent on or provides a brief general description of how the claimed lost time was spent. No documentation need be submitted in connection with Lost-Time Claims.

b)   <u>Out-of-Pocket Expense Claims</u>: Claims-Made Settlement Class Members may submit a Claim for reimbursement of documented out-of-pocket losses reasonably and fairly traceable to the Data Incident. Out-of-Pocket-Expense Claims will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after April 2020 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. Claims-Made Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims. This may include receipts or other documentation, not "self-prepared" by the claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation. Out-of-Pocket Expense Claims must include an attestation that the monetary losses are fairly traceable to the Data Incident and were not incurred due to some other event or reason.

    c)    <u>Identity-Theft Protection Benefits:</u> Claims-Made Settlement Class Members may submit a Claim to accept the 12 months of free identity-theft-protection services offered as part of the Settlement.

2.1.2 Claims-Made Settlement Class Members' claims for Lost Time and/or Out-of-Pocket Losses are subject to an individual cap of $750 per claimant.

2.1.3. Use of Claims-Made Benefits: The Claims-Made Benefits shall be used to pay for (i) reasonable Notice and Settlement Administration Costs incurred in the administration of both Claims-Made Benefits and Common Fund, including all taxes owed by the Claims-Made Benefits and Common Fund; (ii) any attorneys' fees, costs, and expenses, as approved by the Court; (iii) any Service Awards approved by the Court; and

(iv) any Claims-Made Benefits to Claims-Made Settlement Class Members, pursuant to the terms and conditions of this Agreement. In no event shall the total costs of Claims-Made Benefits exceed $2,250,000.

2.2 <u>Common-Fund Benefits</u>

2.2.1 The Common-Fund Settlement Class Members shall have the opportunity to submit a Claim for Common-Fund Benefits on or before the Claims Deadline. The Common-Fund Benefits, as described below, shall include (1) Pro-Rata Cash Payments; or (2) Lost-Time Claims and (3) Out-of-Pocket Expense Claims. These benefits shall be paid from the $1,500,000 non-reversionary Common Fund.

a) <u>$100 Pro-Rata Cash Payment</u>: Common-Fund Settlement Class Members may submit a Claim for a $100 cash payment. The Settlement Administrator will make *pro rata* settlement payments, which may increase or decrease the $100 Cash Payment, subject to the Common Fund cap (described below).

b) <u>Lost-Time Claims</u>: Common-Fund Settlement Class Members may submit a Claim for up to five hours of time spend remedying issues related to the Data Incident at $25 per hour if the Settlement Class Member (1) attests that any claimed lost time was spent related to and arising out of the Data Incident, and (2) selects the applicable activity the time was spent on or provides a brief general description of how the claimed lost time was spent. No documentation need be submitted in connection with Lost-Time Claims.

c) <u>Out-of-Pocket Expense Claims:</u> Common-Fund Settlement Class Members may submit a Claim for reimbursement of documented out-of-pocket losses reasonably and fairly traceable to the Data Incident. Out-of-Pocket-Expense Claims will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after April 2020 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. Common-Fund Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims. This may include receipts or other documentation, not "self-prepared" by the claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation. Out-of-Pocket Expense Claims must include an

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

attestation that the monetary losses are fairly traceable to the Data Incident and were not incurred due to some other event or reason.

2.2.2    Common-Fund Settlement Class Members may either (1) submit a claim for the Pro-Rata Cash Payment or (2) submit a claim for Lost Time and/or Out-of-Pocket Expenses

2.2.3    Common-Fund Settlement Class Members' claims for Lost Time and/or Out-of-Pocket Losses are subject to an individual cap of $5,000 per claimant.

2.3    <u>Notice Deadline:</u> Settlement Class Members seeking reimbursement under ¶¶ 2.1 or 2.2 must complete and submit a Claim Form to the Settlement Administrator, postmarked or submitted online on or before the 90th day after the Notice Date. The notice to the Settlement Class will specify this deadline and other relevant dates described herein. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief and is being made under penalty of perjury. Notarization shall not be required.

2.4    <u>Dispute Resolution</u>

2.4.1    The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the Claimant is a Settlement Class Member; (2) the Claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the Out-of-Pocket Expenses Claims described above; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the Claimant has suffered the claimed losses as a result of the Data Incident (collectively, "Facially Valid"). The Settlement Administrator

shall have the sole discretion and authority to determine whether and to what extent documentation for Out-of-Pocket Expenses reflect valid Out-of-Pocket Expenses actually incurred that are fairly traceable to the Data Incident, but may consult with Class Counsel and Magellan's Counsel in making individual determinations. Out-of-Pocket Expenses will be presumed "fairly traceable" if: (1) the timing of the losses occurred on or after April 2020; and (2) the personal information used to commit identity theft or fraud consisted of the same type of personal information that was provided to Magellan prior to the Data Incident. The Settlement Administrator is authorized to contact any Settlement Class Member to seek clarification regarding a submitted claim prior to making a determination as to its validity. Out-of-Pocket Expenses are not eligible for reimbursement to the extent a Settlement Class Member has already been reimbursed for the same expense by any other source, including any compensation provided in connection with the credit monitoring product previously offered by Magellan.

        2.4.2  To the extent the Settlement Administrator determines a claim for Out-of-Pocket Expenses, or Lost Time is deficient in whole or in part, within a reasonable time of making such a determination, but no later than 14 days after the Claims Deadline, the Settlement Administrator is authorized to contact the Settlement Class Member via telephone or e-mail in an attempt to informally resolve the deficiency prior to sending a formal deficiency notice. If the deficiency is not resolved in this manner, the Settlement Administrator shall formally notify the Settlement Class Member of the deficiencies and give the Settlement Class Member 21 days to cure the deficiencies. Such notifications shall

– 19 –

be sent via e-mail, unless the Claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail.

2.4.3   If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within 10 days of the determination that the deficiencies have not been cured. The Settlement Administrator may consult with counsel for both Parties prior to making such determinations. The notice shall inform the Settlement Class Member of his or her right to dispute in writing the deficiency determination and of his or her right to request an appeal of this determination within 30 days of the deficiency determination.

2.4.4  If a Settlement Class Member disputes in writing a determination and requests an appeal, the Settlement Administrator shall provide Class Counsel and Magellan's Counsel a copy of the Settlement Class Member's dispute and his or her Claim Form along with all documentation or other information submitted by the Settlement Class Member. Class Counsel and Magellan's Counsel shall confer regarding the claim submission, and their agreement on approval or denial of the Settlement Class Member's claim, in whole or in part, will be final.

**3.     Notice and Settlement Administration Expenses**

3.1     All Notice and Settlement Administration Costs, including, without limitation, the fees and expenses of the Settlement Administrator, shall be paid by Magellan directly to the Settlement Administrator. Such costs are subject to the $2,250,000 Claims-Made Benefits cap.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

### 4.    Opt-Out Procedures

4.1    Each Settlement Class Member wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. The written notice must clearly manifest the Settlement Class Member's intent to opt-out of the Settlement Class. To be effective, written notice must be postmarked no later than 60 days after the Notice Date.

4.2    All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not opt-out of the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3    In the event that within 10 days after the Opt-Out Date as approved by the Court, there have been more than 250 timely and valid Opt-Outs submitted, Magellan may, by notifying Settlement Class Counsel and the Court in writing, void this Settlement Agreement. If Magellan voids the Settlement Agreement pursuant to this paragraph, Magellan shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and service awards.

### 5.    Objection Procedure

5.1    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection

Date. Such notice shall state: (i) the objector's full name and address; (ii) the case name and docket number: *Griffey v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL; (iii) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vi) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than 60 days from the Notice Date, to Class Counsel David Lietz, Milberg Coleman Bryson Phillips Grossman PLLC, 5335 Wisconsin Avenue NW, Suite 440, Washington, DC 20015; and counsel for Magellan, Christopher A. Wiech and Keeley O. Cronin at 1801 California Street, Suite 4400, Denver, CO 80202. The objector or his or her counsel may also file their Objection with the Court through the Court's ECF system, with service on Class Counsel and Magellan's counsel, to be made through the ECF system. For all objections mailed to Class Counsel and Magellan's Counsel, Class Counsel will file them with the Court as an exhibit to Plaintiffs' motion for final approval.

5.2     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms

of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## 6.   Settlement Class Certification

6.1    The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

## 7.   Releases

7.1    Upon the Effective Date, each Settlement Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

– 23 –

Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

7.2     Upon the Effective Date, Magellan shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Class Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation, except for enforcement of the Settlement Agreement. Any other claims or defenses Magellan may have against such Persons including, without limitation, any claims based upon or arising out of any contractual, employment, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation are specifically preserved and shall not be affected by the preceding sentence.

7.3     Notwithstanding any term herein, neither Magellan nor its Released Parties shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Representative Plaintiffs, each and all of the Settlement Class Members, and Class Counsel.

**8.     Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Awards to Representative Plaintiffs**

8.1     The Parties have agreed that, as part of the Settlement, the Court shall determine the amount of any award of attorneys' fees, costs, and service awards.

8.2     Plaintiffs' Counsel shall submit a motion to the Court requesting attorneys' fees, costs, and service awards no later than 14 days before the Objection and Opt-Out Deadlines.

8.3     Magellan shall retain any and all rights to oppose any such filed motion(s) on any and all available grounds related to the amount of attorneys' fees, costs, and/or service awards.

8.4     Any attorneys' fees and costs awarded by the Court, as well as any service awards awarded by the Court, shall be due and payable within 30 days after the Effective Date. Any attorneys' fees, costs, and/or Service Awards awarded by the Court shall be paid by Magellan. Such costs are subject to $2,250,000 Claims-Made Benefits cap.

**9.      Preliminary Approval Order and Publishing of Notice of Final Fairness Hearing**

9.1     Contemporaneously with Plaintiffs' Motion for Preliminary Approval, but in no event later than June 20, 2023, Class Counsel and Magellan's Counsel shall jointly submit this Settlement Agreement to the Court, and Class Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form substantially similar to Exhibit D in both terms and cost, requesting, *inter alia*:

> a)      certification of the Settlement Class for settlement purposes only pursuant to ¶ 6.1;

b)      preliminary approval of the Settlement Agreement as set forth herein;

c)      appointment of Class Counsel as Settlement Class Counsel;

d)      appointment of Plaintiffs as Class Representatives;

e)      approval of the Short Form Notices to be mailed to Settlement Class Members in a form substantially similar to the one attached as Exhibits B-1 and B-2 to this Settlement Agreement;

f)      approval of the Long Form Notice to be posted on the Settlement Website in a form substantially similar to the one attached as Exhibit C to this Settlement Agreement, which, together with the Short Form Notices, shall include a fair summary of the Parties' respective litigation positions, statements that the settlement and Notice are legitimate and that the Settlement Class Members are entitled to benefits under the settlement, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, instructions for the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

g)      approval of the Claim Forms to be used by Settlement Class Members to make a claim in a form substantially similar to the one attached as Exhibits A-1 and A-2 to this Settlement Agreement; and

h)      appointment of Kroll Settlement Administration, LLC as the Settlement Administrator.

9.2.    The Short Form Notices, Long Form Notice, and Claim Forms have been reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval. Immaterial revisions to these documents may also be made prior to dissemination of Notice.

**10.    Settlement Administration and Class Notice**

10.1    Notice shall be provided to Settlement Class Members by the Settlement Administrator as follows:

a)    *Class Member Information*: No later than 14 days after entry of the Preliminary Approval Order, Magellan shall provide the Settlement Administrator with the name and last known physical address of each Settlement Class Member (collectively, "Class Member Information") that Magellan possesses.

b)    The Class Member Information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement or provide all data and information in its possession to the Settling Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

c)      *Settlement Website*: Prior to the dissemination of the Notice, the Settlement Administrator shall establish the Settlement Website that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information ("Settlement Website"). The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Short Form Notices; (ii) the Long Form Notice; (iii) the Claim Forms; (iv) the Preliminary Approval Order; (v) this Settlement Agreement; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically.

d)      *Short Form Notices:* Within 45 days after the entry of the Preliminary Approval Order ("Notice Date"), and subject to the requirements of this Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide Notice to the Settlement Class via mail to the postal address in Magellan's possession. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

e)   In the event that a Short Form Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Form Notice to the forwarding address within a reasonable period of time after receiving the returned Short Form Notice;

f)   In the event that subsequent to the first mailing of a Short Form Notice, and at least 14 days prior to the Opt-Out Date and Objection Date, a Short Form Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Short Form Notice within seven days of receiving such information.  This shall be the final requirement for mailing;

g)   Publishing, on or before the Notice Date, the Claim Forms, Long Form Notice and this Settlement Agreement on the Settlement

– 29 –

Website, as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period;

h)  A toll-free help line with an IVR system and a live call-back option shall be made available to provide Settlement Class Members with additional information about the settlement. The Settlement Administrator also will provide copies of the Long Form Notice and paper Claim Form, as well as this Settlement Agreement, upon request; and

i)  Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel and Magellan shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with these provisions regarding notice.

10.2    The Settlement Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1 and 2.2. The Settlement Administrator shall provide Class Counsel and Magellan reports as to both claims and distribution and Class Counsel and Magellan have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Settlement Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the Dispute Resolution process set forth in ¶ 2.4. All claims agreed to be paid in full by Magellan shall be deemed valid.

10.3    Payment of Valid Claims, whether via mailed check or electronic distribution, shall be made within 30 days of the Effective Date.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

10.4     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

10.5     No Person shall have any claim against the Settlement Administrator, Magellan, Class Counsel, Plaintiffs, and/or Magellan's Counsel based on distributions of benefits to Settlement Class Members.

10.6     *Establishment of Common Fund*. Within 30 days of the Final Approval Order, Magellan shall deposit the sum of $1,500,000 into an account established and administered by the Settlement Administrator.

10.7     Non-Reversionary. The Common Fund is non-reversionary. As of the Effective Date, all rights of Magellan in or to the Common Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Paragraph 11.2.

10.8     Qualified Settlement Fund. The Parties agree that the Common Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the

Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Magellan and Magellan's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Settlement Administrator. All risks related to the investment of the Common Fund shall be borne solely by the Common Fund and its Escrow Agent. Further, the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Common Fund and paying from the Common Fund any taxes and tax-related expenses owed with respect to the Common Fund. The Parties agree that the Common Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Common Fund as a qualified settlement fund from the earliest date possible. The Settlement Administrator shall provide an accounting of any and all funds in the Common Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

10.9    Custody of Common Fund. The Common Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Common Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Common Fund in the event this Settlement Agreement is terminated in accordance with Paragraph 11.2.

10.10    Use of the Common Fund. As further described in this Agreement, the Common Fund shall be used by the Settlement Administrator to pay for the following: (i) taxes and tax-related expenses, (ii) Valid Claim(s) by Common-Fund Settlement Class

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Members for Out-of-Pocket Losses; (iii) Valid Claim(s) by Common-Fund Settlement Class Members for Lost Time; and (iv) Valid Claims by Common-Fund Settlement Class Members for Cash Payment. Following payment of all of the above expenses, any amount remaining in the Common Fund shall be paid to the Non-Profit Residual Recipient in accordance with Paragraph 10.12.  No amounts may be withdrawn from the Common Fund unless expressly authorized by this Agreement or approved by the Court.

10.11    Taxes and Representations. Taxes and tax-related expenses relating to the Common Fund shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Common Fund without prior order of the Court. Further, the Common Fund shall indemnify and hold harmless the Parties, their counsel, and their insurers and reinsurers for taxes and tax-related expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Common Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Common Fund pursuant to this Agreement.

10.12    "Non-Profit Residual Recipient" means Electronic Frontier Foundation, subject to approval by the Court.

**11.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

11.1    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)    the Court has entered the Preliminary Approval Order and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 9.1;

b)    Magellan has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)    the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)    the Judgment has become Final, as defined in ¶ 1.14.

11.2    If all conditions specified in ¶ 11.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 11.4 unless Class Counsel and Magellan's Counsel mutually agree in writing to proceed with the Settlement Agreement.

