David K. Lietz (*admitted pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Ave, NW, Suite 440
Washington, DC 20015
Telephone: (866) 252-0878
Email:   dlietz@milberg.com

*(Additional Counsel Listed on Signature Page)*

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Griffey, et al., <br><br>            Plaintiffs, <br> v. <br><br> Magellan Health, Incorporated, <br><br>         Defendant. | No. CV-20-01282-PHX-MTL (Lead) <br> No. CV-20-01350-PHX-MTL (Consol.) <br><br> **UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** <br><br><br> (Assigned to the Honorable Michael T. Liburdi) |
| Daniel Ranson, et al., <br><br>            Plaintiffs, <br> v. <br><br> Magellan Health, Incorporated, <br><br>         Defendant. | |

Plaintiffs Chris Griffey, Bharath Maduranthgam Rayam, Laura Leather, Daniel Ranson, and Mitchell Flanders ("Plaintiffs") submit this Motion and Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

On August 9, 2023, this Court preliminarily approved the Settlement between Plaintiffs and Defendant Magellan Health, Incorporated ("Magellan" or "Defendant"), and ordered that notice be given to the class. ECF 106. The Settlement provides up to $3.75 million in significant, immediate benefits to the Settlement Class. As described more fully below, these benefits include compensation for lost time spent dealing with the effects of the Data Incident, identity theft protection, compensation for documented out-of-pocket losses, and pro rata cash payments.

Plaintiffs and Class Counsel zealously litigated these Consolidated Actions for almost three years now, achieving a favorable settlement providing substantial benefits for the approximately 948,719 Settlement Class members. Despite Magellan prevailing on an initial motion to dismiss, Class Counsel replead their allegations and several claims survived Magellan's successive motion to dismiss. This demonstrated Class Counsel's substantial commitment to this complex, difficult, novel case.

The Parties reached this Settlement— providing meaningful benefits for the Settlement Class—only after an extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiffs believe in the merits of their claims, Magellan denies each and all of the claims and contentions alleged against it in the Litigation, including all charges of wrongdoing or liability The claims involve the intricacies of data security litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, Class Counsel and the Class Representatives believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class as set forth in the Settlement Agreement. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 92.12% of the Class, easily meeting the due process standard. *See* Declaration of Scott M. Fenwick, attached hereto as Exhibit 1, ¶ 12. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. *Id*. at Exhibits C and D. Out of 873,994 Settlement Class Members who received a Postcard Notice, only 14 sought to be excluded from the Settlement, and none objected. *Id*. ¶ 17.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant the Plaintiffs' request for attorneys' fees, expenses and service awards.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 103) and the accompanying Exhibits, including the Settlement Agreement, filed in conjunction therewith. Plaintiffs also incorporate by reference the Plaintiffs' Amended Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 111), filed on December 23, 2023.

## III.    SUMMARY OF THE SETTLEMENT

The Settlement provides relief for the following Settlement Class: "All persons who were notified that their information may have been impacted in the Data Incident." S.A. § 1.29. The Settlement Class contains approximately 948,719 individuals. This number includes "Claims-Made" portion of the

2

Settlement Class (669,373 persons), and the "Common Fund" portion of the Settlement Class (279,346 persons).

**A. Settlement Benefits**

The Settlement provides for the following benefits:

**1. Claims-Made Benefits**

Claims-Made Settlement Class Members had the opportunity to submit a Claim for Claims-Made Settlement Benefits including (1) attested Lost-Time Claims of up to 3 hours at $20 per hour; (2) documented Out-of-Pocket Expense Claims of up to $750; and (3) 12-months of Identity Protection Benefits. Claims-Made Settlement Class Members' claims for Lost Time and/or Out-of-Pocket Losses are subject to an individual cap of $750 per claimant. S.A. § 2.1.2. In no event shall the total costs of Claims-Made Benefits exceed $2,250,000, including reasonable Notice and Settlement Administration Costs, any awarded attorneys' fees, costs, and expenses, as approved by the Court, and any Service Awards, as approved by the Court. S.A. § 2.1.3.