11.3    Within seven days after the Opt-Out Date, the Settlement Administrator shall furnish to Class Counsel and to Magellan's Counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

11.4    In the event that the Settlement Agreement or the releases set forth in ¶¶ 7.1, 7.2, and 7.3 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Magellan shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

### 12. Miscellaneous Provisions

12.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

12.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling

Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

12.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

12.5    This Agreement contains the entire understanding between Magellan and Plaintiffs regarding the payment of the Litigation settlement and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Magellan

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

and Plaintiffs in connection with the payment of the Litigation settlement. Except as otherwise provided herein, each party shall bear its own costs.

12.6    Class Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

12.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

12.8    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

12.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

12.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

12.11   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

12.12   All dollar amounts are in United States dollars (USD).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

12.13    Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void 90 days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until 180 days after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Magellan shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶¶ 2.1 or 2.2 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

12.14    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

/s/ _____

Christopher A. Wiech (*pro hac vice*)
**BAKER & HOSTETLER LLP**
1170 Peachtree Street
Suite 2400
Atlanta, GA 30309
Telephone:   404.459.0050
Facsimile:    404.459.5734
cwiech@bakerlaw.com

/s/ *David K. Lietz*

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20015
Telephone:   866.252.0878
Facsimile:    202.686.2877
dlietz@lietzlaw.com

Keeley O. Cronin (*pro hac vice*)
**BAKER & HOSTETLER LLP**
1801 California Street
Suite 4400
Denver, CO  80202-2662
Telephone:    303.861.0600
Facsimile:    303.861.7805
kcronin@bakerlaw.com

John C. Gray (State Bar No. 028454)
**LEWIS ROCA ROTHGERBER**
  **CHRISTIE LLP**
201 East Washington Street
Suite 1200
Phoenix, AZ 85004
Telephone:   602.262.5331
Facsimile:    602.262.5747
jgray@lrrc.com

**Attorneys for Defendant**

John A. Yanchunis (*pro hac vice*)
Patrick A. Barthle (pro hac vice)
**MORGAN & MORGAN COMPLEX**
  **LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone:    813.223.5505
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

Elaine A. Ryan (AZ Bar #012870)
**AUER RYAN, PC**
20987 N. John Wayne Parkway
B104-374
Maricopa, AZ 85139
Telephone:    520.705.7332
eryan@auer-ryan.com

Joel R. Rhine*
Martin A. Ramey*
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Telephone:  (910) 772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Counsel for Plaintiffs and the Settlement
Class*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

# **EXHIBIT A-1**

**Your claim must be submitted online or <u>postmarked by</u>:**
<mark>MONTH DD, 2023</mark>

# MAGELLAN SETTLEMENT CLAIM FORM

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

**MAGELLAN-A-1**

## USE THIS FORM
## <u>ONLY IF YOU ARE A CLAIMS-MADE SETTLEMENT CLASS MEMBER</u>

## <u>GENERAL INSTRUCTIONS</u>

If you received Notice of this Settlement, the Settlement Administrator identified you as a Claims-Made Settlement Class whose personally identifiable information and/or protected health information may have been exposed to unauthorized third parties as a result of the Data Incident experienced by Magellan in 2020 ("Data Incident"). Your Social Security number was not involved in the Data Incident

**The easiest way to submit a claim is online at <mark>www.XXXX.com,</mark>** or you can complete and mail this Claim Form to the mailing address below.

*Magellan Settlement Administrator*
<mark>Kroll mailing address</mark>

**<u>To receive any of these benefits, you must submit the Claim Form below by <mark>&lt;&lt;DATE&gt;&gt;.</mark></u>**

**<u>You may submit a claim for the following benefits:</u>**

1) <u>Expense Reimbursement</u>: You may be eligible for reimbursement for certain documented out-of-pocket expenses, not to exceed $750 per Claims-Made Settlement Class Member, that were incurred as a result of the Data Incident. may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. You must attest that the Monetary Losses are fairly traceable to the Data Incident and not incurred due to some other event or reason.

2) <u>Time Spent Dealing With the Data Incident</u>: You have the right to make a claim for up to three  (3) hours of lost time, at $20/hour, for time spent dealing with the effects of the Data Incident. This amount is subject to the $750 per member cap.

3) <u>Identity Theft Protection</u>: You may submit a claim for 12-months of identity-theft protection benefits.

Please read the claim form carefully and answer all questions. Failure to provide the required information could result in a denial of your claim.

Please note: the Settlement Administrator may contact you to request additional documentation to process your claim. For more information and complete instructions, please visit <mark>[Settlement website].</mark>

**Questions? Go to <mark>URL</mark> or call 1-<mark>XXX-XXX-XXXX</mark>.**

## MAGELLAN SETTLEMENT CLAIM FORM

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

**MAGELLAN-A-1**

> **Your claim must be submitted online or <u>postmarked by</u>:**
> MONTH DD, 2023

**Settlement benefits will be distributed only after the Settlement is approved by the Court.**

---

## I.  CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Email Address (optional)** | **Telephone Number** |

---

## II.  PROOF OF CLASS MEMBERSHIP

☐  Check this box to certify that you were notified of the Data Incident and/or Settlement.

Enter the Notice ID Number provided on your Postcard Notice. Your Notice ID is located on the front of the postcard notice that was sent to Settlement Class Members via U.S. Mail. If you lost or do not know your Unique ID, you may contact the Settlement Administrator at **[insert email address]**

**Notice ID Number**

---

## III.  IDENTITY THEFT PROTECTION

☐  Check this box if you elect to receive twelve (12) months of free identity-theft -protection service.

---

## IV. REIMBURSEMENT FOR LOST TIME

All Claims-Made Settlement Class Members who have spent time dealing with the Data Incident may claim up to three (3) hours for lost time at a rate of $20.00 per hour. Any payment for lost time is included in the $750 cap per Claims-Made Settlement Class Member (no documentation is required).
**Questions? Go to URL or call 1-XXX-XXX-XXXX.**

**MAGELLAN SETTLEMENT CLAIM FORM**

<table>
<tr>
<td>

**Your claim must be submitted online or <u>postmarked by</u>:**
<mark>**MONTH DD, 2023**</mark>
</td>
<td>

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona
</td>
<td>

**MAGELLAN-A-1**
</td>
</tr>
</table>

Hours claimed (up to 3 hours – check one box)  ☐ 1 Hour ☐ 2 Hours ☐ 3 Hours

◯   I attest and affirm to the best of my knowledge and belief that any claimed lost time was spent related to the Data Incident and not incurred due to some other event or reason.

*In order to receive this payment, you <u>must</u> describe what you did and how the claimed lost time was spent related to the Data Incident.* **Check all activities, below, which apply.**

☐     Calling bank/credit card customer service lines regarding fraudulent transactions.

☐     Writing letters or e-mails to banks/credit card companies in order to have fraudulent transactions reversed.

☐     Time on the internet verifying fraudulent transactions.

☐     Time on the internet updating automatic payment programs due to new card issuance.

☐     Calling credit reporting bureaus regarding fraudulent transactions and/or credit monitoring.

☐     Writing letters or e-mails to credit reporting bureaus regarding correction of credit reports.

☐     Other. Provide description(s) here:

_____

_____

_____

## V.  REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES

All Claims-Made Settlement Class Members may submit a claim for reimbursement of the following **documented** out-of-pocket expenses, not to exceed $750 per Claims-Made Settlement Class Member, that were incurred as a result of the Data Incident:

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss |
|---|---|---|
| ◯ Out-of-pocket expenses incurred as a result of the Data Incident, including bank fees, long distance | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ |

**Questions? Go to <mark>URL</mark> or call 1-<mark>XXX-XXX-XXXX</mark>.**

# MAGELLAN SETTLEMENT CLAIM FORM

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

**Your claim must be submitted online or postmarked by: MONTH DD, 2023**

**MAGELLAN-A-1**

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss |
|---|---|---|
| phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. | | |

**Examples of Supporting Third Party Documentation:** *Telephone bills, cell phone bills, gas receipts, postage receipts, bank account statements reflecting out-of-pocket expenses. Please note that these examples of reimbursable documented out-of-pocket losses are not meant to be exhaustive, but exemplary. You may make claims for any documented out-of-pocket losses that you believe are reasonably related and fairly traceable to the Data Incident and not incurred due to some other event or reason.*

| | | |
|---|---|---|
| ○ Fees for credit reports, credit monitoring, or other identity theft insurance products purchased after April 2020 that you attest under penalty of perjury were caused or otherwise incurred as a result of the Data Incident. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ |

**Examples of Supporting Documentation:** *Receipts or account statements reflecting purchases made for Credit Monitoring or Identity Theft Insurance Services.*

| | | |
|---|---|---|
| ○ Reimbursement for proven monetary loss, professional fees including attorneys' fees, accountants' fees, and fees for credit repair services incurred as a result of the Data Incident. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ |

**Examples of Supporting Documentation:** *Invoices or statements reflecting payments made for professional fees/services.*

**YOU MUST SUBMIT DOCUMENTATION OF YOUR OUT-OF-POCKET EXPENSES**

☐   I attest and affirm to the best of my knowledge and belief that any claimed expenses were incurred as a result of the Data Incident and not incurred due to some other event or reason.

**Questions? Go to URL or call 1-XXX-XXX-XXXX.**

**MAGELLAN SETTLEMENT CLAIM FORM**

<table>
<tr>
<td>
**Your claim must be submitted online or <u>postmarked by</u>:**
<mark>MONTH DD, 2023</mark>
</td>
<td>
*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona
</td>
<td>
**MAGELLAN-A-1**
</td>
</tr>
</table>

## VII.  PAYMENT SELECTION

Please select **<u>one</u>** of the following payment options, which will be used should you be eligible to receive a settlement payment:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ -__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ -__ __ __-__ __ __ __    or Email Address: _____

☐ **Virtual Prepaid Card -** Enter your email address: _____

☐ **Physical Check -** Payment will be mailed to the address provided above.

## VII.  ATTESTATION & SIGNATURE

I swear and affirm under the laws of my state that the information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

_____          _____          _____
Signature                                      Printed Name                                      Date

# EXHIBIT A-2

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
<mark>MONTH DD, 2023</mark>

</td><td>

# MAGELLAN SETTLEMENT CLAIM FORM

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

</td><td>

**MAGELLAN-A-2**

</td></tr>
</table>

## USE THIS FORM
## <u>ONLY IF YOU ARE A COMMON-FUND SETTLEMENT CLASS MEMBER</u>

## <u>GENERAL INSTRUCTIONS</u>

If you received Notice of this Settlement, the Settlement Administrator identified you as a Common-Fund Settlement Class Member whose personally identifiable information and/or protected health information, including your Social Security number may have been exposed to unauthorized third parties as a result of the Data Incident experienced by Magellan in 2020 (the "Data Incident"). You may submit a claim for Settlement benefits, outlined below.

**The easiest way to submit a claim is online at <mark>www.XXXX.com,</mark>** or you can complete and mail this Claim Form to the mailing address below.

*Magellan Settlement Administrator*
<mark>Kroll mailing address</mark>

**<u>To receive any of these benefits, you must submit the Claim Form below by <mark>&lt;&lt;DATE&gt;&gt;.</mark></u>**

<u>**You may submit a claim for the following benefits:**</u>

1) **Pro-Rata Cash Payment**:  Common-Fund Settlement Class Members may submit a Claim for a cash payment of $100.
    a) The Settlement Administrator will make pro rata settlement payments, which may increase or decrease the $100 Cash Payment, subject to the total amount of the Common Fund ($1.5 million).
    b) Common-Fund Settlement Class Members who select this $100 Cash Payment may not claim any of the other benefits offered herein.

***OR***

2) **Expense Reimbursement**:

    a) <u>Documented Out-of-Pocket Expenses:</u> You may submit a claim for reimbursement for certain documented out-of-pocket expenses, not to exceed $5,000 Common-Fund Settlement Class Member, that were incurred as a result of the Data Incident. Documented Out-of-Pocket Expenses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. You must attest that the Documented Out-of-Pocket Expenses are fairly traceable to Data Incident and not incurred due to some other event or reason.

    b) <u>Time Spent Dealing With the Data Incident:</u> You have the right to make a claim for up to five (5) hours of lost time, at $25/hour, for time spent dealing with the Data Incident. This amount is subject to the $5,000 per member cap.

**Questions? Go to <mark>URL</mark> or call 1-<mark>XXX-XXX-XXXX</mark>.**

| | | |
|---|---|---|
| **Your claim must be submitted online or postmarked by:** <mark>MONTH DD, 2023</mark> | # CLAIM FORM MAGELLAN SETTLEMENT<br><br>*Griffey et al. v. Magellan Health, Incorporated.*<br>Case No. CV-20-01282-PHX-MTL<br>United States District Court for the District of Arizona | **MAGELLAN-A-2** |

Please read the claim form carefully and answer all questions. Failure to provide the required information could result in a denial of your claim.

Please note: the Settlement Administrator may contact you to request additional documentation to process your claim. For more information and complete instructions, please visit <mark>[Settlement website].</mark>

**Settlement benefits will be distributed only after the Settlement is approved by the Court.**

## V.    CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Email Address (optional)** | **Telephone Number** |

## II.  PROOF OF CLASS MEMBERSHIP

☐    Check this box to certify that you were notified of the Data Incident and/or Settlement, including that your Social Security number may have been involved in the Data Incident

Enter the Notice ID Number provided on your Postcard Notice. Your Notice ID is located on the front of the postcard notice that was sent to Settlement Class Members via U.S. Mail. If you lost or do not know your Unique ID, you may contact the Settlement Administrator at <mark>[insert email address]</mark> :

**Notice ID Number**

**Questions? Go to <mark>URL</mark> or call 1-<mark>XXX-XXX-XXXX</mark>.**

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:**
<mark>MONTH DD, 2023</mark>

</td><td>

**CLAIM FORM MAGELLAN SETTLEMENT**

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

</td><td>

**MAGELLAN-A-2**

</td></tr>
</table>

## III.  PRO RATA CASH PAYMENT

☐       Check this box if you elect to receive a cash payment of $100.

This amount may increase or decrease on a pro rata basis, depending upon the number of claims filed and approved.

**IF YOU SELECT THIS CASH BENEFIT, YOU MAY NOT CLAIM ANY OF THE OTHER SETTLEMENT BENEFITS**.

## V.  REIMBURSEMENT FOR LOST TIME

All Common-Fund Settlement Class Members who have spent time dealing with the Data Incident may claim up to five (5) hours for lost time at a rate of $25.00 per hour. Any payment for lost time is included in the $5,000 cap per Common-Fund Settlement Class Member (no documentation is required).

Hours claimed (up to 5 hours – check one box)        ☐ 1 Hour ☐ 2 Hours ☐ 3 Hours ☐ 4 Hours ☐ 5 Hours

◯       I attest and affirm to the best of my knowledge and belief that any claimed lost time was spent related to the Data Incident and not incurred due to some other event or reason.

***In order to receive this payment, you <u>must</u> describe what you did and how the claimed lost time was spent related to the Data Incident.*** **Check all activities, below, which apply.**

☐       Calling bank/credit card customer service lines regarding fraudulent transactions.

☐       Writing letters or e-mails to banks/credit card companies in order to have fraudulent transactions reversed.

☐       Time on the internet verifying fraudulent transactions.

☐       Time on the internet updating automatic payment programs due to new card issuance.

☐       Calling credit reporting bureaus regarding fraudulent transactions and/or credit monitoring.

☐       Writing letters or e-mails to credit reporting bureaus regarding correction of credit reports.