**2. Common Fund Benefits**

Common-Fund Settlement Class Members have the opportunity to submit a Claim for Common-Fund Benefits including (1) $100 Pro-Rata Cash Payments; or (2) Lost-Time Claims of up to 5 hours at $25 per hour; and (3) Out-of-Pocket Expense Claims of up to $5000. These benefits shall be paid from the $1,500,000 non-reversionary Common Fund. S.A. § 2.2.1. Common Fund Settlement Class Members may either (1) submit a claim for the Pro-Rata Cash Payment or (2) submit a claim for Lost Time and/or Out-of-Pocket Expenses. S.A. § 2.2.2. Common-Fund Settlement Class Members' claims for Lost Time and/or Out-of-Pocket Losses are subject to an individual cap of $5,000 per claimant. S.A. § 2.2.3.

### 3. Class Notice and Settlement Administration

Notice and settlement administration will be paid for by Defendant. Notably, the cost of notice and administration are to be paid from the Claims Made Portion of the Settlement (subject to the $2.25 million claims made cap), and will not diminish the amounts paid by Defendant for the non-reversionary common fund.

### 4. Attorneys' Fees, Expenses, and Service Awards.

The Settlement contemplates an award of attorneys' fees, expenses, and service awards. Notably, these awards, as awarded by the Court, also are to be paid from the Claims Made Portion of the Settlement, and will not diminish the amounts paid by Defendant for the non-reversionary common fund.

## IV. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rules of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. ECF 106. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 103), this Court should certify the class for purposes of final approval of the settlement.

Next, for a settlement to be approved under Rule 23(e)(2), the Court must determine, after holding a hearing, that it is fair, adequate, and reasonable. In making this determination, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other. Fed.R.Civ.P. Rule 23(e)(2).

In addition to the Rule 23(e)(2) factors, courts in the Ninth Circuit look to nine factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).

## V.    ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). Here, with a strong settlement that enjoys robust support from the Settlement Class, and to which there is no opposition, the Court should grant final approval to this settlement.   The settlement satisfies all the Rule 23(e)(2) factors.

**A.    The Class Was Adequately Represented.**

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as all other Settlement Class Members as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Doc. 106, Order Granting Preliminary Approval. *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.,* 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

**B.  The Settlement was Negotiated at Arm's Length.**

The negotiations in this matter occurred at arm's length. See ECF 103, Lietz Decl. ¶¶ 45-46. Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.,* 544 U.S. 1044, 125 S.Ct. 2277, 161 L.Ed.2d 1080 (2005) (a " 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting *Manual for Complex Litigation, Third* § 30.42 (1995))). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

**C. The Relief is Adequate**.

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C).

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (""the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

   i.  *The Costs, Risk, And Delay Of Trial And Appeal.*

As outlined in the preliminary approval motion, Plaintiffs faced significant risks and costs should they have continued to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion for class certification, motions for summary judgment, and Daubert motions on damages methodologies, among other motions. Second, if Plaintiffs had prevailed on a motion for class certification, successfully defeated all the other objections and motions Defendant would have filed, and proceeded to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Out- of-Pocket Losses or Lost Time will receive guaranteed compensation now and provides Settlement Class Members with access to Identity Theft Protection services (benefits that may not have been available at

trial) or pro rata cash payments. The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

ii.    *The Method Of Distributing Relief Is Effective*.

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members laying out the benefits to which they are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim.

Noticing the Settlement Class of the available relief was efficient and effective. Notice included dissemination of individual notice by direct mail, in the form of the Short Form postcard notice. This direct mail notice reached XX% of the Class. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

iii.    *The Terms Relating To Attorneys' Fees Are Reasonable*.

Class Counsel has requested, and Magellan has agreed not to object to Class Counsel's request for, $1,000,000 in attorneys' fees and $25,000 reimbursement for costs and expenses. This request is on par with awards routinely granted by courts in the Ninth Circuit and is supported by a lodestar crosscheck, as laid out in the previously filed amended attorneys' fee motion. ECF 111. This factor supports approval of the proposed Settlement.

d.    *Any Agreement Required To Be Identified Under Rule 23(e)(3)*.

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

**D. The Proposed Settlement Treats Class Members Equitably.**

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement if they meet the requirements, including compensation for Out-of-Pocket Losses, compensation for time spent responding to the Data Incident, identity protection for the Claims-Made Class Members or pro rata cash payments for the Common Fund Class Members.