☐       Other. Provide description(s) here:

_____

_____

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:** <mark>MONTH DD, 2023</mark>

</td><td>

**CLAIM FORM MAGELLAN SETTLEMENT**

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

</td><td>

**MAGELLAN-A-2**

</td></tr>
</table>

## Vi.  REIMBURSEMENT FOR DOCUMENTED OUT-OF-POCKET EXPENSES

Common-Fund Settlement Class Members may submit a claim for reimbursement of the following **documented** out-of-pocket expenses, not to exceed $750 per Common-Fund Settlement Class Member, that were incurred as a result of the Data Incident:

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss |
|---|---|---|
| ⭘ Out-of-pocket expenses incurred as a result of the Data Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ |

**Examples of Supporting Third Party Documentation:** *Telephone bills, cell phone bills, gas receipts, postage receipts, bank account statements reflecting out-of-pocket expenses. Please note that these examples of reimbursable documented out-of-pocket losses are not meant to be exhaustive, but exemplary. You may make claims for any documented out-of-pocket losses that you believe are fairly traceable to the Data Incident and not incurred due to some other event or reason.*

| | | |
|---|---|---|
| ⭘ Fees for credit reports, credit monitoring, or other identity theft insurance products purchased after April 2020 that you attest under penalty of perjury were caused or otherwise incurred as a result of the Data Incident. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ |

**Examples of Supporting Documentation:** *Receipts or account statements reflecting purchases made for Credit Monitoring or Identity Theft Insurance Services.*

| | | |
|---|---|---|
| ⭘ Reimbursement for proven monetary loss, professional fees including attorneys' fees, accountants' fees, and fees for credit repair | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ |

**Questions? Go to** <mark>URL</mark> **or call 1-**<mark>XXX-XXX-XXXX</mark>**.**

**CLAIM FORM MAGELLAN SETTLEMENT**

Your claim must be submitted online or **postmarked by:** <mark>MONTH DD, 2023</mark>

*Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL
United States District Court for the District of Arizona

**MAGELLAN-A-2**

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss |
|---|---|---|
| services incurred as a result of the Data Incident. | | |

**Examples of Supporting Documentation:** *Invoices or statements reflecting payments made for professional fees/services.*

**YOU MUST SUBMIT DOCUMENTATION OF YOUR OUT-OF-POCKET EXPENSES**

◯　　I attest and affirm to the best of my knowledge and belief that any claimed expenses were incurred as a result of the Data Incident and not incurred due to some other event or reason.

## VII.  PAYMENT SELECTION

Please select **one** of the following payment options, which will be used should you be eligible to receive a settlement payment:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __ __　　or Email Address: _____

☐ **Virtual Prepaid Card -** Enter your email address: _____

☐ **Physical Check -** Payment will be mailed to the address provided above.

## VII.  ATTESTATION & SIGNATURE

I swear and affirm under the laws of my state that the information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Signature | Printed Name | Date |

**Questions? Go to <mark>URL</mark> or call 1-<mark>XXX-XXX-XXXX</mark>.**

# EXHIBIT B-1

**A proposed Settlement has been reached in a class action lawsuit
known as *Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL,
filed in the United States District Court for the District of Arizona**

A settlement has been reaching in a class action lawsuit against Magellan Health, Inc arising out of a 2020 phishing incident involving Magellan (the "Data Incident"). Plaintiffs allege that the Data Incident potentially resulted in unauthorized access by a third party to a subset of data on Magellan's corporate server, which may have included the personally identifiable information ("PII") and protected health information ("PHI") of Magellan's current and former employees and consumers. Magellan disagrees with Plaintiffs' claims and denies any wrongdoing.

**You are receiving this notice because you may be a Claim-Made Settlement Class Member.** You are a Claims-Made Settlement Class Member if you were notified that your PII/PHI may have been impacted in the Data Incident.

Under the terms of the Settlement, you may submit a Claim for the following benefits:
- **Documented Out-of-Pocket Loss Expense Reimbursement**: Reimbursement for up to $750 for documented out-of-pocket expenses.
- **Lost Time Reimbursement**: Reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident (at $20 per hour).
- **Identity-Theft Protection Services:** 12-month subscription of identity-theft-protection services.

The easiest way to submit a claim is online at www.XXXXX.com using your Unique ID found on the front of this postcard. To be eligible, you must complete and submit a Valid Claim Form, postmarked or submitted online on or before [INSERT DATE]. You can exclude yourself or object to the settlement, including Class Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives on or before [INSERT DATE]. If you do not exclude yourself from the Settlement, you will remain in the class and give up the right to sue Magellan, Magellan's Related Entities, or the Released Parties for the Released Claims in the Settlement. **A summary of your rights under the Settlement and instructions regarding how to submit a Claim, exclude yourself, or object to the Settlement are available at www.XXXXXX.com.**

The Court will hold the Final Fairness Hearing at [INSERT] to consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider Class Counsel's request for an award of attorneys' fees of up to $1,250,000 plus case expenses, and Class Counsel's request for service awards for the Class Representatives. Defendant reserves its rights to object to Class Counsel's request for fees, expenses, and service awards. Any award for attorneys' fees, costs, and expenses for Class Counsel, and for Service Awards to Class Representatives will be paid out of the Claims-Made Settlement Benefits.  The Court will also determine whether the Settlement should be approved. You may attend the hearing, at your own expense, but you don't have to.

This is only a summary. For additional information, including a copy of the Settlement Agreement, Long Form Notice, Claim Form, Class Counsel's Application for Attorneys' Fees, Expenses, and Service Awards, and other documents, visit [INSERT WEBSITE] or call [INSERT PHONE #].

# EXHIBIT B-2

**A proposed Settlement has been reached in a class action lawsuit
known as *Griffey et al. v. Magellan Health, Incorporated.*
Case No. CV-20-01282-PHX-MTL,
filed in the United States District Court for the District of Arizona**

A settlement has been reaching in a class action lawsuit against Magellan Health, Inc arising out of a 2020 phishing incident involving Magellan (the "Data Incident"). Plaintiffs allege that the Data Incident potentially resulted in unauthorized access by a third party to a subset of data on Magellan's corporate server, which may have included the personally identifiable information ("PII") and protected health information ("PHI") of Magellan's current and former employees and consumers.  Magellan disagrees with Plaintiffs' claims and denies any wrongdoing.

**You are receiving this notice because you may be a Common-Fund Settlement Class Member.** You are a Common-Fund Settlement Class Member if you were notified that your PII/PHI and Social Security number may have been impacted in the Data Incident.

Under the terms of the Settlement, you may submit a Claim for the following benefits:
- **Cash Payment:** $100 cash payment, adjusted up or down depending upon the number of claims approved, and in lieu of any other benefits.

*OR*
- **Documented Out-of-Pocket Loss Expense Reimbursement**: Reimbursement for up to $5,000 for documented out-of-pocket expenses, and
- **Lost Time Reimbursement**: Reimbursement for up to five (5) hours of lost time spent dealing with the Data Incident (at $25 per hour).

The easiest way to submit a claim is online at www.XXXXX.com using your Unique ID found on the front of this postcard. To be eligible, you must complete and submit a Valid Claim Form, postmarked or submitted online on or before  [INSERT DATE] .

You can exclude yourself or object to the settlement, including Class Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives on or before [INSERT DATE]. If you do not exclude yourself from the Settlement, you will remain in the class and give up the right to sue Magellan, Magellan's Related Entities, or the Released Parties for the Released Claims in the Settlement. **A summary of your rights under the Settlement and instructions regarding how to submit a Claim, exclude yourself, or object to the Settlement are available at** www.XXXXXX.com.

The Court will hold the Final Fairness Hearing at [INSERT] to consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider Class Counsel's request for an award of attorneys' fees of up to $1,250,000 plus case expenses, and Class Counsel's request for service awards for the Class Representatives. Defendant reserves its rights to object to Class Counsel's request for fees, expenses, and service awards. The Court will also determine whether the Settlement should be approved. You may attend the hearing, at your own expense, but you don't have to.

This is only a summary. For additional information, including a copy of the Settlement Agreement, Long Form Notice, Claim Form, Class Counsel's Application for Attorneys' Fees, Expenses, and Service Awards, and other documents, visit [INSERT WEBSITE] or call [INSERT PHONE #].

# **<u>EXHIBIT C</u>**

## <u>NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT</u>

# If You Were Notified Of A Data Incident Involving Magellan Health, Inc. In 2020, You May Be Eligible For Benefits From A Class Action Settlement.

*This is <u>not</u> a solicitation from a lawyer, junk mail, or an advertisement. A court authorized this Notice.*

- A proposed Settlement has been reached in a class action lawsuit, titled *Griffey et al. v. Magellan Health, Incorporated,* Case No. CV-20-01282-PHX-MTL ("Lawsuit"), filed in the United States District Court for the District of Arizona.

- This Lawsuit arises out of a 2020 phishing incident, involving Magellan (the "Data Incident"). Plaintiffs allege that the Data Incident potentially resulted in unauthorized access by a third party to a subset of data on Magellan's corporate server, which may have included the personally identifiable information ("PII") and protected health information ("PHI") of Magellan's current and former employees and consumers. Magellan disagrees with Plaintiffs' claims and denies any wrongdoing.

- The Settlement Class consists of two groups – those who were notified that their Social Security numbers were potentially accessed in the Data Incident (the Common Fund Settlement Class), and those who were notified that their Social Security numbers were not involved in the Data Incident the Claims-Made Settlement Class). The available Settlement benefits depend upon which group you are in.

- **Common-Fund Settlement Class Members** may submit a claim for the following benefits from the Settlement: (1) $100 cash payment, adjusted up or down depending upon the number of claims approved, and in lieu of any other benefits, *or* (2) reimbursement for up to $5,000 for (a) documented out-of-pocket expenses, and (b) up to five (5) hours of lost time spent dealing with the Data Incident (at $25 per hour). You must submit a Claim Form to receive these benefits.

- **Claims-Made Settlement Class Members** may submit a claim for the following benefits from the Settlement: (1) reimbursement for up to $750 for (a) documented out-of-pocket expenses and (b) reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident (at $20 per hour); *and* (2) a 12-month subscription for identity-theft protection services You must submit a Claim Form to receive these benefits.

- You are included in this Settlement as a Settlement Class Member if you were  notified that your PII/PHI may have been impacted in the Data Incident

- Your legal rights are affected regardless of whether you do or do not act. Read this Notice carefully.

- The Court in charge of this case must still decide whether to approve the Settlement, including Class Counsel's request for attorneys' fees and service awards for the Class Representatives. No Settlement benefits will be provided until the Court approves the Settlement and it becomes final.

## YOUR LEGAL RIGHTS & OPTIONS IN THIS SETTLEMENT

| Submit a Claim Form | **You must submit a valid Claim Form to receive Settlement benefits.** Claim Forms must be submitted online by [INSERT DATE] or, if mailed, postmarked no later than [INSERT DATE]. |
|---|---|
| **Do Nothing** | If you do nothing, you remain in the Settlement. You give up your rights to sue and you will not get any money. |
| **Exclude Yourself** | **Get out of the Settlement. Get no money. Keep your rights.** This is the only option that allows you to keep your right to sue about the claims in this Lawsuit. You will not receive any Settlement benefits from the Settlement. Your request to exclude yourself must be postmarked no later than [INSERT DATE]. |
| **File an Objection** | Stay in the Settlement, but tell the Court why you think the Settlement or Class Counsel's request for attorneys' fees and service awards should not be approved Objections must be postmarked no later than [INSERT DATE]. You will still be bound by the Settlement if the Court approves it. |
| **Go to a Hearing** | You can ask to speak in Court about the fairness of the Settlement, at your own expense. *See* Question 18 for more details. The Final Fairness Hearing is scheduled for [INSERT DATE]. |

### WHAT THIS NOTICE CONTAINS

**Basic Information** ......................................................................................... **Pages 4-5**

1. How do I know if I am affected by the Lawsuit and Settlement?
2. What is this case about?
3. Why is there a Settlement?
4. Why is this a class action?
5. How do I know if I am included in the Settlement?

**The Settlement Benefits** ............................................................................. **Pages 5-6**

6. What does this Settlement provide?
7. How to submit a Claim?
8. What am I giving up as part of the Settlement?
9. Will the Class Representatives receive compensation?

**Exclude Yourself** .......................................................................................... **Page 7-8**

10. How do I exclude myself from the Settlement?
11. If I do not exclude myself, can I sue Defendant or the Released Parties later?
12. What happens if I do nothing at all?

**The Lawyers Representing You** ................................................................... **Page 8**

13.   Do I have a lawyer in the case?

14.   How will the lawyers be paid?

**Objecting to the Settlement**...........................................................................**Page 8-10**

15.   How do I tell the Court that I do not like the Settlement?

16.   What is the difference between objecting and asking to be excluded?

**The Final Fairness Hearing**...........................................................................**Page 10-11**

17.   When and where will the Court decide whether to approve the Settlement?

18.   Do I have to come to the hearing?

19.   May I speak at the hearing?

**Do Nothing**...........................................................................................................**Page 11**

20.   What happens if I do nothing?

**Get More Information**.......................................................................................**Page 11**

21.   How do I get more information about the Settlement?

BASIC INFORMATION

### 1. How do I know if I am affected by the Lawsuit and Settlement?

You are a Settlement Class Member if you were notified that your PII and/or PHI may have been impacted by the Data Incident.

The Settlement Class specifically excludes: (i) Magellan and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contender* to any such charge.

This Notice explains the nature of the lawsuit and claims being settled, your legal rights, and the benefits to the Settlement Class.

### 2. What is this case about?

This case is known as *Griffey et al. v. Magellan Health, Incorporated,* Case No. CV-20-01282-PHX-MTL, filed in the United States District Court for the District of Arizona. The judge is the Honorable Michael T. Liburdi. The persons who sued are called the "Plaintiffs" and the company they sued, Magellan Health, Inc., is known as the "Defendant" in this case. Magellan will be called "Defendant" in this Notice.

Plaintiffs filed a lawsuit against Defendant, individually, and on behalf of anyone whose personally identifiable information ("PII") and protected health information ("PHI") was potentially impacted as a result of the Data Incident.

This lawsuit arises from a 2020 phishing incident wherein a Magellan employee clicked on a phishing email that resulted in a cybercriminal accessing a subset of data on a Magellan corporate server and subsequently deploying ransomware to encrypt Magellan's files (the "Data Incident"). Plaintiffs allege that as a result of the Data Incident, the cybercriminals gained access to Plaintiffs' and the Settlement Class Members' personal information ("PII") and personal health information ("PHI"), which may have included names, addresses, employee ID number, W-2 or 1099 details, treatment information, health insurance account information, medical IDs, and in some instances, Social Security numbers or Taxpayer ID numbers.

After Magellan investigated the Data Incident, those persons whose PII and PHI may have been impacted by the Data Incident were mailed notification on or about May or June 2020. Subsequently, this lawsuit and others ultimately consolidated with this lawsuit were filed asserting claims against Defendant relating to the Data Incident.

Defendant denies any wrongdoing or liability, and no court or other entity has made any judgment or other determination of any wrongdoing, or that any law has been violated. Defendant denies these and all other claims made in the Litigation. By entering into the Settlement, Defendant is not admitting any wrongdoing.

**3.  Why is there a Settlement?**

By agreeing to settle, both sides avoid the cost, disruption, and distraction of further litigation. The Class Representatives, Defendant, and their attorneys believe the proposed Settlement is fair, reasonable, and adequate and, thus, in the best interests for Settlement Class Members. The Court did not decide in favor of the Plaintiff or Defendant. Full details about the proposed Settlement are found in the Settlement Agreement available at [INSERT].

**4.  Why is this a class action?**

In a class action, one or more people called a "Class Representative" sue on behalf of all people who have similar claims.  All of these people together are the "Settlement Class" or "Settlement Class Members."

**5.  How do I know if I am included in the Settlement?**

You are included in the Settlement if you were sent a notice of the Data Incident. This Settlement is not open to the general public. If you are not sure whether you are included as a Settlement Class Member, or have any other questions about the Settlement, visit [INSERT], call toll free [INSERT], or write to [INSERT].

<div align="center">THE SETTLEMENT BENEFITS</div>

**6.  What does this Settlement provide?**

This Settlement includes two separate groups. The Settlement provides for up to $2,250,000 in benefits for the Claims-Made Settlement Class Members, and a $1,500,000 non-reversionary common fund for the Common-Fund Settlement Class Members.  The total potential value of this Settlement is capped at $3,750,000.

The proposed Settlement will provide the following benefits to Settlement Class Members:

**Common-Fund Settlement Class Benefits:** The Common-Fund Settlement Class Members may submit a Claim for Common-Fund Benefits on or before the Claims Deadline. These benefits include:

> $100 Pro-Rata Cash Payment: Common-Fund Settlement Class Members may submit a Claim for a $100 cash payment. The Settlement Administrator will make pro rata settlement payments, which may increase or decrease the $100 Cash Payment, subject to the total amount of the Common Fund. This benefit is in lieu of any other Settlement Benefits offered to the Common-Fund Settlement Class Members.