**E. There is no opposition to the Settlement.**

In assessing adequacy, the Court should consider the degree of opposition to the Settlement. After a far-reaching, extensive direct notice campaign, no Settlement Class Members submitted an objection.

The *Bluetooth* factors are similarly satisfied.

**1.    The Strength of Plaintiffs' Case**

Plaintiffs believe they have a strong case for liability. As described in Plaintiffs' Motion for Preliminary Approval, Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Magellan's data security was inadequate and that, if they establish that central fact, Defendant could be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Second CAC. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*.,

No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). However, given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors final approval of the settlement. *Id*.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, they recognize all cases are subject to substantial risk. This case involves a proposed class of approximately roughly 948,719 individuals (each of whom, Magellan has argued, would need to establish cognizable harm and causation); a complicated and technical factual background; and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers. Putting a point on the litigation risks to Plaintiffs here, the Court's rulings on the two motions to dismiss starkly demonstrate that success is not guaranteed here.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially risky arena. As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08

10

Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.,* No. 14CV1372DMS(DHB), 2016 WL 4427439, at *t (S.D. Cal. Feb. 29, 2016). Thus, this factor favors final approval.

### 3.    The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the Court has not certified any class treatment of this case. Absent settlement, class certification in consumer data breach cases has only occurred in a few cases. *See, e.g., Smith v.*

*Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15 (M.D. Ala. Mar. 17, 2017), on reconsideration in part, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). Even when certification is granted, there are appeals. *See* While certification of additional consumer data breach classes may follow, the dearth of precedent adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data security litigation generally and this litigation specifically (as evidenced by the motions' practice in this case), the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members, in the form of out-of-pocket expense reimbursements, compensation for lost time, or cash payments for the Common Fund Class Members.

The Settlement Agreement's benefits set out above are tailored to address the fundamental concerns raised in the Action, providing meaningful monetary relief up to $3.75 million. The per Class Member amounts of compensation are substantial, with the Common Fund Settlement Class Members receiving $5.37 per Class Member, and the Claims-Made Settlement Class receiving up to $3.36 per Class Member. This settlement is a strong result for the Class, and exceeds or is in line with other settlements in cases involving data breaches of similar scope. See ECF Doc. 103, page 23, n.1 (detailing the per person recoveries in other similar large data breach settlements).

This settlement is a strong result for the Class, and as discussed herein is in line with other approved settlements in cases involving data incidents of similar scope. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they

might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Magellan and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to its customers. The parties also informally exchanged non-public information concerning the Data Incident and the size of the Class in preparation for mediation. Plaintiffs also engaged in formal discovery, reviewing thousands of pages documents produced by Defendant, as well as Defendant's responses to interrogatories. As this case has been litigated for approximately three years (during which parties have exchanged significant discovery), the litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

### 6.    The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Magellan announced the Data Incident, which, based upon publicly-available information, potentially impacted approximately 963,450 customers and employees (current and former). Class Counsel have substantial experience litigating complex class cases of various types, including data-related cases such as this one. *See* ECF 103, Exhibit 2 (Lietz Declaration), ¶¶ 2-32 & Exs. A and B thereto. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. *Id.*, ¶ 41. A great

deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton*, 2017 WL 1424636, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7. **Governmental Participants**.

There is no governmental participant in this matter. However, CAFA notice was timely provided to all states' attorneys general, and there was no response. See Fenwick Decl., ¶ 4.

### 8. **The Positive Reaction of the Class Members Favors Final Approval.**

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a total of 948,719 to whom notice was mailed, only 14 Class Members requested exclusion and there were no objections. *See* Fenwick Decl. ¶ 17. As of January 22, 2024, the administrator received 13,543 Claim Forms (13,281 online and 262 paper). *Id.* at ¶ 13.

The deadline to object or opt out of the settlement was November 21, 2023. Notably, the Claims Administrator did not receive any objection and only 14 individuals opted-out. Fenwick Decl., ¶ 17. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); 4 NEWBERG ON CLASS ACTIONs, § 11:48 ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]"). The fact that no Settlement Class Members, objected indicates overwhelming support for the settlement and strongly favors approval.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 9.  Lack of Collusion Among the Parties

The parties negotiated a substantial, multifaceted Settlement, as described above. Class Counsel and Magellan's counsel are well-versed in handling data-related class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator also is evidence of no collusion. ECF 103, Lietz Decl. ¶¶ 45-46. Therefore, the Court can be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cnty.,* No. 13-CV-03667-MEJ, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (working with neutral mediators is "a factor weighing in favor of a finding of non-collusiveness") (internal quotation marks and citation omitted).