> Lost-Time Claims: Common-Fund Settlement Class Members may submit a Claim for up to five hours of time spend remedying issues related to the Data Incident at $25 per hour if the Settlement Class Member (1) attests that any claimed lost time was spent related to and arising out of the Data Incident, and (2) selects the applicable activity the time was spent

<div align="center">5</div>

on or provides a brief general description of how the claimed lost time was spent. No documentation need be submitted in connection with Lost-Time Claims. Claims for Lost-Time are included in the $5,000 individual cap on out-of-pocket expense reimbursement.

Out-of-Pocket Expense Claims: Common-Fund Settlement Class Members may submit a Claim for reimbursement of up to $5,000 in documented out-of-pocket losses reasonably and fairly traceable to the Data Incident. Out-of-Pocket-Expense Claims can include, without limitation, (i) unreimbursed losses relating to fraud or identity theft; (ii) professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; (iii) costs associated with freezing or unfreezing credit with any credit reporting agency; (iv) credit monitoring costs that were incurred on or after April 2020 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; (v) and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges.

Common-Fund Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims.  This may include receipts or other documentation, not "self-prepared" by the claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

Out-of-Pocket Expense Claims must include an attestation that the monetary losses were caused or otherwise incurred as a result of the Data Incident and were not incurred due to some other event or reason.

**Claims-Made Settlement Class Benefits:**  Claims-Made Settlement Class Members may submit a Claim for Claims-Made Settlement Benefits on or before the Claims Deadline. These Benefits include

Lost-Time Claims: Claims-Made Settlement Class Members may submit a Claim for up to three hours of time spend related to the Data Incident at $20 per hour if the Settlement Class Member (1) attests that any claimed lost time was spent related to and arising out of the Data Incident, and (2) selects the applicable activity the time was spent on or provides a brief general description of how the claimed lost time was spent. No documentation need be submitted in connection with Lost-Time Claims.  Claims for Lost-Time are included in the $750 individual cap on out-of-pocket expense reimbursement.

Out-of-Pocket Expense Claims: Claims-Made Settlement Class Members may submit a Claim for reimbursement of up to $750 in documented out-of-pocket losses reasonably and fairly traceable to the Data Incident. Out-of-Pocket-Expense Claims can include, without limitation, (i) unreimbursed losses relating to fraud or identity theft; (ii) professional fees

including attorneys' fees, accountants' fees, and fees for credit repair services; (iii) costs associated with freezing or unfreezing credit with any credit reporting agency; (iv) credit monitoring costs that were incurred on or after April 2020 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and (v) miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges.

Claims-Made Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims. This may include receipts or other documentation, not "self-prepared" by the claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

Out-of-Pocket Expense Claims must include an attestation that the monetary losses were caused or otherwise incurred as a result of the Data Incident and were not incurred due to some other event or reason.

<u>Identity-Theft Protection Benefit:</u> Claims-Made Settlement Class Members can submit a Claim to accept the 12-months' free identity-theft-protection services.

## 7. How to submit a claim?

All claims will be reviewed by the Settlement Administrator to determine whether the Claim is a Valid claim. You must file a Claim Form to get Settlement benefits from the proposed Settlement. Claim Forms must be submitted online by [INSERT DATE] or postmarked no later than [INSERT DATE]. You can download a Claim Form at [INSERT] or you can call the Settlement Administrator at [INSERT] for a Claim Form.

## 8. What am I giving up as part of the Settlement?

If you stay in the Settlement, you will be eligible to receive benefits, but you will not be able to sue Magellan, its Related Entities, and each of their each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, , directors, officers, principals, agents, attorneys, insurers, and reinsurers (collectively, the "Released Parties") regarding the claims in this case.

The Settlement Agreement, which includes all provisions about settled claims, releases, including Released Claims and Released Parties, is available at [INSERT WEBSITE].

The only way to keep the right to sue is to exclude yourself (*see* Question 10), otherwise you will be included in the Settlement Class, and, if the Settlement is approved, you give up the right to sue for the claims in this case.

### 9. Will the Class Representatives receive compensation?

Yes. Class Counsel will file a motion requesting that the Class Representatives receive service awards to compensate them for their services and efforts in bringing the lawsuit. Defendant reserves all rights to oppose Class Counsel's request for service awards. Any service awards to Class Representatives will be paid out of the Claims-Made Settlement Fund. The Court will make the final decision as to the amount, if any, to be paid to the Class Representatives.

<div align="center">

**EXCLUDE YOURSELF**

</div>

### 10. How do I exclude myself from the Settlement?

If you do not want to be included in the Settlement, you must send a timely written request for exclusion to the Post Office Box established by the Settlement Administrator, stating your full name, address, and telephone number. Your request must clearly manifest your intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and/or to waive all rights to the benefits of the Settlement.

Your written request for exclusion must be postmarked no later than **[INSERT]** to:

<div align="center">

[INSERT MAILING ADDRESS]

</div>

Instructions on how to submit a request for exclusion are available at [INSERT WEBSITE] or from the Claims Administrator by calling [INSERT PHONE #].

If you exclude yourself will not be able to receive any Settlement benefits from the Settlement, and you cannot object to the Settlement or Class Counsel's request for attorneys' fees and service awards at the Final Approval Hearing. You will not be legally bound by anything that happens in the Lawsuit, and you will keep your right to sue Defendant on your own for the claims that this Settlement resolves.

### 11. If I do not exclude myself, can I sue Defendant or the Released Parties later?

No. If you do not exclude yourself from the Settlement, and the Settlement is approved by the Court, you forever give up the right to sue the Released Parties (listed in Question 8) for the Released Claims, as set forth in the Settlement Agreement.

### 12. What happens if I do nothing at all?

If you do nothing, you will be bound by the Settlement if the Court approves it, you will not get any Settlement benefits from the Settlement, you will not be able to start or proceed with a lawsuit, or be part of any other lawsuit against the Defendant or the Released Parties (listed in Question 8) about the Released Claims in this case at any time.

**THE LAWYERS REPRESENTING YOU**

### 13. Do I have a lawyer in the case?

Yes. The Court has appointed David K. Lietz of Milberg Coleman Bryson Phillips Grossman PLLC, John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and Elaine A. Ryan of Auer Ryan, PC. (called "Class Counsel") to represent the interests of all Settlement Class Members in this case. You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14. How will the lawyers be paid?

Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed $1,250,000, and for out-of-pocket case expenses in addition to this amount. Magellan reserves all rights to oppose the requested attorneys' fees and expenses, including reserving its right to file an opposition to Plaintiff's motion for attorneys' fees and expenses. A copy of Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards for Class Representatives will be posted on the Settlement Website, [INSERT WEBSITE], before the deadline to object to the Settlement.

Any award for attorneys' fees, costs, and expenses for Class Counsel will be paid out of the Claims-Made Settlement Fund.  The Court will make the final decisions as to the amounts to be paid to Class Counsel and may award less than the amount requested by Class Counsel.

**OBJECTING TO THE SETTLEMENT**

### 15. How do I tell the Court that I do not like the Settlement?

If you want to tell the Court that you do not agree with the proposed Settlement or some part of it, including Class Counsel' request for attorneys' fees, expenses, and service awards, you must file an objection with the Court telling it why you do not think the Settlement should be approved.

Objections must be submitted in writing and include all the following information:

a)  the objector's full name and address;

b)  the case name and docket number: *Griffey et al. v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL;

c)  a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable;

d)  the identity of any and all counsel representing the objector in connection with the objection (if none, please state this);

e)  a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and

f)  the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than [INSERT DATE], to Class Counsel and Magellan's Counsel at the addresses below:

| CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|
| David K. Lietz<br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**<br>5335 Wisconsin Avenue NW<br>Suite 440<br>Washington, D.C. 20015-2052 | Christopher A. Wiech<br>Keeley O. Cronin<br>**BAKER & HOSTETLER LLP**<br>1801 California Street, Suite 4400<br>Denver, CO 80202 |

You may also file your objection with the Court through the Court's ECF system, with service on Class Counsel and Magellan's Counsel to be made through the ECF system.

If you do not submit your objection with all requirements, or if your objection is not received by [INSERT DATE], you will be considered to have waived all objections and will not be entitled to speak at the Final Fairness Hearing.

### 16. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

### THE FINAL FAIRNESS HEARING

### 17. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Fairness Hearing at [INSERT DATE, TIME, LOCATION] or by remote or virtual means as ordered by the Court.  The hearing may be moved to a different date, time, or location without additional notice, so it is recommended that you periodically check [INSERT WEBSITE] for updated information.

At the hearing, the Court will consider whether the proposed Settlement is fair, reasonable, adequate, and is in the best interests of Settlement Class Members, and if it should be finally approved. If there are valid objections, the Court will consider them and will listen to people who

have asked to speak at the hearing if the request was made properly. The Court will also consider Class Counsel's request for an award of attorneys' fees and expenses and Class Counsel's request for Service Awards to the Class Representatives.

After the Final Fairness Hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**18. Do I have to come to the hearing?**

No. You are not required to come to the Final Fairness Hearing. However, you are welcome to attend the hearing at your own expense.

If you submit an objection, you do not have to come to the hearing to talk about it. If your objection was submitted properly and on time, the Court will consider it. You also may pay your own lawyer to attend the Final Fairness Hearing, but that is not necessary. However, you must follow the requirements for making objections in Question 15, including the requirements for making appearances at the hearing.

**19. May I speak at the hearing?**

Yes. You can speak at the Final Fairness Hearing, but you must ask the Court for permission. To request permission to speak, you must file an objection according to the instructions in Question 15, including all the information required for you to make an appearance at the hearing. You cannot speak at the hearing if you exclude yourself from the Settlement.

### DO NOTHING

**20. What happens if I do nothing?**

If you do nothing, you will not get any Settlement benefits, you will not be able to sue for the claims in this case, and you release the Released Claims, as set forth in the Settlement Agreement, against Defendant and the Released Parties described in Question No. 8.

### GET MORE INFORMATION

**21. How do I get more information about the Settlement?**

This is only a summary of the proposed Settlement.  If you want additional information about this lawsuit, including a copy of the Settlement Agreement, the Complaint, the Court's Preliminary Approval Order, Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Award for Class Representatives, and more, please visit [INSERT WEBSITE] or call [INSERT PHONE]. You may also contact the Settlement Administrator at [INSERT MAILING ADDRESS].

**PLEASE DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR LITIGATION TO THE CLERK OF THE COURT, THE JUDGE, DEFENDANT, OR DEFENDANT'S COUNSEL.**

# **EXHIBIT D**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Chris Griffey, et al., | No. CV-20-01282-PHX-MTL (Lead) |
|        Plaintiffs, | No. CV-20-01350-PHX-MTL (Consol.) |
| v. | **[PROPOSED] ORDER ON UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Magellan Health, Incorporated, | |
|        Defendant. | |
| | (Assigned to the Honorable Michael T. Liburdi) |
| Daniel Ranson, et al., | |
|        Plaintiffs, | |
| v. | |
| Magellan Health, Incorporated, | |
|        Defendant. | |

This case is before the Court on Plaintiffs' Chris Griffey, Bharath Maduranthgam Rayam, Laura Leather, Clara Williams, Daniel Ranson, Mitchell Flanders, and Keith Lewis (collectively "Plaintiffs") Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"). The Court, having considered the Motion, the supporting brief, the parties' Settlement Agreement dated June 20, 2023, (the "Settlement"); the proposed Claim Forms, Short Form Notices, and Long Form Notice (attached as Exhibits A-1, A-2, B-1, B-2, and C, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

<u>**Preliminary Approval of Settlement Agreement**</u>

Unless otherwise defined herein, all capitalized terms as used in this Order shall have the definitions and meanings accorded to them in the Settlement Agreement.

1. The Court, pursuant to 28 U.S.C. § 1332, has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, Defendant Magellan Health, Incorporated. ("Magellan"), and any party to any agreement that is part of or related to the Settlement Agreement.

2. The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable, and adequate such that it is hereby preliminarily approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing should be held as set forth below.

<u>**Class Certification**</u>

3. Solely for purposes of the Settlement, the Court conditionally certifies the following Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

**All persons who were notified that their information may have been impacted in the Data Incident.**

The Settlement Class has two separate parts – the Claims-Made Settlement Class, and the Common-Fund Settlement Class – the reflect the different information potentially impacted by the Data Incident.

Excluded from the Settlement Class are: (i) Magellan and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads nolo contender to any such charge.

4.      Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b) are satisfied in that:

(a)      the Settlement Class is so numerous that joinder of all members is impracticable;

(b)      there are questions of law or fact common to the Settlement Class;

(c)      Plaintiffs and Class Counsel (as defined below) fairly and adequately represent the Settlement Class,  and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class;

(d)      the Claims of Plaintiffs are typical of those of Settlement Class Members;

(e)      common issues predominate over any individual issues affecting the members of the Settlement Class, and;

(f)      settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

5.      The Court appoints David K. Lietz of Milberg Coleman Bryson Phillips Grossman PLLC, John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and Elaine A. Ryan of Auer Ryan, PC. As Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

6.      The Court hereby appoints Plaintiffs Chris Griffey, Bharath Maduranthgam Rayam, Laura Leather, Clara Williams, Daniel Ranson, Mitchell Flanders, and Keith Lewis as the Class Representatives for settlement purposes only on behalf of the Settlement Class.

**Notice to Settlement Class Members**

7.      At the hearing for Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement, the Court approved the Settlement Agreement, as well as the Long Notice and the Short Notices, filed on [insert date], attached as Exhibits B-1, B-2 and C,

3

respectively, to the Settlement Agreement, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth in Section 9 of the Settlement Agreement ("Notice Plan") complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process of law, and is the best notice practicable under the circumstances.

8.     The Court further approves the Claim Forms, substantially similar to Exhibits A-1 and A-2 to the Settlement Agreement, which will be available both on the Settlement Website and by request.

9.     The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement and the Final Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

10.     The Court hereby orders that, within fourteen (14) days of the entry of this Order, Magellan shall provide the Settlement Administrator with the name and last known physical address of each Settlement Class Member that Magellan possesses.

11.     No later than forty-five (45) days from the date of this Order preliminarily approving the Settlement Agreement, the Settlement Administrator shall send the Short Notices to each Settlement Class Member through mailing the Short Form Notices via U.S. Mail, first-class; and shall publish the Long Notice on the Settlement Website as stated in the proposed Notice Plan. All mailings and remailings to any Settlement Class Members shall be completed (60) days from the date of this Order preliminarily approving the Settlement Agreement. Contemporaneously with seeking Final Approval of the Settlement, Class Counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to complying with the Notice Plan.

12.     All costs incurred in disseminating or otherwise in connection with the Settlement Notice shall be paid by Magellan pursuant to the Settlement Agreement.

13.     The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and are thus approved for dissemination to the Settlement Class. The Claim Forms shall be made available to the Settlement Class Members as set forth in the Notice Plan and shall be made available to any potential Class Member that requests one.

**Attorneys' Fees, Costs, and Service Awards**

14.     The Settlement provides that, as part of the Settlement, the Court shall determine the amount of any award of attorneys' fees, costs, and service awards. Pursuant to the Settlement, Plaintiffs shall file their motion requesting attorneys' fees, costs, and service awards within 46 days after the Notice Date. Magellan has retained any and all rights to oppose any such filed motions on all available grounds related to the amount of the attorneys' fees, costs, and/or service awards.

**Responses by Settlement Class Members and the Scheduling of a Final Fairness Hearing**

15.     Settlement Class Members may opt-out or object up to sixty (60) days from the Notice Commencement Date (the "Opt-Out Deadline").

16.     Any member of the Settlement Class Members who wish to be excluded ("opt-out") from the Settlement Class must send a written request to the designated Post Office box established by the Claims Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally submit an opt-out request. All Settlement Class Members who opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class,

and will preserve their ability to independently pursue any claims they may have against Magellan.