## VI.    NOTICE WAS PROVIDED ACCORDING TO THE PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS AND RULE 23.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc*., 553 F.3d 1193, 1202 (9th Cir. 2008), aff'd, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'")

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On September 22, 2023, Kroll caused 948,719 Short Form Notices to be mailed via first-class mail. Fenwick Decl. ¶ 9. Robust efforts were made to determine forwarding addresses for returned mail, and to re-mail notices to good addresses. *Id*. at ¶¶ 10 and 11. After all re-mailings, Kroll has reason to believe that notice likely reached 873,994 of the 948,719 persons to whom the Short Form Notice was mailed, which equates to a reach rate of the direct mail notice of approximately 92.12%. *Id*. at ¶ 12. This reach rate is consistent with

other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id*.

Also, the dedicated Settlement Website, www.mhisettlement.com, "went live" on September 21, 2023. Fenwick Decl. ¶ 5. As of January 22, 2024, the Settlement Website has received 153,049 page views. *Id*. Kroll established a toll-free telephone number for Settlement Class Members to call and obtain additional information about the Settlement through an Interactive Voice Response ("IVR") system. *Id*. at ¶ 6. As of January 22, 2024, the IVR system has received 3,405 calls, and thirty-three (33) callers have received a returned phone call from a live operator after leaving a voicemail through the IVR system. *Id*. On July 27, 2023, Kroll designated a post office box with the mailing address *Griffey v. Magellan Health Incorporated*, c/o Kroll Settlement Administration, PO Box 5324, New York, NY 10150-5324, in order to receive Opt-Outs, Claim Forms, and correspondence from Settlement Class Members. *Id*. at ¶ 7. On August 4, 2023, Kroll established an email address, info@MHISettlement.com, to receive and reply to email inquiries from Settlement Class Members pertaining to the Settlement. *Id*. at ¶ 8.

Notice here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). This weighs in favor of final approval as well.

## VII. CONCLUSION

Plaintiffs have negotiated a fair, adequate and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant benefits. The Settlement Agreement was reached only after extensive arm's-length negotiations and an assessment of the *Bluetooth* factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action

Settlement (ECF 103) and Plaintiffs' Amended Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 11), Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed with the Motion for Final Approval, finally certify the Settlement Class and appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award Named Plaintiffs a service award in the amounts requested, grant Settlement Class Counsel attorneys' fees of $1,000,000 and expenses of $25,000 and grant final approval of this Settlement.

Date: January 25, 2024                              Respectfully Submitted,

                                                                  s/*David K. Lietz*
                                                         **MILBERG COLEMAN BRYSON
                                                         PHILLIPS GROSSMAN PLLC**
                                                         David K. Lietz*
                                                         5335 Wisconsin Ave, NW
                                                         Suite 440
                                                         Washington, DC 20015
                                                         Telephone: (866) 252-0878
                                                         Email:  dlietz@milberg.com

                                                         *Additional counsel:*

                                                         **AUER RYAN, PLLC**
                                                         Elaine A. Ryan (AZ Bar #012870)
                                                         Colleen Auer (AZ Bar #  )
                                                         20987 N. John Wayne Parkway, B104-374
                                                         Maricopa, AZ 85139
                                                         Telephone:  (520) 705-7332
                                                         eryan@auer-ryan.com

                                                         **MORGAN & MORGAN
                                                         COMPLEX LITIGATION GROUP**
                                                         John A. Yanchunis**
                                                         Patrick A. Barthle**
                                                         201 N. Franklin Street, 7th Floor
                                                         Tampa, Florida 33602
                                                         Telephone: (813) 223-5505
                                                         jyanchunis@forthepeople.com
                                                         pbarthle@forthepeople.com

**RHINE LAW FIRM, P.C.**
Joel R. Rhine*
Martin A. Ramey*
Janet R. Coleman**
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Telephone:  (910) 772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Counsel for Plaintiffs and the Putative
Class*

*\* Previously admitted pro hac vice*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered users.

*/s/ David K. Lietz*
David K. Lietz

20