17.   Any member of the Settlement Class Members who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Released Claims, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

18.   The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
|---|---|
| Settlement Administrator to Provide CAFA Notice Required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of this Motion |
| Magellan to Provide Contact Information for Settlement Class Members to Settlement Administrator | Within 14 days after Entry of Preliminary Approval Order |
| Notice Program Commences (Notice Date) | 45 days after entry of Preliminary Approval Order |
| Notice Program Concludes | 60 days after entry of Preliminary Approval Order |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d) | 90 days after the Appropriate Governmental Officials are Served with CAFA Notice |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | 46 days after the Notice Date |
| Deadline for Magellan to file Response in Opposition to Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | 21 days after Plaintiffs file their Motion for Attorneys' Fees, Expenses, and Service Awards |
| Postmark Deadline for Request for Exclusion ("Opt-Out") or Objections | 60 days after the Notice Date |

6

| Postmark/Filing Deadline for Filing Claims | 90 days after the Notice Date |
| Deadline to file Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Fairness Hearing |
| Deadline for Plaintiffs to File any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Fairness Hearing |
| Deadline for Settlement Administrator to File or Cause to be Filed, if Necessary, a Supplemental Declaration with the Court | At least 5 days prior to the Final Fairness Hearing |
| Final Fairness Hearing | To be determined by the Court |

19.     A hearing on the Settlement (the "Final Fairness Hearing") shall be held before the Court on a date to be set by the Court.

20.     At the Final Fairness Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the release of claims and release of Magellan; (d) entry of a final approval order; and (e) entry of final judgment in this Litigation. Proposed Class Counsel's application for award of attorney's fees and expenses, and requests for the Court to award a service award to the named Plaintiffs, shall also be heard at the time of the hearing.

21.     The date and time of the Final Fairness Hearing shall be subject to adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Fairness Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out Deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Fairness Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Fairness Hearing will be posted on the Settlement Website.

22.     Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through their own attorney. Settlement Class Members who do not timely object or opt-out and that do not have an attorney who enter an appearance on their behalf will be represented by Class Counsel.

23.     Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Proposed Class Counsel's Application for fees and expenses, or (d) the service award request, by (i) serving a written objection upon Proposed Class Counsel and Magellan's counsel or (ii) filing the written objection with the Court through the Court's ECF system, with service on Proposed Class Counsel and Magellan's counsel made through the ECF system.

24.     Any Settlement Class Member making the objection (an "Objector") must submit the objection in writing and include all the following information: a) the objector's full name and address; b) the case name and docket number: *Griffey v. Magellan Health, Inc.*, Case No. CV-20-01282-PHX-MTL; c) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; d) the identity of any and all counsel representing the objector in connection with the objection (if none, please state this); e)a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and f) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

25.     In order to be timely, objections, along with any notices of intent to appear, must be mailed to Proposed Class Counsel and Magellan's Counsel with a postmark date

of no later than sixty (60) days after the Notice Commencement Date or filed with the Court no later than sixty (60) days after the Notice Commencement Date.

26.     Only Settlement Class Members who have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Fairness Hearing. Any Settlement Class Member who does not timely mail or file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Released Claims and Released Parties; (c) entry of Final Approval Order or any judgment; (d) Proposed Class Counsel's application for fees, costs, and expenses, and/or (e) the service award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

27.     Settlement Class Members need not appear at the hearing or take any other action to indicate their approval.

28.     Upon entry of the Order and Final Judgment, all members of the Settlement Class who have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Magellan with respect to all of the Released Claims and the Released Parties.

29.     The Settlement Administrator shall prepare and send all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. 1715. Class Counsel and Counsel for Magellan shall cooperate promptly and fully in the preparation of such notices, including providing Magellan with any and all information in their possession necessary for the preparation of these notices. Magellan shall provide courtesy copies of the notices to Proposed Class Counsel for the purpose of implementing the settlement. Magellan shall provide notice to Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

**Administration of the Settlement**

30.     The Court hereby appoints the settlement administrator proposed by the parties, Kroll Settlement Administration LLC (the "Settlement Administrator"). Responsibilities of the Settlement Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Settlement Class; (c) developing a web site to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to claims administration; (e) administering the Qualified Settlement Fund, and; (f) distributing settlement benefits to Settlement Class Members. Pursuant to the Settlement Agreement, the Settlement Administrator and costs of administration shall be paid by Magellan, subject to the $2,250,000 Claims-Made Benefits cap.

31.     In the event the Settlement Agreement and the proposed settlement are terminated in accordance with the applicable provisions of the Settlement Agreement, the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Magellan, and  shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation. The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

32.     Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the

10

Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Magellan as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed settlement.

**IT IS SO ORDERED.**

# EXHIBIT 2

David K. Lietz (*admitted pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Ave, NW, Suite 440
Washington, DC 20015
Telephone: (866) 252-0878
Email:   dlietz@milberg.com

*(Additional Counsel Listed on Signature Page)*

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Griffey, et al., | No. CV-20-01282-PHX-MTL (Lead) |
| Plaintiffs, | No. CV-20-01350-PHX-MTL (Consol.) |
| v. | **DECLARATION OF DAVID K.** |
| Magellan Health, Incorporated, | **LIETZ IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendant. | |
| | (Assigned to the Honorable Michael T. Liburdi) |
| Daniel Ranson, et al., | |
| Plaintiffs, | |
| v. | |
| Magellan Health, Incorporated, | |
| Defendant. | |

I, David K. Lietz, being competent to testify, make the following declaration:

1.      I am currently a partner of the law firm of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). I am one the lead attorneys for Plaintiffs and seek appointment as Class Counsel for the proposed Settlement Class, along with my co-counsel John A. Yanchunis and Elaine A. Ryan. I submit this declaration in support of Plaintiff's Assented to Motion for Preliminary Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so. A true and correct copy of the Settlement Agreement ("Agreement" or "Agr.") is attached to the Memorandum in Support of the motion as **Exhibit 1**. Included with the Agreement are the following sub-exhibits:

**Exhibit A-1: Claims-Made Claims Form**

**Exhibit A-2: Common Fund Claim Form**

**Exhibit B-1: Claims-Made Short Notice**

**Exhibit B-2: Common Fund Short Notice**

**Exhibit C:   Long Notice**

**Exhibit D:   Proposed Preliminary Approval Order**

2.      I am a 1991 graduate of Georgetown University Law Center.  I have been licensed to practice law in the District of Columbia since 1991, am a member of the bars of numerous federal district and appellate courts, and have decades of litigation and class action experience.

3.      I have represented and am currently representing plaintiffs in more than 100 class action lawsuits in state and  federal courts throughout the United States. Both I and my firm carry on a national and international class action law practice. With respect to data privacy cases, I am currently litigating more than seventy-five cases across

the country involving violations of privacy violations, data breaches, and ransomware attacks.

4.    Since March 14, 2020, I (either individually or as a member of my law firm) have been appointed class counsel in a number of data breach or data privacy cases, including:

    a.  *Kenney et al. v. Centerstone of America, Inc*., Case No. 3:20-cv-01007 (M.D. Tenn.) (appointed co-class counsel in data breach class action settlement involving over 63,000 class members; final approval granted August 2021);

    b.  *Baksh v. Ivy Rehab Network, Inc*., Case No. 7:20-cv-01845-CS (S.D. N.Y.) (class counsel in a data breach class action settlement; final approval granted Feb. 2021);

    c.  *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted Dec. 2020);

    d.  *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted Feb. 2021);

    e.  *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (appointed class counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

    f.  *Bailey v. Grays Harbor County Public Hospital District et al*., Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Sept. 2020);

    g.  *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (appointed class counsel in data breach settlement, final approval granted September 2021);

    h.  *Richardson v. Overlake Hospital Medical Center et al*., Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach case, final approval granted September 2021);

i.   *Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (Mr. Lietz appointed Settlement Class Counsel; final approval granted October 2021);

j.   *Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (Mr. Lietz appointed co-class counsel in data breach case involving 112,000 people; final approval granted October 2021);

k.   *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel; final approval granted November 2021);

l.   *Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed Settlement Class Counsel in data breach case involving 55,652 people; final approval granted April 2022);

m.   *Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (appointed co-lead Settlement Class Counsel; final approval granted July 2022);

n.   *Garcia v. Home Medical Equipment Specialists, LLC*, Case No. D-202-cv-2021-06846 (appointed class counsel; final approval granted June 2022);

o.   *Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo.) (appointed co-class counsel; final approval granted June 2022);

p.   *Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx) (C.D. CA) (appointed co-class counsel; final approval granted November 2022);

q.   *Paras et al. v. Dental Care Alliance*, Civil Action No. 22EV000181 (State Court of Fulton County, Georgia (appointed co-class counsel; final approval granted September 2022);

r.   *James v. CohnReznick LLP*, Case No. 1:21-cv-06544 (S.D.N.Y.), (appointed as co-class counsel; final approval granted September 2022);

s.   *Purvis, et al v. Aveanna Healthcare, LLC*, Case No. 1:20-cv-02277-LMM (N.D. Ga.) (appointed class counsel; final approval granted October 2022);

t.   *Kolar v. CSI Financial Services LLC dba ClearBalance*, Case No. 37-2021-00030426-CU-NP-CTL (Superior Court of San Diego County,

4

California) (appointed co-lead class counsel, final approval granted January 2023);

u. *In re: California Pizza Kitchen Data Breach Litigation*, Master File No.: 8:21-cv-01928-DOC-KES (C.D. CA) (appointed settlement class counsel; final approval granted February 2023);

v. *Snyder v. Urology Center of Colorado, P.C.*, Case No. 2021CV33707 (2nd District Court, Denver County, Colorado) (appointed settlement class counsel; final approval granted October 2022);

w. *Steen v. The New London Hospital Association, Inc.*, Civil Action No. 217-2021-CV-00281 (Merrimack Superior Court, New Hampshire) (appointed class counsel; final approval granted January 2023);

x. *Gonshorowski v. Spencer Gifts LLC*, Docket Number ATL-L-000311-22 (Superior Court of New Jersey, Law Division, Atlantic County (appointed Class Counsel; final approval granted September 12, 2022);

y. *Nelson et. al v. Bansley & Kiener, LLP*, Civil Action No. 2021CH06274 (Ill. 1st Jud. Cir. Crt., Cook Cnty.) (appointed class counsel; final approval granted November, 2022);

z. *Henderson et al. v. San Juan Regional Medical Center*, Case No. D-1116-CV-2021=01043 (11th Jud. Dist. Court, San Juan County, NM) (appointed class counsel; final approval granted March 2023);

aa. *Cathy Shedd v. Sturdy Memorial Hospital, Inc.*, Civ. Action No: 2173 CV 00498 (Mass. Sup. Ct. Dept.) (appointed class counsel; final approval granted February 2023);

bb. *Pagan et al. v. Faneuil, Inc.*, Civil Action No. 3:22-cv-297 (E.D. Va.)(appointed class counsel; final approval granted February 2023);

cc. *Hawkins et al. v. Startek, Inc.*, Case No. 1:22-cv-00258-RMR-NRN (USDC CO)(appointed class counsel; final approval granted April 2023);

dd. *McManus v. Gerald O. Dry*, P.A., Case No. 22 CVS 001776 (N.C. Superior Court for Cabarrus County) (appointed settlement class counsel; final approval granted March, 2023);

ee. *McHenry v. Advent Health Partners, Inc.*, Case No. 3:22-cv-00287 (USDC MD TN)(appointed class counsel; final approval granted April 2023),

ff.  *Lopez v. San Andreas Regional Center*, Case N0. 21CV386748 (Sup. Ct. CA, Santa Clara County) (appointed settlement class counsel; preliminary approval granted December 13, 2022);

gg. *Charlie, et al. v. Rehoboth McKinley Christian Health Care Services*, Civil No 21-652 SCY/KK (USDC NM) (appointed class counsel, final approval granted May 2023);

hh. *Arbuthnot v. Acuity – CHS, LLC*, Case No. 6:22-cv-658-PGB-DCI (USDC MD FL, Orlando Division) (appointed Settlement Class Counsel; preliminary approval granted April 6, 2023);

ii.  *Bergeson v. Virginia Mason Medical Center*, Case No. 22-2-09089-8 SEA (Superior Court of Washington for King County) (appointed Settlement Class Counsel; preliminary approval granted April 7, 2023), and;

jj.  *Reynolds et al. v. Marymount Manhattan College*, Case No. 1:22-CV-06846-LGS (USDC SDNY) (appointed Settlement Class Counsel; preliminary approval granted May 18, 2023).

5.      I am also lead counsel on the following cases that are on the cutting edge of Article III federal court jurisdiction in data breach litigation—*Charlie v. Rehoboth McKinley Christian Healthcare Services*, Civ. No. 21-652 SCY/KK, 2022 WL 1078553 (D.N.M. April 11, 2022); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *1 (W.D. Mo. Sept. 15, 2021) and *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021).

6.      For my substantial efforts in advancing the state of the law in data breach and cyber-security litigation, in April 2022 I was named to Law360's 2022 Cybersecurity & Privacy Editorial Board. This 12-person editorial board includes some of the most accomplished attorneys in the country in the cybersecurity and data breach legal field, and it is a high honor for me to be included on this board.

7.      I have been appointed as class counsel in other consumer class action cases and have tried consumer class action cases to verdict before a jury, most recently in *Baez v. LTD Financial Services*, Case No: 6:15–cv–1043–Orl–40TBS (MD Fla.).

8.     My experience with class actions also includes a leadership role in a Massachusetts Walmart wage abuse class action, national HMO litigation, the Buspirone MDL, and Louisiana Norplant litigation.

9.     In addition to my class action experience, I have substantial appellate experience, successfully briefing and arguing multiple cases before a number of federal appellate courts, including *Home Depot v. Jackson* at the U.S. Court of Appeals for the Fourth Circuit, and served as part of the successful brief-writing and oral advocacy team for *Home Depot v. Jackson*, 139 S. Ct. 1743, 1744, 204 L. Ed. 2d 34 (2019) at the United States Supreme Court.

10.     Prior to concentrating my practice on consumer class action litigation, I litigated critical injury and wrongful death actions arising from commercial incidents, such as tractor trailer incidents, industrial explosions, a subway collision, and commercial airplane crashes. A representative list of my critical injury and wrongful death cases include:

- Represented the family of the deceased conductor of the Washington Metropolitan Area Transit Authority subway train that collided with another Metro train in 2009.
- Represented the family of a fatality victim of the 2006 Greyhound bus crash near Elizabethtown, New York.
- Represented six victims (four deceased, two injured) of a massive fog related pileup on the Pennsylvania Turnpike in 2003.
- Represented three victims (two deceased, one injured) of the 2002 Interstate 40 Bridge Collapse, where a tugboat and barge hit an interstate highway bridge near Webbers Falls, Oklahoma and caused several vehicles to plunge into the Arkansas River.
- Represented the family of one victim of the 2000 Alaska Airlines Flight 261 crash, where an MD-83 with a cracked jackscrew nosedived into the water off Point Mugu, California.
- Represented the victims (one deceased, one critically injured) of a 2000 incident where a tractor trailer rear ended a line of stopped traffic near Hopkinsville, Kentucky.
- Represented a critically burned victim of the 1998 explosion at the State Line Energy plant in Hammond, Indiana, where a massive coal dust explosion ripped through the power plant, causing power shortages all over the city of Chicago, Illinois.

- Represented the families of four victims of the 1996 Valujet Flight 592 crash, where a DC-9 developed a cargo hold fire and crashed into the Everglades near Miami, Florida.
- Represented the family of a victim of a 1994 crane collapse in Laughlin, Nevada, when a mobile truck crane toppled across the parking lot of a casino.

11.     I negotiated several million+ dollar settlements, served as lead counsel in multiple civil actions, tried a number of cases to verdict in both jury and bench trials, and argued cases before federal district and appeals courts, and numerous state courts. I have lifetime verdicts and settlements in excess of $100 million, and consistently achieved settlements in the highest quartile of tort and mass tort cases. I have litigated against some of the largest transportation-related companies in the US, including Greyhound, Goodyear, Cessna, Textron, and the Washington Metropolitan Area Transit Authority (WMATA).

12.     I was first awarded the prestigious "AV" rating from Martindale-Hubbell in 1998, and have maintained that rating (and the concomitant listing in the Bar Register of Preeminent Lawyers) ever since.

13.     In addition to my personal qualifications, I bring the support and resources of Milberg to this case on behalf of the putative class. Milberg pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing, repeatedly taking the lead in landmark cases that have set groundbreaking legal precedents, prompting changes in corporate governance, and recovering over $50 billion in verdicts and settlements. A brief firm biography is attached to this declaration as **Exhibit A**.

14.     Milberg is and has been one of the nation's most prominent class action law firms since its founding in 1965. Milberg continues to break new ground in cybersecurity and data privacy cases, including taking a co-lead counsel role in the high-profile *In re: Blaukbaud, Inc. Customer Data Security Breach Litigation* (MDL 2972) that has established pleading standards and Art. III standing guidelines for data breach cases.

Milberg has and is litigating multiple class actions against other companies within the same industry as Creative Services.

15.     My experience and Milberg's data breach experience compare favorably with that of any law firm in the country. The firm has ample resources (both financial and personnel, with over 100+ attorneys at the firm) to fully and adequately represent the interests of the proposed class here.

16.     I am, and my firm is, fully aware of the financial and human resources that will be required to bring this case to a successful conclusion and the Court should have no reservations that my firm has and is willing to commit those resources for the benefit of the Plaintiff's class. I personally have never used third-party funding on any data breach case, nor failed to meet my assessment obligations in any case. Neither I nor Milberg intends to use any third-party litigation funding for this case.

17.     My experience coupled with my firms' resources, will allow me to skillfully litigate this type of case in the best interests of Plaintiff and the putative class. Not only does my law firm have the resources to effectively prosecute this case, but it is also committed to utilizing them to do so.

18.     Milberg is a well-established law firm that employs numerous attorneys who represent plaintiffs in complex and class action litigation. Milberg can and will devote the necessary financial resources to this case.

**Qualifications of John A. Yanchunis and Morgan and Morgan**

19.     Plaintiffs also propose that John A. Yanchunis be named Class Counsel. Mr. Yanchunis is an attorney duly admitted to practice law in the states of Florida and Texas.  He was admitted to practice law in Texas in 1980 and Florida in 1981.  He practices in the area of consumer class actions, and has focused his practice in this area for the past 26 years.  Prior to focusing on class litigation, he specialized in complex business litigation, ranging from the representation of financial institutions to Fortune 500 companies.  He also represented insurance companies in insurance coverage disputes and was regional counsel for a very large insurance company handling coverage litigation for

asbestos and environmental claims in the southeastern United States.  In one case in particular, Mr. Yanchunis was lead counsel for five insurance companies in a multi-year trial, where his clients faced exposure for asbestos coverage in excess of a billion dollars. The case lasted 18 years through appeals.

20.     Mr. Yanchunis leads the Class Action Department at Morgan & Morgan. Morgan & Morgan is the largest Plaintiff's, contingency-only law firm in the country, with over 800 lawyers in more than 50 offices throughout the United States. *See* **Exhibit B** attached to this declaration. Its depth as a trial firm, and its self-funded financial resources, allows it to undertake the largest and most significant cases throughout the country.

21.     Before entering private practice in 1982, Mr. Yanchunis served for two years as a law clerk for the Honorable Carl O. Bue, Jr., a United States District Judge (now deceased) in the Southern District of Texas in Houston, Texas.

22.     Mr. Yanchunis has extensive experience in class action litigation.  He has served as co-lead counsel in the successful prosecution of the two largest class action cases in the United States: *Fresco v. Automotive Directions, Inc*., Case No. 03-61063-JEM (*Fresco I*), and *Fresco v. R.L. Polk*, Case No. 0:07-cv-60695-JEM (*Fresco II*) (Southern District of Florida).  Additionally, he serves today and has served in the past as lead, co-lead, or class counsel in numerous class actions in a wide variety of areas affecting consumers, including but not limited to, anti-trust, defective products, life insurance, annuities, privacy, breach of contract, civil rights and unfair and deceptive acts and practices.

23.     Presently, Mr. Yanchunis serves as lead, co-lead counsel, liaison counsel, and a member of the executive committee on MDL class cases throughout the country. These cases are as follows:  *In re: Capital One Consumer Data Security Breach Litigation*, No. 1:19-MD-2915-AJT (E.D. Va.)(Co-Lead)(final judgment entered oaactober,2022 approving a common fund of $190,000,000) and *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.)

10

("Yahoo") (Lead Counsel) (final judgment entered in July, 2020 approving $117,500,000.00 common fund settlement set for April 2, 2020); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final judgment entered approving  $380.5 million fund ); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.D.C.) ("OPM") (member of the Executive Committee) (dismissal on standing grounds recently reversed on appeal to the D.C. Circuit, final judgment entered 2022 approving a common find settlement of $62,000,000). *In Re: Monat Hair Care Products Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2841 (S.D. Fla.) (member of the Executive committee). He is also co-lead counsel in the case of *Brown v Google*, a case addressing the incognito search engine of Google's search engine. The court in that case has certified a class under 23b2, and pending is a motion to certify a class under 23c4. The case involving millions of consumers is set for trial to begin on November 6,2023. Mr. Yanchunis is also presently engaged in class litigation of most of the big tech companies in the world, including Meta , Twitter and TikTok

24.     Mr. Yanchunis also served in leadership roles in the following MDL cases which have been settled: *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (Co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000); and *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers upheld by the 8th Circuit).

25.     In non-MDL cases, Mr. Yanchunis served in leadership in many class cases, most recently (and to name just a few): *Schmidt, et al., v. Facebook, Inc*., No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) ("*Facebook*") (consolidated complaint filed in February 2019; motion for class certification fully briefed and argued on November 6, 2019); *Walters v. Kimpton Hotel & Restaurant*, No. 3:16-cv-05387 (N.D. Cal.)

("*Kimpton*") (Lead Counsel) (class action settlement final approval order entered July 11, 2019); and *In re: Arby's Restaurant Group, Inc. Data Security Litigation*, Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval of a class settlement entered June 6, 2019); and *Jackson, et al., v. Wendy's International, LLC*, No. 6:16-cv-210-PGB (M.D. Fla.) (final approval of a class settlement entered February 26, 2019).

26.    Beginning in 2005, and while maintaining a private law practice, Mr. Yanchunis served as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators in the state of Florida) in their investigations of the insurance industry over issues concerning possible antitrust activity, other possible unlawful activity and activities regarding the payment of undisclosed compensation to insurance brokers.  The litigation and these investigations resulted in millions of dollars in restitution being paid to Florida consumers, and also resulted in significant changes in the way commercial insurance is sold in the state of Florida and across the country.

27.    Mr. Yanchunis lectures frequently on topics regarding class litigation, and has presented on topics in this area throughout the United States, including Israel and Mexico, London and Amsterdam. He is scheduled to present on the topic of privacy and cyber security in London in November 2023. He has also lectured on issues of attorneys' fees in class litigation, and has served as an expert to The Florida Bar in lawyer discipline cases on the topic of the ethical obligations of class counsel in class action litigation.

28.    Mr. Yanchunis has been honored with the prestigious "AV" rating by Martindale-Hubbell.  He was honored to be appointed by The Florida Supreme Court to a 5 year term on The Board of Bar Examiners of The Florida Bar, and currently serves as an Emeritus member of the Board) and as an elected member of The Board of Governors of The Florida Bar , the 52 member governing body of The Florida Bar.

### Qualifications of Elaine A. Ryan and Auer Ryan, P.C

29.     Plaintiffs also propose that Elaine A. Ryan be named Class Counsel. Ms. Ryan has been licensed to practice law in the State of Arizona since 1989, and is currently licensed to practice law in 10 states – Arizona, Colorado, Idaho, Illinois, Kansas, Missouri, Texas, Utah, Washington and Wisconsin.  She is also admitted to practice in several federal courts, including the District Court of Arizona and the United States Court of Appeals for the Ninth Circuit.

30.     Ms. Ryan's clients benefit from her over 30 years of experience. Ms. Ryan also has had much success in negotiating settlements, including successfully obtaining payment from insurance companies and other third party payors, including Medicare.

31.     Ms. Ryan's clients also benefit from her legal skills in having appeared before state and federal courts, at both the trial and appellate level, throughout the United States in the many years she represented consumers in class actions against several major retailers, insurance companies and lending institutions.  She also has appeared before several state and probate courts in connection with her general and commercial collections practices.

32.     Ms. Ryan is an AV Rated attorney and is a member of the American Bar Association (Litigation Section), Maricopa County Bar Association and Arizona Women Lawyers Association. She is a past member and officer of the Horace Rumpole Inn of Court.

33.     Class Counsel have invested considerable time and resources into the investigation of the facts underlying the claims and the prosecution of this action. Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Magellan and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to its customers

34.     Since the outset of this litigation, the firms have cooperatively and effectively collaborated to prosecute, and ultimately resolve, this case on behalf of our

client and the Class. They have performed work critical to achieving benefits for the Class, including by investigating the facts surrounding the Data Security Incident, researching and analyzing legal claims under state and federal law and common law, preparing and filing the Complaint and subsequent Consolidated and Amended Complaints, substantial motion and discovery practice, participating in meetings with defense counsel to discuss the parties' respective positions, preparing for and participating in a formal mediation, negotiating the proposed Settlement, and drafting this motion for preliminary approval.

35.    As noted above, and as reflected in the respective firm resumes filed herewith, Class Counsel are qualified, experienced, and able prosecute this litigation. Class Counsel have a wealth of experience in litigating complex class action lawsuits similar to this one and have extensive knowledge of the applicable law and sufficient resources to commit to the Settlement Class.

36.    Throughout the pendency of this case, I and my co-counsel have maintained regular contact with Plaintiffs to discuss with them the prosecution of the case. With the assistance of counsel, Plaintiffs have been at the helm of this case and continue to be focused on the advancement of the interests and claims of the Class over their own interests. Plaintiffs have always been concerned about obtaining a result that was best for the Class. Plaintiffs have been personally involved in the case and support the Settlement. Plaintiffs are adequate class representatives with no conflicts of interest.

37.    After investigating the facts and carefully considering applicable law, Plaintiffs and Class Counsel have concluded that it is in the best interests of the Settlement Class Members to enter into the Settlement in order to avoid the uncertainties of litigation and to assure meaningful and timely benefits to the Settlement Class Members. I, along with Plaintiffs and other Class Counsel, respectfully submit that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of all Settlement Class Members.

38.     Plaintiffs believe they have built a strong case for liability. With respect to Plaintiffs Leather, Ranson, Flanders, and Lewis's negligence claim, Plaintiffs believe they will ultimately be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class's PII and PHI. However, there are considerable litigation risks here, as evidenced by the outcome of Defendant's initial motion to dismiss on the pleadings.

39.     Throughout the settlement process, my co-counsel and I carefully weighed with the Plaintiffs: (1) the benefits to the Class under the terms of this Settlement Agreement, which provides significant relief to the Class; (2) the quantum of damages which might have been sustained by individual Settlement Class Members, the likelihood that in the absence of a class action consumers would not pursue individual claims, particularly due to the high cost and expense, including the cost of cyber and damage experts to litigate these claims if pursued in individual litigation, and the fact that the quantum of damages would not justify the retention of an attorney, either on an hourly or contingent basis, to pursue the claims individually; (3) the difficulty in proving and calculating those damages; (4) the attendant risks and uncertainty of litigation, as well as the difficulties and delays inherent in such litigation including the challenges to certification of a class; (5) Defendant's vigorous defense of the litigation and continued denial of the claims contained in the Complaint; (6) the desirability of consummating the present Settlement Agreement to ensure that the Class receives a fair and reasonable Settlement; and (7) providing Settlement Class Members prompt relief.

40.     In particular, it is my opinion that the Settlement Agreement provides significant benefits to Settlement Class Members.

41.     Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement.

42.     The relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay of trial and associated appeals. At bottom, Plaintiff faced difficult hurdles certifying a class.

43.     Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement

44.     With the benefit of formal discovery, and the parties exchange of information, this provided Class Counsel—along with my prior experience in similar litigation and communications with many consumers in those cases and the one before the Court—with the ability to make a well-informed decision about the litigation risks and the benefits of the Settlement.

45.     This settlement was negotiated at arms'-length between highly competent counsel for both the Plaintiffs and Defendant.  The Parties participated in a formal mediation with a well-regarded private mediator (Rodney Max, Esq.), which is evidence that the negotiations were at arms'-length and non-collusive.  This settlement was only achieved after months of hotly contested negotiations.

46.     Even at the end of the negotiations, the Parties were unable to reach agreement on attorneys' fees and service awards, and could only agree that these matters should be decided by the Court, after full adversarial briefing and argument.  This is also evidence of the non-collusive, arms'-length nature of the negotiations and settlement, and evidence of Class Counsel's adequacy (in that I and my colleagues plainly put the interests of the Settlement Class before our own financial interests).

47.     Given my extensive experience with class action settlements, it is my informed opinion that the Notice Program, with all attendant forms and as outlined in the Settlement, makes every effort to ensure that Class Members will be made aware of their right to a recovery under the Settlement.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

I declare under penalty of perjury under the laws of the State of Arizona that that foregoing is true and correct.

Executed this 20th day of June, 2023, at Washington, D.C.

*David K Lietz*

_____

DAVID K LIETZ

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Ave, NW
Suite 440
Washington, DC 20015
Telephone: (866) 252-0878
Email:  dlietz@milberg.com

*Counsel for Plaintiffs and the Putative Class*

# **EXHIBIT A**



FIRM RESUME

# WHO WE ARE

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations - wherever they operate.

**www.milberg.com**

# PRACTICE AREAS

### ANTITRUST & COMPETITION LAW

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

### COMPLEX LITIGATION

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for businesses and plaintiffs outside of the class action context, including business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property.

### CONSUMER PRODUCTS

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims and unfair trade practices cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

### CONSUMER SERVICES

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy.
We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

## CLASS ACTION LAWSUITS

Milberg pioneered federal class action litigation, and is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements of up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

## DANGEROUS DRUGS & DEVICES

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most poweful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

## DATA BREACH, CYBERSECURITY & BIOMETRIC DATA LAWSUITS

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cybersecurity threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

## ENVIRONMENTAL & TOXIC TORTS LITIGATION

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

## FINANCE & INSURANCE LITIGATION

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

## PUBLIC CLIENT REPRESENTATION

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

## SECURITIES LITIGATION

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

## WHISTLEBLOWER & QUI TAM

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients. Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring impressive victories against companies guilty of outrageous behavior."*

- FORBES

*"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*

**- NEW YORK TIMES**

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)
In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973
In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation
In re: Blackbaud Data Privacy MDL No. 2972
In re: Paragard IUD Products Liability Litigation MDL No. 2974
In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation MDL No. 3009
In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation
In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

In re: Zicam
In re: Guidant Corp. Implantable Defibrillators
In re: Ortho Evra
In re: Yaz
In re: Kugel Mesh
In re: Medtronic Sprint Fidelis Leads
In re: Stand 'N Seal
In re: Chantix
In re: Fosamax
In re: Olmesartan (Benicar)
In re: Onglyza (Saxagliptin) And Kombiglyze XR
In re: Risperdal and Invega Product Liability Cases

In re: Mirena
In re: Incretin
In re: Reglan
In re: Levaquin Litigation
In re: Zimmer Nexgen Knee
In re: Fresenius Granuflo
In re: Propecia
In re: Transvaginal Mesh
In re: Fluoroquinolones
In re: Depuy Pinnacle
In re: Recalled Abbott Baby Formula

# NOTABLE RECOVERIES

$3.2 Billion Settlement - In re: Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

$4 Billion Settlement - In re: Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

$1.14 Billion Settlement - In Re: Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

$1 Billion-plus Trial Verdict - Vivendi Universal, S.A. Securities Litigation

$1 Billion Settlement - NASDAQ Market-Makers Antitrust Litigation

$1 Billion Settlement - W.R. Grace & Co.

$1 Billion-plus Settlement - Merck & Co., Inc. Securities Litigation

$775 Million Settlement - Washington Public Power Supply System Securities Litigation

# LOCATIONS

**CALIFORNIA**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

**FLORIDA**
2701 South Le Jeune Road
Coral Gables, Florida 33134

**ILLINOIS**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

**KENTUCKY**
19 North Main Street
Madisonville, Kentucky 42431

**LOUISIANA**
5301 Canal Boulevard
New Orleans, Louisiana 70124

**MICHIGAN**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

**NEW JERSEY**
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza,
Garden City
New York 11530

405 E 50th Street
New York 10022

**NORTH CAROLINA**
900 West Morgan Street
Raleigh, North Carolina 27603

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**WASHINGTON**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

**WASHINGTON, D.C.**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052

**NETHERLANDS**

**GERMANY**

**PORTUGAL**

**UNITED KINGDOM**



www.milberg.com

# **<u>EXHIBIT B</u>**



Morgan & Morgan is a leading civil trial law firm representing consumers and commercial clients nationwide. With over 800 lawyers, and more than 3,000 non-lawyer employees, Morgan & Morgan is the largest plaintiffs' firm in the nation.  Morgan & Morgan maintains over offices throughout the United States.  Among its lawyers are former state attorney generals and present and former members of various state legislatures.

Morgan & Morgan has a dedicated Complex Litigation Group staffed with  lawyers, paralegals, and retired FBI agents serving as investigators committed to representing consumers in complex litigation, MDL proceedings and class action cases throughout the country. It has achieved many remarkable results in class litigation, including the settlement of *In re Black Farmers Discrimination Litigation*, no. 08-0511 (D.C. Oct. 27, 2017), where one of its partners served as co-lead. The case resulted in a settlement with the United States Government in the amount of $1.2 billion for African American farmers who had been systematically discriminated against on the basis of race, in violation of the Fifth Amendment to the United States Constitution, the Equal Credit Opportunity Act, Title VI of the Civil Rights Act, and the Administrative Procedure Act. Morgan & Morgan has assembled a talented team of lawyers:

**John A. Yanchunis** leads the class action section of the law firm. His practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., S. D. Tex.—has concentrated on complex litigation and spans over 40 years, including consumer class actions for more than two-thirds of that time.  As a result of his extensive experience in class litigation, including privacy and data-breach litigation, he regularly lectures nationally and internationally  at seminars and symposiums  regarding class litigation and privacy litigation.

He has served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices. In 2014, he was recognized by the National Law Journal as a trailblazer in the area of privacy litigation, and in 2020, he was recognized by LAW 360 for the second year in a row as one of 4 MVPs in the United States in the area of privacy and cyber security litigation. For his work in the area of privacy litigation, he was awarded lawyer of the year in the state of Florida

by The Daily Business Review.

As a result of his experience in insurance and complex litigation, beginning in 2005, he was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. He served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, he has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, he served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. He was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of his clients.

Mr. Yanchunis began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as co-Lead Counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights of more than 200 million consumers under the Driver's Protection Privacy Act (DPPA) against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). See *Fresco v. Automotive Directions, Inc.,* No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk,*No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, I also served as co-Lead Counsel in the DPPA class cases, *Davis v. Bank of America,* No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed. Bank and Trust,* No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement).

He has been appointed and served in leadership positions a number of multidistrict litigation in the area of privacy and data breaches: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.)(settlement for $190,000,000 preliminarily

approved ) *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.) ("Yahoo") (Lead Counsel) (Court approved $117,500,000.00 common fund settlement for approximately 194 million US residents and 270,000 Israeli citizens ); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final judgment entered approving $380.5 million fund for 145 million consumers ); *In re: U.S. Office of Personnel Management Data Security Breach Litigation,* 1:15-mc-01394-ABJ (D.D.C.) ("OPM") (member of the Executive Committee) (motion for preliminary approval of a $60,000,000 common fund ); *In re Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers ).

His court-appointed leadership experience in non-MDL, data breach class actions is likewise significant, and to just name a few : *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) ("Facebook") (class certified for 8 million residents , subsequently settlement of the class was approved by the court); *Walters v. Kimpton Hotel & Restaurant,* No. 3:16-cv-05387 (N.D. Cal.) ("Kimpton") (Lead Counsel) (class action settlement final approval order entered July 11, 2019); and *In re: Arby's Restaurant Group, Inc. Data Security Litigation,* Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval of a class settlement entered June 6, 2019); and Jackson, et al., v. Wendy's International, LLC, No. 6:16-cv-210-PGB (M.D. Fla.) (final approval of a class settlement entered February 26, 2019); *Henderson v. Kalispell Regional Healthcare*, No. CDV-19-0761 (Montana Eighth Judicial Court – Cascade County) (final approval of class settlement entered January 5, 2021); *In re: Citrix Data Breach Litigation*, No. 19-cv-61350 (S.D. Fla.) (preliminary approval of class action settlement entered on January 26, 2021); *Kuss v. American HomePatient, Inc.,* et al., 18-cv-2348 (M.D. Fla.) (final approval of class action settlement entered on August 13, 2020); *Fulton-Green v. Accolade, Inc*., 18-cv-274 (E.D. Pa.) (final approval of class action settlement entered September 23, 2019); *Nelson v. Roadrunner Transportation Systems, Inc.,* 18-cv-7400 (N.D. Ill.) (final approval of class action settlement entered September 15, 2020).

His experience in these major data breach matters extends far beyond simply briefing threshold issues and negotiating settlements. Rather, he has personally deposed dozens of corporate representatives, software engineers, cyber professionals and CISOs in major data breach cases such as Capital One, Yahoo, Kimpton, and Facebook.  In addition, he has defended experts used in these cases and also deposed defense liability and damage experts.

Presently he leads his firm's efforts in two major class cases pending against Google for

data misuse.

As result of his experience in the area of class litigation and ethics, he has served as an expert for The Florida Bar on ethical issues arising in class action litigation. He is a frequent lecturer on privacy and class litigation nationally and internationally, including at international conferences, having presented at the University of Haifa's 2019 Class Action Conference, in Haifa, Israel, attended by lawyers, judges and law professors from around the world. In 2020 he lectured on data privacy in Mexico, and in November 2020 and 2021 he presented on class action issues to an international group of lawyers, judges and professors at a symposium in London sponsored by the London Law Society. He is schedule to speak on class action issues in 2022 at two different symposiums in Amsterdam, and two seminars on privacy and cyber security issues in the United States .

While at the University of Florida Mr. Yanchunis was a member of Florida Blue Key and Omicron Delta Kappa. He received his Juris Doctor degree from the South Texas College of Law in 1980, where he graduated magna cum laude. During law school, Mr. Yanchunis was a member of the Order of the Lytae, Associate Editor-in-Chief and Technical Editor of the South Texas Law Journal.

**Michael F. Ram.** Mr. Ram is a consumer class action lawyer with 40 years of experience. He graduated cum laude from Harvard Law School in 1982. He has co-tried several class action trials and frequently lectures on class trials. In 1992 he was a co-recipient of the Trial Lawyer of the Year Award given by Trial Lawyers for Public Justice for *National Association of Radiation Survivors v. Walters* No. 83-c-1861 (N.D. Cal.) (tried to class-wide judgment on remand from Supreme Court).

From 1993 through 1997, Mr. Ram was a partner with Lieff, Cabraser, Heimann and Bernstein where he represented plaintiffs in several major class actions, including: *Cox v. Shell*, Civ. No 18,844 (Obion County Chancery Court, Tenn.) national class of six million owners of property with defective polybutylene plumbing systems; *In re Louisiana-Pacific Inner-Seal Litigation*, No. 95-cv-879 (D. Oregon) (co-lead counsel) national class of homeowners with defective siding; *ABS Pipe Litigation,* Cal. Judicial Council Coordination Proceeding No. 3126 (Contra Costa County) national class of homeowners.

In 1997, Mr. Ram founded Levy, Ram & Olson which became Ram & Olson and then Ram, Olson, Cereghino & Kopczynski. He was co-lead counsel in many consumer class actions including a national class of half a million owners of dangerous glass pane gas fireplaces in *Keilholtz et al. v. Superior Fireplace Company*, No. 08-cv-00836 (N.D. Cal. 2008). He was co-lead counsel for plaintiffs in *Chamberlan v. Ford Motor Company,* No. 03-cv-2628 (N.D. Cal.), a

class action involving defective intake manifolds that generated four published opinions, including one by the Ninth Circuit, 402 F.3d at 950, and settled one court day before the class trial. He was also co-counsel for plaintiffs in a number of other consumer class actions, including: *In re General Motors Corp. Product Liability Lit.* MDL. No. 1896 (W.D. Wash.) (defective speedometers); *Richison v. American Cemwood Corp.,* San Joaquin Superior Court Case No. 005532 defective Cemwood Shakes); *Williams v. Weyerhaeuser,* San Francisco Superior Court Case No. 995787 (defective hardboard siding); *Naef v. Masonite,* Mobile County, Alabama Circuit Court Case No. CV-94-4033 (defective hardboard siding on their homes); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (approving class action settlement); *McAdams v. Monier, Inc.* (2010) 182 Cal. App. 4th 174 (reversing denial of class certification in consumer class action involving roof tiles); *Gardner v. Stimson Lumber Co.* (King County Wash. No. 2-17633-3-SEA) (defective siding); *Rosenberg v. U-Haul* (Santa Cruz Superior Ct. No. CV-144045 (certified consumer class action for false and deceptive conduct; tried successfully to judgment); *In re Google Buzz User Privacy Litigation*, No. 10-cv-00672-JW (N.D. Cal. 2011) (international class action settlement for false and deceptive conduct); *Whitaker v. Health Net of California, Inc.*, *and International Business Machines Corp*, No. 2:11-cv-0910 KJM DAD (E.D. Cal.) (electronic privacy class action under the California Confidentiality of Medical Information Act); and *In re Kitec Plumbing System Products Liab. Litigation MDL No 2098*, N.D. Texas, No. 09-MD-2098 (MDL class action involving claims concerning defective plumbing systems).

From 2017 to 2020, Mr. Ram was a partner at Robins Kaplan LLP. In August, 2020, Mr. Ram joined Morgan & Morgan to open a San Francisco office for them. He is currently co-lead counsel in numerous consumer class actions, including *Gold v. Lumber Liquidators,* N.D. Cal. No. 14-cv-05373-RS, a certified multistate class action involving bamboo floors, and *Fowler v. Wells Fargo,* N.D. Cal. No. 3:17-cv-02092-HSG, a class action involving interest charges that settled for $30 million. In addition, he is also currently serving on the Plaintiffs' Steering Committee in the *In re Philips CPAP MDL Litigation,* where he is co-chair of the Law and Briefing Committee.

**Jean Sutton Martin.** Ms. Martin presently serves by appointment as interim co-lead counsel in *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.)($68 million settlement for 15 million class members), *Combs, et al. v. Warner Music Group*, Case No. 1:20-cv-07473-PGG (S.D.N.Y.), *In Re: Ambry Genetics Data Breach Litigation*, No. 20-cv-00791 (C.D. Cal.), and *Johnson, et al. v. Yuma Regional Medical Center*, 2:22-cv-01061-SMB (D. Ariz.). She also serves as a member of the Plaintiffs' Steering Committee for the cases proceeding against LabCorp, Inc. in *In re: American Medical Collection Agency Data Breach Litigation*, 19-md-2904 (D. N.J.). She is a member of the Plaintiffs' Steering Committee in *In re: Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*, No. 17-md-2775 (D. Md.) and *In re: Allergan Biocell Textured Breast Implant Products Liability Litigation,* No. 19-md-2921 (D. N.J).

In a case in which she serves as interim co-lead counsel, Ms. Martin argued a motion for class certification which resulted in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach. *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).

She has served in leadership positions in many consumer class actions and consolidated proceedings in federal courts around the country, including *inter alia*: *Aguallo, et al. v. Kemper Corp., et al.,* Case No.: 1:21-cv-01883 (N.D. Ill.) (data breach settlement valued at over $17.5 million) (co-lead counsel); *Gordon, et al. v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415 (D. Colo.) (data breach) (co-lead counsel); *Linnins v. HAECO Americas, Inc., et al.,* No. 16-cv-486 (M.D.N.C.) (employee data disclosure) (co-lead counsel); *Torres v. Wendy's International, LLC,* No. 6:16- cv-210 (M.D. Fla.) (data breach) (class counsel); *Fuentes, et al. v. UniRush, LLC, et al.,* No. 1:15- cv-08372 (S.D.N.Y.) (disruption in servicing of financial accounts) (co-lead counsel); *Lewis, et al., v. Green Dot Corp., et al.,* No. 2:16-cv-03557 (C.D. Cal.) (disruption in servicing of financial accounts) (class counsel); *Brady, et al. v. Due North Holdings, LLC, et al.,* No. 1:17-cv-01313 (S.D. Ind.) (employee data disclosure) (class counsel); *Foreman v. Solera Holdings, Inc.,* No. 6:17-cv-02002 (M.D. Fla.) (employee data disclosure) (class counsel); *In Re: Outer Banks Power Outage Litigation,* No. 4:17-cv-141 (E.D.N.C.) (extended island power outage due to defective construction practices) (class counsel); and, *McCoy v. North State Aviation, LLC, et al.,* No. 17- cv-346 (M.D.N.C.) (WARN Act violations) (class counsel).

In addition to consumer class actions, Ms. Martin has practiced in the areas of mass tort and catastrophic personal injury litigation. Prior to joining Morgan and Morgan, Ms. Martin ran her own law firm concentrating in consumer class actions and mass tort litigation. She also has served as an adjunct professor at Wake Forest University School of Law.

Ms. Martin received her Juris Doctor degree from Wake Forest University School of Law in 1998, where she served as Editor-in-Chief of the *Wake Forest Law Review*. She obtained eDiscovery certification from the eDiscovery Training Academy at Georgetown Law Center in 2017. Ms. Martin graduated from Wake Forest University with a Bachelor of Science in Mathematical Economics in 1989. She earned a Master of International Business from the University of South Carolina in 1991.

Ms. Martin has been honored with the prestigious "AV" rating by Martindale-Hubbell. In 2016, Ms. Martin was selected by her peers as the foremost Litigation attorney in the State of North Carolina for *Business North Carolina Magazine's Legal Elite*, gaining membership in the *Legal Elite* Hall of Fame. In 2015, she was inducted as a Fellow of the Litigation Counsel of America, a prestigious trial lawyer honorary society comprised of less than one-half of one percent of American lawyers. Fellows are selected based upon excellence and

accomplishment in litigation, both at the trial and appellate levels, and superior ethical reputation. For upholding the highest principles of the legal profession and for outstanding dedication to the welfare of others, Ms. Martin has also been selected as a Fellow of the American Bar Foundation, an honorary legal organization whose membership is limited to one third of one percent of lawyers in each state. Since 2012, she has been selected to the Super Lawyers list for North Carolina in the areas of mass torts and class actions, with repeated selection to the Top 50 Women North Carolina.

Before entering law school, Ms. Martin worked with the sales finance team of Digital Equipment Company in Munich, Germany developing sales forecasts and pricing models for the company's expansion into the Eastern European market after the fall of the Berlin wall. She also worked as a practice management consultant for a physician consulting group and as a marketing manager for an international candy manufacturer where her responsibilities included product development, brand licensing, market research, and sales analysis.

Ms. Martin has been a presenter on a variety of topics related to class actions including: *Fantasy Gaming Webinar: FanDuel and DraftKings Litigation*, AAJ (December 2015); *Thinking Outside the Black Box: Drug Cases in the Class Context*, Mass Torts Made Perfect (October 2019); *Mass Torts and MDLs*, Western Alliance Class Action Forum (March 2020); *Consumer Class Actions*, Western Alliance Class Action Forum (March 2022); *How to Maximize Efficiency in Document Production and Review*, Mass Torts Made Perfect (April 2022).

Ms. Martin is a member of the North Carolina bar, having been admitted in 1998. She is also admitted to practice before the United States Supreme Court, the United States Court of Federal Claims, the United States Court of Appeals for the Fourth Circuit, the Western, Middle, and Eastern Districts of North Carolina, and the United States District Court of Colorado.

***Marcio Valladares.*** Mr. Valladares was born in Managua, Nicaragua and immigrated to the United States during Nicaragua's civil war. In 1990, Marcio obtained a Bachelor of Science degree in psychology from the University of Florida. In 1993, he obtained his Juris Doctor degree, *magna cum laude*, from Florida State University. He is pursuing a Masters in Law (LL.M.) degree from Columbia University, focusing on federal and comparative law.

Before joining Morgan & Morgan, Marcio worked in both the public and private sectors. He served as a judicial law clerk to the Honorable Steven D. Merryday, United States District Judge, Middle District of Florida, and then served as a judicial law clerk to the Honorable Susan H. Black, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit. Marcio served as an Assistant United States Attorney for the Middle District of Florida. In the private sector, Marcio practiced commercial litigation and insurance defense at Holland & Knight LLP.

Marcio also worked as in-house counsel for the Mayo Clinic. Marcio is fluent in English and Spanish.

   ***Marie Noel Appel.*** Ms. Appel has dedicated her career to representing consumers in both individual and class action cases involving claims under consumer protection laws and other statutory and common law claims. She earned a B.A. in French from San Francisco State University in 1992 and graduated from University of San Francisco School of Law in 1996.

   For most of her career, Ms. Appel has been in private practice litigating class claims related to defective products, mortgage fraud/Truth in Lending violations, unfair business practices relating to manufactured home sales, interest overcharges by the United States on military veterans' credit accounts, and statutory violations by the United States relating to offset of debts beyond the limitations period.

   From 2012 to 2019, Ms. Appel left private practice to become the Supervising Attorney of the Consumer Project at the Justice & Diversity Center of the Bar Association of San Francisco which provides free legal services to low-income persons facing consumer issues.

   In April 2019, Ms. Appel returned to private practice as Counsel at Robins Kaplan, LLP, then joined Morgan & Morgan in August 2020 where she focuses on class action litigation.

   In additional to her legal practice, Ms. Appel is an Adjunct Professor at Golden Gate University School of Law in San Francisco where she teaches legal research and writing, and from 2011 to 2018 supervised students at the Consumer Rights Clinic, in which students performed legal work at the Justice & Diversity Center's Consumer Debt Defense and Education Clinics.

   Ms. Appel has a long history of pro bono involvement and currently is a regular volunteer at the Community Legal Assistance Saturday Program, a monthly free legal clinic sponsored by the Alameda County Bar Association.  Ms. Appel provides trainings to San Francisco Bay Area legal aid attorneys regarding consumer collection defense and related matters, focusing recently on defense of lawsuits against low-income individuals for unpaid back rent resulting during the COVID-19 pandemic.  In the past, Ms. Appel has provided pro bono representation for numerous low-income consumers facing debt collection lawsuits, and volunteered regularly at free legal clinics through the Justice & Diversity Center in San Francisco which, on multiple years, designated her as one of the Outstanding Volunteers in Public Service.

Ms. Appel is admitted to practice in the Ninth Circuit Court of Appeals, and United States District Courts in the Central District of California; the Eastern District of California; the Northern District of California; and the Southern District of California.

**Kenya Reddy.** Ms. Reddy represents consumers in class action litigation. She graduated from Duke University in 1997 with a degree in political science. In 2000, she received her law degree from the University of Virginia School of Law. Prior to joining Morgan & Morgan, Ms. Reddy was a shareholder at Carlton Fields, P.A., where her primary areas of practice were antitrust, complex civil litigation, class action defense, and business litigation. She also has experience in including labor and employment, products litigation, ERISA and employee benefits law, insurance, healthcare, and securities litigation.

Ms. Reddy has served as a law clerk for the Honorable Charles R. Wilson, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit, the Honorable Anne C. Conway, former Chief Judge of the United States District Court for the Middle District of Florida, the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida, and the Honorable Karla R. Spaulding, United States Magistrate Judge, Middle District of Florida.

Ms. Reddy was a guest speaker in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on the topic of standing in data breach cases. In October 2019, she presented on the topic of third-party litigation funding at the Mass Torts Made Perfect Conference.

Ms. Reddy is admitted to practice in the Northern, Middle, and Southern Districts of Florida.

**Ryan Maxey.** Mr. Maxey grew up in Tampa, Florida. He attended the University of South Florida, where he obtained Bachelors Degrees in Computer Science and Philosophy. During and after his undergraduate education, Mr. Maxey developed software and databases for Amalie Oil Company, an automotive lubricant manufacturer located in the Port of Tampa. Mr. Maxey later attended law school at the University of Florida, graduating *order of the coif* in 2008.

From 2008 to 2011, Mr. Maxey served as a judicial law clerk to the Honorable Elizabeth A. Jenkins, United States Magistrate Judge, University of Florida. Mr. Maxey then worked at one of the country's largest law firms, Greenberg Traurig, for four years. In 2015, Mr. Maxey joined Morgan & Morgan's Business Trial Group as a lead attorney handling a variety of business litigation matters. Mr. Maxey later started his own law practice, litigating claims related to breach of contract, trade secret misappropriation, the FLSA, the FDCPA, and premises liability.

Mr. Maxey was admitted to the Florida Bar in 2008 and is also admitted to practice in the

Middle District of Florida and the Southern District of Florida.

**Ryan J. McGee**. Mr. McGee was born and raised in Tampa, Florida. He studied business economics and history at the University of Florida, where he was a teaching assistant for technology classes in the business school, and received his law degree from Stetson University College of Law, where he was an editor on the *Stetson Law Review*, a research assistant for antitrust and consumer protection laws, and a teaching assistant for Stetson's trial advocacy program.

Ryan began his legal career as a state-appointed prosecutor, where he tried over 50 jury trials to verdict, mostly felonies, as well as a special prosecutor appointed to investigate police officers' deadly use-of-force and corruption within various law enforcement agencies. Ryan also served as a law clerk for two years for the Honorable Elizabeth A. Kovachevich, the former Chief United States District Judge, Middle District of Florida. Before joining Morgan & Morgan, Ryan's practice involved complex business disputes, antitrust, trade secret, data security, and class action investigations and defense-side litigation in state and federal courts across the country.

Since shifting his focus entirely to consumer class action representation, Ryan has been selected as a Florida Super Lawyer Rising Star in 2018 and 2019 in the field of Class Actions, and has extensive privacy and consumer fraud class action experiencing, having actively participated in the following litigations: *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK (N.D. Cal.); *In re Equifax, Inc. Customer Data Sec. Breach Litigation*, No. 1:17-md-02800 (N.D. Ga.); *Morrow v. Quest*, No. 2:17-cv-0948(CCC)(JBC) (D.N.J.); *In re Google Plus Profile Litigation*, No. 5:18-cv-06164 EJD (N.D. Cal.); *Kuss v. American HomePatient, Inc., et al.*, No. 8:18-cv-02348 (M.D. Fla.); *Richardson, et al. v. Progressive Am. Ins. Co., et al.*, No. 2:18-cv-00715 (M.D. Fla.);  *Hymes, et al. v. Earl Enterprises Holdings, Inc.*, No. 6:19-cv-00644 (M.D. Fla.); *Orange v. Ring, LLC, et al.*, No. 2:19-cv-10899 (C.D. Cal.).

Ryan was admitted to the Florida Bar in 2009 and is also admitted to practice in the Northern, Middle, and Southern Districts of Florida.

**Patrick Barthle.**  Mr. Barthle was born and raised in Dade City, Florida. He attended the University of Florida where he was admitted to the Honors Program and graduated, *cum laude*, with a double major in History and Criminology in 2009. While at UF, Patrick was inducted into the Phi Beta Kappa Honor Society and served as President of the Catholic Student Center. Patrick attended Washington and Lee University School of Law, graduating *summa cum laude* in 2012; where he was a Lead Articles Editor for the Wash. & Lee Law Review, a member of the Order of the Coif and the Phi Delta Phi Legal Honor Society, and President of the W&L Law Families organization.

Before joining Morgan & Morgan in 2015, Patrick worked at one of the country's largest law firms, Greenberg Traurig, LLP, and then served as a judicial law clerk for two years to the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida. Patrick has extensive privacy and consumer fraud class action experiencing, having actively participated in the following litigations: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.C.); *Torres v. Wendy's International, LLC*, No. 6:16-cv-210 (M.D. Fla.); *Morrow v. Quest Diagnostics, Inc*., No. 2:17-cv-0948 (Dist. NJ); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.); *In re The Home Depot, Inc. Customer Data Security Data Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-md-02752-LHK (N.D. Cal.); and *Finerman v. Marriott Ownership Resorts, Inc.*, Case No.: 3:14-cv-1154-J-32MCR (M.D. Fla.).

Patrick was selected as a Florida Super Lawyer Rising Star in 2019 in the field of Class Actions. He is also active in speaking on privacy and class action topics, having spoken in June 2018, at the NetDiligence Cyber Risk Summit on the topic of Unauthorized Use of Personal Data; in November 2018 at the American Association for Justice's Advanced 30(b)(6) Seminar, on the topic of 30(b)(6) Depositions in in Data Breach Cases; and in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on that topics of damage models and settlements in data breach cases; and Rule 23(c)(4) classes at the Mass Torts Made Perfect conference.

Mr. Barthle was admitted to the Florida Bar in 2012 and is also admitted to practice in the Middle District of Florida, the Southern District of Florida, and the District of Colorado.

***Francesca Kester.*** Ms. Kester was born and raised in Scranton, Pennsylvania. She attended Marywood University, where she graduated with a major in English Literature, and The Pennsylvania State University's Dickinson School of Law, where she received her Juris Doctor degree in 2017. While at Dickinson, Ms. Kester competed in the American Bar Association's National Appellate Advocacy Competition, where she was awarded the highest honor for her legal brief writing, and the Texas Young Lawyer's National Trial Competition, where she finished as a regional finalist. Ms. Kester also served as Executive Chair of the Dickinson Law Moot Court Board, Founder of the Dickinson Law partnership with Big Brothers Big Sisters, and Student Director of the Bethesda Mission Men's Shelter legal clinic. At graduation, she was honored with the D. Arthur Magaziner Human Services Award for outstanding academic achievement and service to others, the Joseph T. McDonald Memorial Scholarship for excellence in trial advocacy, and the peer-selected Lee Popp Award for her devotion to the legal field.

Ms. Kester interned as a judicial clerk to United States Magistrate Judge Martin C. Carlson while in law school. After graduation, she served for two years as a law clerk to the

Honorable James M. Munley in the United States District Court for the Middle District of Pennsylvania. Ms. Kester is a member of the Lackawanna County Bar Association, the Pennsylvania Bar Association, the American Association for Justice, and Order of the Barristers. In 2018 and 2019, she served as the attorney advisor for her alma mater's high school mock trial team, coaching them to a first place finish in the state and ninth in the nation.

Ms. Kester is admitted to practice law in both Pennsylvania and Florida.

**Ra O. Amen.** Mr. Amen was raised in both the California Bay Area and Massachusetts. In 2005, Ra graduated from Stanford University with a B.A. in Economics. After graduating, Ra worked as a Peace Corps volunteer in Morocco teaching English as a second language and business skills to local artisans. Before entering law school, Ra worked for several years in education and in business development for a mobile technology startup. In 2017, he obtained his Juris Doctor degree with Honors from Emory University School of Law. While at Emory Law, he was a Managing Editor of the Bankruptcy Developments Journal, interned at a consumer fraud law practice, and worked in-house with one of the globe's leading metals companies assisting in a diverse array of legal issues ranging from corporate restructuring to international tax and contract disputes. Before joining Morgan & Morgan in 2020, Mr. Amen worked at one of the nation's largest defense law firms in the nation where he specialized in representing clients in complex commercial, administrative, and ecclesiastical disputes.

Ra speaks both English and Spanish, and is an avid guitar player.

Ra was admitted to the Georgia Bar in 2017.

**David Reign.** Mr. Reign is the former Assistant Special Agent in Charge of the Tampa FBI Field office, with nearly 25 years of investigative experience. He has investigated and managed some of the FBI's most complex white-collar crime cases, with an emphasis on health care fraud, public corruption, and financial crimes. As Deputy Chief of the Enron Task Force, he led a team of investigators and analysts in the successful investigation and prosecution of several executives of the Enron Corporation. He received the Attorney General's Award for Exceptional Service for his work on the Enron matter.

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Griffey, et al., | No. CV-20-01282-PHX-MTL (Lead) |
| Plaintiffs, | No. CV-20-01350-PHX-MTL (Consol.) |
| v. | **DECLARATION OF SCOTT M. FENWICK OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT** |
| Magellan Health, Incorporated, | |
| Defendant. | |

I, Scott M. Fenwick, hereby declare:

1.      I am a Senior Director of Kroll Settlement Administration LLC ("Kroll"),[1] the Settlement Administrator to be appointed in the above-captioned case, whose principal office is located at 2000 Market Street, Suite 2700, Philadelphia, Pennsylvania 19103.  I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself.  The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working under my general supervision.  This declaration is being filed in connection with preliminary approval of the settlement.

2.      Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities, labor and employment, consumer, and government enforcement matters.  Kroll has provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years.

3.      Kroll is prepared to provide a full complement of notification and claims administration services in connection with the Class Action Settlement Agreement (the "Settlement Agreement"), the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement (as defined below).

terms of which are referred to herein as the "Settlement", including notice of the Settlement disseminated by mail and through the use of a Settlement Website to be created in connection with this matter.

4.      It is Kroll's understanding that it will be provided with a list of Settlement Class Members covered under the proposed Settlement, and such Settlement Class Member list is to contain a combination of names, physical addresses, and other data elements pertinent to providing notice and the administration of the Settlement.

### Notice by Mail

5.      In preparation for disseminating the notices by mail, Kroll will work with Class Counsel and Magellan's Counsel (collectively "Counsel") to finalize the language and format the Short Form Notice for mailing. Upon approval, Kroll will coordinate the preparation of Short Form Notice proofs for Counsel to review and approve.

6.      As required under Section 10.1 (d) of the Settlement Agreement, Kroll will send the Short Form Notices to the physical addresses of Settlement Class Members in the Settlement Class Member data to be provided.  In preparation for the notice mailing, Kroll will run the Settlement Class Member data through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database to obtain updated addresses for Settlement Class Members who have submitted a change of address with the USPS in the last 48 months.  This process will also standardize the addresses for mailing. Kroll will then prepare a mail file of Settlement Class Members that are to receive the notice via first class mail.

7.      As required under Section 10.1 (e) of the Settlement Agreement, mailed Short Form Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

8.      As required under Section 10.1 (f) of the Settlement Agreement, mailed Short Form Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process to find a more current address for the record.  If an updated address is obtained through the advanced search process, Kroll will re-mail the notice to the updated

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

address within seven (7) days of receiving such information, which shall be the final requirement for mailing.

9.      The notice program as outlined in the Settlement Agreement as expected to be implemented by Kroll contemplates a robust Settlement Class Member list that will allow for direct notice to reach the vast majority of Settlement Class Members through direct mail and is designed to meet due process requirements.  Based upon information provided by counsel, and assuming data received is relatively up to date, we expect an average undeliverable rate of no more than 9% and, thus, we project that direct notice will reach 91% of Settlement Class Members. These assumptions are subject to the accuracy and quality of the data received.  This reach rate is consistent with other court approved best practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3]

## Settlement Website

10.      Kroll will work with Counsel to create a dedicated Settlement Website. The Settlement Website URL will be determined and approved by Counsel.  The Settlement Website will contain a summary of the Settlement, will allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address, provide notice of important dates such as the Final Fairness Hearing, Claims Deadline, Objection Date, and Opt-Out Date, and provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, including Venmo, Zelle, Paypal, ACH, or payment by check. The Settlement Website will also contain relevant case documents including Plaintiff's complaint (and any amendments thereto), the Settlement Agreement, the Long Form Notice, and the Preliminary Approval Order.

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.
[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d Ed. 2010).

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

**<u>Toll-Free Number</u>**

11.     Kroll will also establish a toll-free number for the Settlement.  The toll-free number will allow interested parties to call and obtain information about the Settlement through an Interactive Voice Response System.

**<u>Certification</u>**

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge and that this declaration was executed on June 16, 2023, in Woodbury, Minnesota.


Scott M. Fenwick

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL